UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: 1:20-cv-21536-COOKE/GOODMAN

LONDON TOWN PIC LIMITED, *et al.*

      Plaintiffs,

v.

WELLS FARGO BANK, N.A.,
WELLS FARGO ADVISORS, LLC,

      Defendants/Third-Party Plaintiffs,

v.

VANDERMOLEN FILM CO. LTD.,
LEE VANDERMOLEN,

      Third-Party Defendants.

_____/

**DEFENDANTS' RULE 56.1 STATEMENT OF MATERIAL FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants Wells Fargo Bank, N.A. and Wells Fargo Advisors, LLC (together, "Wells Fargo"), by and through their undersigned counsel, and pursuant to Local Rule 56.1, hereby submit this Statement of Material Facts as to which there is no genuine issue of material fact, and that entitle Wells Fargo to judgment as a matter of law as set forth in its Motion for Summary Judgment filed concurrently herewith.

## I.  PLAINTIFFS' INVOLVEMENT IN FORREST CAPITAL'S FINANCING SCHEME.

1.     In summer 2013, Plaintiff Sofia Sondervan-Bild ("Sondervan-Bild") formed Plaintiff London Town Pic. Ltd. to produce a film titled "*London Town*." **Ex. 1**, Amended Complaint ("Am. Compl."), ¶ 12.  Plaintiff Tom Butterfield ("Butterfield") later joined the project as a co-producer and co-owner of London Town Pic. Ltd.  *Id.*

2.     Plaintiffs entered into discussions with non-parties Weathervane Productions Inc. ("Weathervane"), Forrest Capital Partners, Inc., and Forrest Capital and Co., LLC (collectively, "Forrest Capital") as well as Vandermolen Film Co. ("Vandermolen Film"), during 2014 and 2015 to arrange funding for the film's production.

3.     In determining whether to proceed with funding through Weathervane, Plaintiffs had their attorneys conduct a due diligence investigation into Weathervane. **Ex. 2**, June 24, 2014, Email from T. Butterfield to S. Sondervan-Bild; **Ex. 3**, T. Butterfield Dep. Sept. 23, 2020 ("T. Butterfield Dep. Vol. I"), at 70:10-73:13.

4.     Plaintiffs finalized a funding arrangement with Weathervane on June 18, 2015, for *London Town*.  **Ex. 4**, Financier Term Sheet dated June 18, 2015.

5.     In the term sheet, Weathervane agreed to invest $2,106,000 towards the production of *London Town*, and Weathervane was supposed to deposit its investment by September 2015.  **Ex. 5**, Sondervan Dep. Sept. 16, 2020 ("S. Sondervan-Bild Dep. Vol. I"), at 119:13-120:11; **Ex. 6**, T. Butterfield Dep. Dec. 21, 2020 ("T. Butterfield Dep. Vol II"), at 31:3-7.

6.     Under a separate agreement executed on July 16, 2015, another film financier, Vandermolen Film Co. Ltd., agreed to loan London Town Pic. Ltd. $1,794,000 (the "Bridge Loan") for purposes of funding the production of *London Town*.  **Ex. 1**, ¶ 22; **Ex. 7**, Bridge Loan Agreement.

7.    Plaintiffs intended to use the Weathervane investment to pay off the Bridge Loan. **Ex. 5**, Sondervan Dep. Vol. I, at 120:12-18.   Weathervane, however, never made the investment. *Id.*

8.    The source of funds for the Weathervane investment in *London Town* was a purported line of credit from Wells Fargo that Weathervane was supposed to receive as part of a matched funds transaction between Forrest Capital and yet another investor, Adana Investing, Inc. ("Adana").   *See* **Ex. 1**, Am. Compl., ¶ 21.   Pursuant to a June 22, 2015, agreement, Forrest Capital and Adana, agreed to each make matching deposits of $2.3 million into a Wells Fargo account to act as collateral for a line of credit, which would be issued to Weathervane.  *Id.*; **Ex. 8**, Adana Funding Agreement.

