# EXHIBIT 6

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO.:  1:20-cv-21536-MGC

LONDON TOWN PIC LIMITED;
SOFIA SONDERVAN-BILD; and
TOM BUTTERFIELD,

        Plaintiffs,

-vs-

WELLS FARGO BANK, N.A., and
WELLS FARGO ADVISORS, LLC,

        Defendants/Third-Party Plaintiffs,

-vs-

VANDERMOLEN FILM CO. LTD., and
LEE VANDERMOLEN,

        Third-Party Defendants.
_____/


                        Esquire Deposition Solutions
                        Remote Proceeding
                        Zoom Videoconference

                        Monday, December 21, 2020
                        9:04 a.m.


        VIDEOTAPED DEPOSITION OF THOMAS BUTTERFIELD,


        Taken before Matthew J. Haas, Notary Public in and

for the State of Florida at Large, pursuant to Notice of

Taking Deposition in the above cause.



BY MR. SITTER:

Q.    What was your answer?

A.    Correct.

Q.    Okay.  Sitting here today, is it your understanding that all of your communications with Weathervane have been produced?

A.    To my knowledge.

Q.    Are you aware of any communications with Weathervane that have not been produced?

A.    Isn't that the same question? Sorry, yeah, to my -- to my knowledge, everything that I've got has been produced.

Q.    Have all written communications, if any, that you had with Wells Fargo been produced?

A.    Again, to my knowledge, yeah.

Q.    Okay.  And did you or London Town have any bank accounts at Wells Fargo?

A.    No.

Q.    What banks did London Town use?

A.    Barclays.

Q.    As part of your search for responsive documents, did you search documents from the Barclays account?



going to use some marker events to try to see
if that jogs your memory at all.

I believe you testified previously
that the funding -- the funding for London Town
from Weathervane was supposed to arrive either in
September or October of 2015; is that accurate?

A.    Yeah.

Q.    Did you learn of Sofia's involvement
in Urge before or after the point in time of
which the funding from Weathervane was supposed
to arrive for London Town?

A.    I honestly couldn't tell you.

Q.    Okay.  Was it in the last year?

A.    As in 2019?

Q.    Yes.

A.    No, it was before then.

Q.    Okay.  What about the last three
years, so going back to 2017?

A.    Without certainty, okay, yeah, that
sounds -- that sounds right.

Q.    Okay.  In what context did you learn
from Sofia that she had been involved in the
funding for Urge?

A.    Sorry, can you ask that question
again.



giving us money from his own pocket to bridge us whilst we were waiting for funds to arrive.  So I think that's probably the context he's saying here.

BY MR. SITTER:

Q.    Okay.  And I believe you testified earlier that there were delays with the funding on the LATS project from Weathervane, correct?

A.    Correct, yeah.

Q.    All right.  Then the next email in time is one from you to Ross Marroso, and you're talking here about the time -- you're welcome to read this and stop me at any time, so take your time.

A.    Yeah, I want to be clear, it is to Jason, and Ross is cc'd, just to be clear. It says to WVP, which is, I believe, Jason's email address.

Q.    Good clarification, sure.  And it looks like you're proposing here to take money that's for a Weathervane fee that's sitting in escrow and apply it to the film project; is that accurate?

A.    One second.  Yes, that looks right.

Q.    Okay.  Did that occur?



you like to start at the top of this email here?

A.    Yes, please.

Q.    Okay.  Just tell me when you need to scroll.

A.    Okay.

Q.    All right.  And then here is -- let's see if we can fit it all.  This is the balance of the email.

A.    Okay.

Q.    All right.  So I actually want to focus here on one of the last statements that he makes in his email.  So Burlingham writes in his last sentence, "Note both VFM's default interest," and as VMF, do you understand that to be Vandermolen Film?

A.    Yes, correct.

Q.    Okay.  So "Note both Vandermolen Film's default interest and legal costs are a liability for the production, now the loan is in default, and there is no imminent repayment timetable.  Please direct all communications to Alan Moss at H&L on behalf of VMF?

A.    Uh-huh.

Q.    So was it your understanding that Burlingham was saying as of now the bridge loan



to London Town is in default, and the production is going to owe us the default interest rate and also our legal costs?