9.    Neither Plaintiffs nor Wells Fargo was a party to the agreement between Adana and Forrest Capital or, any agreement referencing a line of credit.  *See* **Ex. 8**, Adana Funding Agreement; **Ex. 9**, S. Sondervan-Bild Dep. Dec. 21, 2020 ("S. Sondervan-Bild Dep. Vol II"), at 82:14-83:18.  Plaintiffs did not have any bank accounts at Wells Fargo.  *Id.* at 95:2-8; **Ex. 6**, T. Butterfield Dep. Vol II, at 27:18-20.  There is no evidence of *any* written agreement between Plaintiffs and Wells Fargo.  There is no evidence that Forrest Capital ever applied for a line of credit from Wells Fargo, or that Wells Fargo ever issued a line of credit to Forrest Capital.

10.    Shooting on *London Town* was completed in July 2015.  **Ex. 1**, Am. Compl., ¶ 27.

11.    Weathervane never paid London Town Pic. Ltd. the $2,106,000 investment it had promised to make by September 2015.  **Ex. 6**, T. Butterfield Dep. Vol. II, at 31:3-7; **Ex. 5**, Sondervan Dep. Vol. I, at 91:18-23, 119:10-23, 121:23-24, 122:7-9; **Ex. 3**, T. Butterfield Dep. Vol. I, at 13:20-25, 14:5-9, 14:15-17.

12.    London Town Pic. Ltd. did not repay the Bridge Loan to Vandermolen Film, and the Bridge Loan began to accrue interest.  **Ex. 1**, Am. Compl., ¶ 29; **Ex. 3**, T. Butterfield Dep. Vol. I, at 191:6-9; **Ex. 6**, T. Butterfield Dep. Vol II, at 56:17-57:5.

13.    *London Town* was ultimately completed and sold; it was a commercial failure. **Ex. 1**, Am. Compl., ¶¶ 31-33; **Ex. 10**, IFC in Theaters, LLC Dep., at 27:10-28:9, 30:8-23.

14.    On March 10, 2020, almost five years after these events, Plaintiffs filed their Complaint against Wells Fargo in this case.  *See* ECF 1-2.

2

II.  BUTTERFIELD AND SONDERVAN-BILD KNEW OF RED FLAGS SURROUNDING WEATHERVANE BEFORE AND DURING THE PRODUCTION OF *LONDON TOWN*.

15.  Before and during the production of *London Town*, Plaintiffs knew of numerous red flags surrounding Weathervane and the legitimacy of its operations, based on their experience working on other films for which Weathervane promised but failed to provide timely funding.  *See infra* ¶¶ 17-32.

16.  Despite these warning signs, Plaintiffs decided to work with Weathervane on the production of *London Town* anyway.  **Ex. 1**, Am. Compl., ¶¶ 19-22.

A.  Weathervane's Funding Of *1 Mile To You* Did Not Arrive On Time.

17.  Prior to producing *London Town*, Butterfield worked with Weathervane in the production of a film titled *1 Mile to You* (also known as "Life at These Speeds").  **Ex. 1**, Am. Compl., ¶ 14; **Ex. 3**, T. Butterfield Dep. Vol. I, at 25:17-19, 43:24-44:4.

18.  During the production of *1 Mile to You*, Butterfield had "multiple issues with monies not arriving on time" from Weathervane.  **Ex. 3**, T. Butterfield Dep. Vol. I, at 26:11-12; **Ex. 6**, T. Butterfield Dep. Vol. II, at 45:6-9.

19.  Butterfield gave the following account of these delays on funding for *1 Mile to You*: "So the way that we were told the Weathervane model worked was it took between 30 and 60 days for the match to occur and the line of credit to become available.  Those timelines got extended, and we had already started production, so we were trying to scramble and find way of making up for that . . . ."  **Ex. 3**, T. Butterfield Dep. Vol. I, at 26:20-25.

20.  Weathervane's money ultimately arrived in the beginning of 2015, but Plaintiffs claim that its late arrival resulted in "fiscal damages" to the film.  *Id.* at 27:3-23.

B.  Weathervane's Funding Of *Antibirth* Failed To Materialize.

21.  Butterfield also worked with Weathervane on a film called *Antibirth*.  **Ex. 3**, T. Butterfield Dep. Vol. I, at 44:5-12.  Weathervane's funding for *Antibirth* was supposed to arrive in December 2014.  **Ex. 11**, Feb. 2015 Antibirth Emails, at 20.