MR. BRODSKY:  Object to the form.

THE WITNESS:  Yes, that's correct.

BY MR. SITTER:

Q.    Okay.  Then he finishes by saying, "Please direct all communications to Alan Moss at H&L on behalf of VMF."  I believe you stated before that Alan Moss is his attorney; is that accurate?

A.    Yeah, H&L I believe is Harbottle & Lewis.

Q.    He's directing Jason Van Eman at this time to direct all future communications to his lawyers; is that correct?

A.    What it looks like, yeah.

Q.    Okay.  What did you take away from that, and I guess let me be a little more specific.  Did you understand that this was -- the conversations with Weathervane at this point were moving into a litigation phase?

MR. BRODSKY:  Object to the form.

THE WITNESS:  I'm trying to figure out -- I don't know how to answer that.



Fargo -- sorry, had only been suing Weathervane and its affiliates, and by that I mean Forest Capital, et cetera, so I believed that it was really only involving Jason and his team.

It was only once I learned that Vandermolen had sued Wells Fargo directly, it became clear that Wells Fargo was also involved.

BY MR. SITTER:

Q.    So -- and I want you to correct me if I'm wrong, but I'm going to say something, and I'd like you to tell me if it's true or not.  Is it accurate to say that the only new fact you learned after 2015 that led you to believe Wells Fargo was involved in the fraud was the fact that Wells Fargo had settled a lawsuit with Vandermolen Film?

MR. BRODSKY:  Objection to form.

THE WITNESS:  That sounds accurate to me, yeah.

BY MR. SITTER:

Q.    Apart from the declaration attached to this email, what other pleadings from the Adana lawsuit did you review?



Q.    Okay.  But you did know that Forest Capital had bank accounts at Wells Fargo at this time, correct?

A.    I knew that they were creating bank accounts for productions like ours and doing kind of lines of credit.

Q.    Right, so to do that, they require -- "they" being Forest Capital, required bank accounts at Wells Fargo, correct?

A.    Yeah.

Q.    Okay.  And Sofia responds, "Sounds like a major fraud."  Was it your understanding that she was expressing to you her belief that a major fraud had been committed involving the funding for London Town on November 11, 2015?

MR. BRODSKY:  Object to the form.

THE WITNESS:  My understanding is that she believes -- she believes that Weathervane and those associated with Weathervane were potentially committing a fraud, yeah.

BY MR. SITTER:

Q.    Okay.  Was it also your belief on November 11, 2015, that the folks at Weathervane were involved in a major fraud?



A.    I think I was probably leaning in that direction, yeah.

Q.    Okay.  Now, this particular text message exchange that we are looking at, do you know whether it's a document that you collected and provided, or did it come from somewhere else?

A.    Again, between Sofia and I, my guess is probably both of us did, but it would have been one of the two of us, Sofia or myself.

Q.    Okay.  When is the last time you've seen this email exchange?

MR. BRODSKY:  Text chain.

MR. SITTER:  Sorry, thank you, text chain.

THE WITNESS:  I saw it whilst discussing this deposition with my lawyer.

BY MR. SITTER:

Q.    Okay.  Let's take a couple of minutes break, and I'll see if I have any additional questions for you before we wrap up.

A.    Okay.

MR. SITTER:  Thanks.

THE VIDEOGRAPHER:  We're going off the record, and the time is approximately 10:43 a.m.



CERTIFICATE OF OATH

BY NOTARY PUBLIC


STATE OF FLORIDA
COUNTY OF MIAMI-DADE


     I, the undersigned authority, certify that THOMAS BUTTERFIELD remotely appeared before me and was duly sworn.


   WITNESS my hand and official seal this 21st day of December, 2020.



MATTHEW J. HAAS
Court Reporter
Notary Public
Commission No. GG071012
Expires:  February 8, 2021

ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

COURT REPORTER'S CERTIFICATE

I, Matthew J. Haas, court reporter in and for the State of Florida, certify that I was authorized to and did stenographically report the deposition of THOMAS BUTTERFIELD; that a review of the transcript was requested; and that the transcript is a true and complete record of my stenographic notes.

I further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in the action.

Dated this 21st day of December, 2020.

MATTHEW J. HAAS
Court Reporter