22.  By early February 2015, Weathervane's funding for *Antibirth* had been delayed over a month, causing investors in the film to threaten legal action.  **Ex. 11**, Feb. 2015 Antibirth Emails, at 20.  The producers of *Antibirth*, including Butterfield, contacted the owner of Weathervane, Jason Van Eman ("Van Eman"), throughout February about the status of Weathervane's funding.  **Ex. 11**, Feb. 2015 Antibirth Emails, at 2 (February 12 email

3

from Butterfield), 3 (February 11 email from Butterfield), 4 (multiple February 9 emails from Butterfield), 8-9 (February 6 email from Butterfield), 10-12 (multiple February 5 emails from Butterfield), 17 (February 3 email from Butterfield).

23.    In response to these emails and others, Van Eman consistently provided excuses for why the funding had not arrived, including unspecified compliance issues at Wells Fargo. *See, e.g.*, **Ex. 11**, Feb. 2015 Antibirth Emails, at 1, 12-13, 16, 21.

24.    In the end, Weathervane never came through with financing for *Antibirth*.  **Ex. 3**, T. Butterfield Dep. Vol. I, at 45:13-15.

### C.    Weathervane's Funding Of *Urge* Did Not Arrive On Time.

25.    Sondervan-Bild was also involved in the production of a film that Weathervane funded titled *Urge*.  **Ex. 5**, Sondervan-Bild Dep. Vol. I, at 40:23-41:18; 44:17-19.

26.    As with *1 Mile to You*, Weathervane's funding for *Urge* did not materialize as planned or on time.  *See supra* ¶¶ 17-20.  On February 18, 2015, Sondervan-Bild told Lynn Appelle ("Appelle"), a production manager on *Urge*, that she had been told "there was money coming from Weathervane on Feb 9 [but] I have heard today that this is not true."  **Ex. 12**, Feb. 18, 2015, Email from S. Sondervan-Bild to L. Appelle.

27.    In April 2015, Sondervan-Bild and Appelle again discussed Weathervane's failure to timely fund *Urge*, and Sondervan-Bild explained that Prescience, an *Urge* investor, took its money out "because of weathervane," and advised that "the weathervane money had not come in and was 2 months late."  **Ex. 13**, April 14, 2015, Email from S. Sondervan-Bild to L. Appelle.  Sondervan-Bild also learned in summer 2015 that Prescience intended to take legal action against Weathervane.  **Ex. 9**, S. Sondervan-Bild Dep. Vol II, at 38:5-18.

28.    Sondervan-Bild also explained to Butterfield that Weathervane was involved in the funding of *Urge*, and both Sondervan-Bild and Butterfield contacted Weathervane directly to inquire about Weathervane's delays in funding *Urge*.  **Ex. 5**, Sondervan-Bild Dep. Vol. I, at 44:23-45:12; **Ex. 14**, April and May 2015 Emails between S. Sondervan-Bild, T. Butterfield, and J. Van Eman.

29.    Because of Weathervane's failure to timely fund *Urge*, *Urge* did not pay its union employees. As a result, the union sued *Urge* and Sondervan-Bild individually, and Sondervan-Bild lost her contract with the union, which she valued in the millions of dollars. **Ex. 5**, Sondervan-Bild Dep. Vol. I, at 48:25-49:18; **Ex. 15**, Feb. 18 2015 Email Thread between

L. Appelle and S. Sondervan-Bild; **Ex. 9**, S. Sondervan-Bild Dep. Vol. II, at 27:14-28:6, 35:10-19, 41:14-42:3.

30.   In May 2015, right before going into business with Weathervane in relation to *London Town*, Sondervan-Bild reached an agreement with *Urge* to pay the union, but Sondervan-Bild's loss of the union's contract was permanent.  **Ex. 5**, Sondervan-Bild Dep. Vol. I, at 49:19-50:3; **Ex. 16**, *Urge* Settlement and Release Agreement.

        **D.**    **Despite Weathervane's Failure To Timely And Reliability Fund *1 Mile To You*, *Antibirth*, And *Urge*, Plaintiffs Worded With Weathervane on *London Town*.**

31.   Despite knowing that Weathervane failed to provide timely funding for several prior films (resulting in "fiscal damages" and "financial harm" both to the films and Plaintiffs individually), and conducting their own due diligence into Weathervane, Plaintiffs nonetheless decided to partner once again with Weathervane for *London Town*.  **Ex. 1**, Am. Compl., ¶¶ 19-22; *see also supra* ¶¶ 20, 24, 29-30.

32.   Plaintiffs finalized their funding arrangement for *London Town* with Weathervane on June 18, 2015, well after learning that Weathervane was not a reliable business partner.  *See* **Ex. 4**, Financier Term Sheet dated June 18, 2015.

**III.   PLAINTIFFS BECAME AWARE OF THEIR INJURY IN 2015 AFTER WEATHERVANE FAILED TO PROVIDE FUNDING FOR LONDON TOWN.**

33.   Plaintiffs assert that Weathervane was supposed to provide funding for *London Town* by September 2015.  **Ex. 1**, Am. Compl., ¶ 27.  Weathervane's funding did not arrive by September 2015 as planned.  *See supra* ¶ 11.

34.   On November 20, 2015, Plaintiffs' counsel sent Van Eman a notice of material breach letter advising that Weathervane was in breach of its contractual obligations, and giving Weathervane until December 4, 2015, to cure the breach.  *See* **Ex. 3**, T. Butterfield Dep. Vol. I, at 124:23-125:8; *see also* **Ex. 17**, Nov. 20, 2015, Notice of Material Breach.

35.   Instead of curing the breach, Van Eman emailed Butterfield on November 23, 2015, asking "[i]s this how we want to handle this?  Really."  *See* **Ex. 18**, Nov. 23, 2015, Emails between J. Van Eman and T. Butterfield.

36.   Butterfield then spoke to Van Eman over the phone and asked why Weathervane had not provided its funding, to which Van Eman responded that issues at Wells Fargo were holding up the release of funds.  **Ex. 3**, T. Butterfield Dep. Vol. I, at 131:2-22.  Van Eman frequently used this excuse when financing did not arrive on time, and used similar excuses

during the prior funding of *1 Mile to You*. *Id*. at 131:8-13.  In a follow up email to Van Eman on November 23, 2015, Butterfield confirmed the substance of their call, and advised that he would follow up with Van Eman on December 1, 2015.  **Ex. 18**, Nov. 23, 2015, Emails between J. Van Eman and T. Butterfield.

37.   Weathervane did not cure the breach by the December 4, 2015, deadline, at which point Plaintiffs understood that everything had come "crashing down" with Weathervane.  **Ex. 3**, T. Butterfield Dep. Vol. I, at 132:10-138:21; **Ex. 19**, Dec. 1, 2015, Email from T. Butterfield to W. Godfrey.

38.   Weathervane never provided funding for *London Town*.  *See supra* ¶ 11.

## IV.   PRIOR TO MARCH 2016, PLAINTIFFS KNEW OF MULTIPLE LAWSUITS ALLEGING WEATHERVANE WAS A SCAM, AND CONCLUDED THAT WEATHERVANE HAD INJURED THEM IN A MAJOR FRAUD.

39.   By November 2015, Plaintiffs knew that Adana had sued Weathervane in a lawsuit alleging the same facts Plaintiffs allege in this case. **Ex. 3**, T. Butterfield Dep. Vol. I, at 126:2-8; **Ex. 5**, S. Sondervan-Bild Dep. Vol. I, at 149:1-12.

40.   Over the next few months, Plaintiffs investigated Adana's lawsuit against Weathervane, including discussions amongst themselves and with attorneys regarding the lawsuit, the allegations it entailed, and specifics of pleadings filed in the lawsuit. *See infra* ¶¶ 41-52.  Plaintiffs also communicated about the *Adana* litigation directly with Van Eman, as well as third parties involved in projects funded by Weathervane. *See infra* ¶¶ 53-59.

### A.   Plaintiffs Conclude By November 2015 That They Were Injured By A "MAJOR Fraud" Involving Weathervane And "A Person At Wells Fargo."

41.   By November 2015, Plaintiffs knew that Adana had sued Weathervane, generally asserting that Weathervane and Forrest Capital fraudulently induced Adana to invest in films, including *London Town*, which Adana mentioned by name in its complaint. *See* **Ex. 20**, Adana Amended Complaint, at 17-22; *see also* **Ex. 21**, Adana Complaint.

42.   Butterfield read both the original complaint and amended complaint in the *Adana* litigation, while Sondervan-Bild received the *Adana* filings and forwarded them to her attorneys for review in November 2015.  **Ex. 3**, T. Butterfield Dep. Vol. I, at 153:12-154:10, 154:16-21; **Ex. 9**, S. Sondervan-Bild Dep. Vol II, at 66:6-67:11, 76:10-23.

43.   On November 11, 2015, Butterfield emailed Sondervan-Bild, attaching a filing from the *Adana* litigation, with the message "Scary reading!!"  **Ex. 22**, Nov. 11, 2015, Email

from Butterfield to Sondervan-Bild. The filing was the Declaration of Marc Trottier, Adana's counsel, which made detailed factual allegations, and asserted that Weathervane and Forrest Capital fraudulently stole Adana's funds. *See id.* The Declaration also asserted that a former Wells Fargo employee provided Adana with false confirmations that Weathervane matched Adana's deposits and applied for lines of credit, an allegation Plaintiffs parrot in their complaint. *Id.*; **Ex. 1**, Am. Compl., ¶ 24.

44. Indeed, more than four years after exchanging these emails regarding the *Adana* lawsuit, Plaintiffs cribbed large portions of the Amended Complaint in this case almost verbatim from Adana's amended complaint. **Ex. 38**, Chart Comparing Adana and London Town Complaints; *see also* ECF 16 at 20-21.

45. Also on November 11, 2015, Butterfield and Sondervan-Bild exchanged text messages, again discussing the *Adana* litigation. **Ex. 23**, Nov. 11, 2015, Text Messages between Butterfield and Sondervan-Bild.

46. In these text messages, Butterfield stated that he had "been downloading and reading all these filings and it is REALLY scary reading," and that he had been able to locate the filings because they were "public records at the Florida court." *Id.*

47. Sondervan-Bild stated that Weathervane sounded "like MAJOR fraud" involving "a person at Wells Fargo who doesn't actually work there," referring to Rafael. *Id.*; *see also* **Ex. 6**, T. Butterfield Dep. Vol. II, at 78:11-79:2 (stating that by November 2015 Butterfield believed Weathervane was involved in a major fraud). After 2015, Plaintiffs did not learn any new facts leading them to believe Wells Fargo was allegedly involved in Weathervane's fraud other than a settlement between Wells Fargo and Vandermolen Film. *Id.*, at 72:11-21.

**B.  Plaintiffs Communicated With Van Eman About The *Adana* Litigation In November And December 2015.**

48. Two days later, on November 13, 2015, Butterfield emailed Van Eman filings in the *Adana* litigation that Butterfield believed were "HIGHLY concerning." **Ex. 24**, Nov. 13, 2015, Email Thread between J. Van Eman and T. Butterfield, at 4. Van Eman responded that the *Adana* litigation was "well in hand," and that it would be resolved in "short order." *Id.* at 3. In response, Butterfield stated that the "word on the street isn't good at the moment," and that Van Eman's response was "not great!" *Id.* at 2.

49. Butterfield also attached the Declaration of Marc Trottier, as well as an order granting Adana's *ex parte* motion for seizure of Weathervane's assets and expedited discovery. **Ex. 25**, Nov. 13, 2015, Email from T. Butterfield to J. Van Eman; **Ex. 22**, Nov. 11, 2015 Email from Butterfield to Sondervan-Bild, at 2-14; **Ex. 26**, Order Granting *Ex Parte* Emergency Motion for Seizure and Expedited Discovery.

50. In December 2015, Plaintiffs continued to contact Van Eman for regular updates on the status of the *Adana* litigation. On December 3, 2015, Butterfield emailed Van Eman asking about the outcome of a hearing because Butterfield claimed he urgently needed the update to know how the production of *London Town* should proceed. **Ex. 27**, Dec. 3, 2015, Emails between Butterfield and Van Eman, at 2.

51. Van Eman responded by saying "[t]here is nothing to report." *Id.* at 1. Butterfield responded later that day, stating that Van Eman's response was "extremely concerning," and that "'Nothing to report' - is completely incorrect!" *See* **Ex. 28**, Dec. 3, 2015, Email from Butterfield to Van Eman. Butterfield further stated that he "once again had to chase you [*i.e.*, Van Eman] and even have our own lawyers look into the public records to get a clue as to what is going on." *Id.*; **Ex. 3**, T. Butterfield Dep. Vol. I, at 159:8-160:21. Van Eman responded to Butterfield's email, advising that, now, Weathervane's funding would not arrive by December 12, 2015. **Ex. 29**, Dec. 3, 2015, Email from Van Eman to Butterfield, at 2.

52. Eventually, Plaintiffs stopped following up with Van Eman altogether. **Ex. 3**, T. Butterfield Dep. Vol. I, at 139:8-18.

### C. Sondervan-Bild Tells Kaufman Weathervane Is "A Scam" In November 2015.

53. Sondervan-Bild also discussed the *Adana* litigation with the director of *Urge*, Aaron Kaufman ("Kaufman"). In October 2015, Sondervan-Bild emailed Kaufman asking "[d]id WV ever pay all they owed." **Ex. 30**, Nov. 2015 Emails between S. Sondervan-Bild and A. Kaufman, at 1; **Ex. 5**, Sondervan-Bild Dep. Vol. I, at 142:18-21.

54. On November 11, 2015, following an exchange of emails, Sondervan-Bild asked Kaufman if he had heard that "Weathervane is getting sued?" **Ex. 30**, Nov. 2015 Emails between S. Sondervan-Bild and A. Kaufman, at 6. Sondervan-Bild asked Kaufman this question because she had heard from Butterfield that Adana sued Weathervane. **Ex. 5**, Sondervan-Bild Dep. Vol. I, at 149:1-150:17.

55.    In a follow up email to Kaufman, Sondervan-Bild further stated "I think they are a scam," referring to Weathervane.  **Ex. 30**, Nov. 2015 Emails between S. Sondervan-Bild and A. Kaufman, at 6; **Ex. 5**, Sondervan-Bild Dep. Vol. I, at 153:17-23.

### D.    Sondervan-Bild Tells Derrick Borte In November 2015 That Weathervane Is A "Scam" And That Plaintiffs Were Injured By The Weathervane "Fraud."

56.    In November 2015, Sondervan-Bild also communicated with Derrick Borte, the director of *London Town*, regarding the *Adana* litigation.  **Ex. 5**, Sondervan-Bild Dep. Vol. I, at 153:15-19.

57.    On or about November 16, 2015, Sondervan-Bild texted Borte stating that she had "been on the phone with the bond company and the lawyers all morning.  What a mess[.]"  **Ex. 31**, Nov. 2015, Text Messages between S. Sondervan-Bild and D. Borte, at 2. In response to a question from Borte, Sondervan-Bild explained that "[a]ll are involved now because weathervane seems to be a scam."  *Id.* at 3.  Sondervan-Bild further stated that "lawsuits" were "flying around," and that she was "making sure we are protected somehow[.]"  *Id.*

58.    Sondervan-Bild also told Borte that she "only signed because [Alastair Burlingham] said weathervane was solid, and Borte replied that his "guys only invested because he said weathervane was solid."  **Ex. 32**, Undated Text Messages between S. Sondervan-Bild and D. Borte.

59.    Roughly a month later, on December 13, 2015, Sondervan-Bild and Borte exchanged emails regarding the impact of their "problems" with Weathervane, which Borte called a "fraud that may end up costing us and our investors a very large sum of money."  **Ex. 33**, Dec. 13, 2015, Emails between S. Sondervan-Bild and D. Borte, at 2.

### V.    PLAINTIFFS PRINCIPALLY CLAIM DAMAGES FROM A LOAN THAT THEY WILL NOT REPAY, AND THEIR OTHER ALLEGED DAMAGES ARE UNSUPPORTED.

60.    Plaintiffs' alleged damages in this case arise from their supposed obligation to repay the Bridge Loan, unspecified lost profits from *London Town*, and unspecified claims of harm to Plaintiffs' reputation.  *See supra* ¶¶ 65-67.

61.    Plaintiffs, however, will not repay the Bridge Loan, and the remaining damages they claim are unsupported by any competent evidence.  *See supra* ¶¶ 62-67.

### A.    Vandermolen Film Cannot Force Plaintiffs To Pay The Bridge Loan.

62. In July 2015, Plaintiffs entered in the Bridge Loan with Vandermolen Film for $1,794,000 to provide financing for *London Town*. *See* **Ex. 1**, Am. Compl., ¶ 22. Vandermolen Film subsequently sued Wells Fargo in a case styled *Vandermolen Film Co. Ltd. Et al. v. Wells Fargo Bank, N.A. et al.*, Case No. 2016-31707-CA-01, Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "*Vandermolen* Action"). *See* ECF 36-3.

63. On December 15, 2017, Vandermolen Film, through its authorized representative Lee Vandermolen, and Wells Fargo entered into a Settlement Agreement and Release ("Settlement Agreement") in full and final resolution of the *Vandermolen* Action. *See* **Ex. 34**, Settlement Agreement and Release.

64. Pursuant to the Settlement Agreement, Vandermolen Film specifically agreed ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████ ███████ Vandermolen Film agreed to ███████████████ ███████████████████████████████████ ████████████ Vandermolen Film also agreed ██████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████.

65. Plaintiffs claim as the primary component of their damages that Wells Fargo should pay them over $7 million for principal and interest that Plaintiffs accrued on the Bridge Loan, notwithstanding the fact that Vandermolen Film cannot take any legal action to collect that loan. **Ex. 1**, Am. Compl., ¶ 29; **Ex. 35**, Plaintiffs' First Amended Initial Disclosures, at 6; **Ex. 36**, T. Butterfield's Answers to Interrogs., at 8-9.

### B. The Remaining Damages Plaintiffs Claim Are Unsupported.

66. Aside from damages stemming from the Bridge Loan, Plaintiffs' alleged damages arise from unspecified lost profits and harm to Plaintiffs' reputations. **Ex. 36**, T. Butterfield's Answers to Interrogs., at 9; **Ex. 37**, S. Sondervan-Bild Answers to Interrogs., at 6.

67. Rather than specify any specific amount lost profits, Plaintiffs have not produced documentation establishing the specific amount of lost profits they are seeking. Likewise, no one has refused to work with Plaintiffs following *London Town*. **Ex. 3**, T. Butterfield Dep. Vol. I, at 179:12-181:11; **Ex. 5**, Sondervan-Bild Dep. Vol. I, at 220:13-221:9.

Respectfully submitted,

Dated: January 4, 2021                        **MCGUIREWOODS LLP**


*/s/ Emily Y. Rottmann*
Emily Y. Rottmann
Fla. Bar No. 93154
erottmann@mcguirewoods.com
Bank of America Tower
50 North Laura St., Suite 3300
Jacksonville, Fl. 32202-3661
(904) 798-3224
(904) 798-3263 (fax)

Jarrod D. Shaw (admitted *pro hac*)
Benjamin J. Sitter (admitted *pro hac*)
jshaw@mcguirewoods.com
bsitter@mcguirewoods.com
Tower Two-Sixty
260 Forbes Ave.
Pittsburgh, PA 15222
(412) 667-6000
(412) 667-6050 (fax)

James D. Houghton (admitted *pro hac*)
jhoughton@mcguirewoods.com
2001 K Street N.W., Suite 400
Washington, D.C. 20006-1040
(202) 857-1717
(202) 828-3346 (fax)

***Counsel for Defendants Wells Fargo Bank,
N.A. and Wells Fargo Advisors, LLC***

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 4, 2021, a true and correct copy of the foregoing was served by electronic mail on all counsel of record listed below:

Benjamin H. Brodsky, Esq.
Joshua Truppman, Esq.
BRODSKY FOTIU-WOJTOWICZ, PLLC
200 SE 1st Street, Suite 400
Miami, Florida 33131
bbrodsky@bfwlegal.com
joshua@bfwlegal.com
docketing@bfwlegal.com

*Counsel for Plaintiffs*

Matthew Weinshall, Esq.
Podhurst Orseck, P.A.
SunTrust International Center
One S.E. 3rd Avenue, Suite 2300
Miami, FL 33131
mweinshall@podhurst.com

*Counsel Third Party-Defendant*
*Lee Vandermolen*

and served on January 4, 2021, by first class mail on:

Vandermolen Film Co. Ltd. (in liquidation)
c/o Stella Davis, in her capacity as Liquidator
Opus Restructuring LLP
Evergreen House North
Grafton Place
Euston
London
NW1 2DX

*Third Party-Defendant*
*Vandermolen Film Co. Ltd.*
*(in liquidation)*

/s/ Emily Y. Rottmann
Emily Y. Rottmann

12