# EXHIBIT 8

**Execution Version**

# FUNDING AGREEMENT

This Funding Agreement (**"Agreement"**) dated as of June __, 2015, sets forth the terms and conditions relating to the provision of Funding (defined below) to be provided by and among the following parties: (1) WEATHERVANE PRODUCTIONS, INC. ("**WVP**"), a Nevada corporation, and (2) FORREST CAPITAL PARTNERS, INC. ("**FCP**") a Florida corporation, and (3) WVP HOLDING, LLC ("**WVPH**") an Oklahoma limited liability company and (4) ADANA INVESTING, INC. ("**ADI")** a company registered in the British Virgin Islands.

This Agreement is in relation to the finance to be provided by WWVPH in relation to a picture to be produced by LONDON TOWN PIC LIMITED ("**LPL**") a Company incorporated in England and Wales.  LPL is the entity formed to produce '*LONDON TOWN'* (the "**PICTURE**"). WVP, FCP, WVPH and ADI are collectively referred to as the "**Parties**" hereafter.

For good and valuable consideration, including the mutual understandings, covenants and undertakings herein, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that the terms of this Agreement shall be binding on the Parties.

| 1.  Parties | • WEATHERVANE PRODUCTIONS, INC. <br><br> • FORREST CAPITAL PARTNERS, INC. <br><br> • WVP HOLDING, LLC. <br><br> • ADANA INVESTING, INC. |
|---|---|
| 2.  Business Purpose | A. The Parties are entering into a business relationship in order for the Parties to satisfy the provision of equity investment by WVP / FCP into the Picture**.** The PICTURE is based upon the screenplay written by Kristen Sheridan and Sonya Gildea, which is owned and/or controlled by LPL and shall be directed by Derek Borte. Principal photography for the Picture will start on or earlier than August 2015 based on cast availability. Pre-Production will start on July, 2015, or earlier depending on final funding date. The budget for the PICTURE (the "**Budget**") is approximately US $3,200,000.00. LPL has represented and warranted to WVPH that it owns the rights to the PICTURE. <br><br> The Parties shall have the following obligations: <br><br> B. On or about the date of this Agreement, ADI and WVPH entered into a bridge facility agreement (the "**Bridge Facility Agreement**"), a copy of the agreed form of which is at Appendix 1, under which ADI is, subject to the terms of the Bridge Facility |

EXHIBIT

**9**

LT-005739

Agreement, to advance the sum of US $2,300,000,000 to WVPH. Under the terms of the Bridge Facility Agreement, $2,242,500 of the sum so advanced (the "**Bridge Finance**") is to be deposited in a bank account at Wells Fargo Private Bank, such account to be controlled by FCP, WVP, WVPH and ADI in accordance with the relevant account operation mechanics and the provisions of Section 5 and Section 6 of this Agreement (the "**Master Account**"). The Bridge Finance in the Master Account is to be used for the sole purpose of obtaining the WVP Line of Credit (as defined below). The Bridge Finance shall not be conveyed, transferred or otherwise removed from the Master Account nor shall it be assigned, encumbered or otherwise used for any other purpose, except as set forth herein.

C. As soon as reasonably practicable following the drawing down of the Bridge Finance by WVPH and those funds being credited to the Master Account, FCP shall contribute and deposit in the Master Account (as defined below in Section 6(a)) assets in the value of US $2,242,500.00, as further referenced in **Exhibit B** (the "**FCP Investment**"). FCP shall assign the foregoing assets in the Master Account and provide the other Parties a written statement from Wells Fargo Private Bank confirming the deposit of the FCP Investment**.**

D. FCP on behalf of WVP for the sole benefit of WVPH and the Picture shall obtain a FOUR MILLION FOUR HUNDRED AND EIGHTY-FIVE THOUSAND UNITED STATES DOLLARS (US $4,485,000.00) ("**Commitment Amount**") line of credit (the "**WVP Line of Credit**") to be deposited in the Master Account. The WVP Line of Credit is to be used for the sole benefit of WVPH and solely for the purposes stated herein.

E. The WVP Line of Credit shall be procured by FCP on behalf of WVP from Wells Fargo based on the Bridge Finance in the Master Account and the FCP Investment.

F. Notwithstanding anything else contained in this Agreement to the contrary, each of the Parties irrevocably confirms and agrees that, immediately upon the occurrence of a Default (as such term is defined in the Bridge Facility Agreement) under the Bridge Facility Agreement, ADI shall be entitled to

LT-005740

instruct Wells Fargo to immediately transfer the Bridge Funding to whatever account ADI directs without the consent or instruction of any other party to this Agreement.

G. The WVP Line of Credit will be created and the Commitment Amount drawn down and deposited in the WVPH Hold Account as soon as reasonably practical following deposit of the full amount of the Bridge Finance in the Master Account, but in no event later than one hundred and twenty (120) calendar days (with a possible additional two (2) day settling period) from the date that the Bridge Finance is transferred from ADI and is credited to the Master Account (the "**Bridge Final Repayment Date**").

H. As soon as reasonably practicable and, in any event, no later than 2 business days following the WVP Line of Credit being made available for drawdown, the Commitment Amount shall be drawn down from Wells Fargo by FCP on behalf of WVP and deposited in the WVPH hold account with ARVEST BANK (the **"WVPH Hold Account"**) to be held and controlled by WVPH and ADI. Immediately following the entry into the WVPH Hold Account of the Commitment Amount, WVPH shall transfer to ADI all monies due to ADI under the Bridge Facility Agreement to the account specified therein.

I. Once all sums due to ADI under the Bridge Loan Agreement have been irrevocably repaid and written confirmation of the same by ADI (or its legal representatives) is received by the other Parties, WVPH is authorized by ADI to release the remainder of the Commitment Amount in accordance with the approved budget and schedule agreed by the Parties for the Picture.

J. Unless otherwise approved in writing by ADI, in the event the WVP Line of Credit has not been created and/or the Commitment Amount has not been fully drawn down or deposited in the WVPH Hold Account by the Bridge Final Repayment Date, each of WVPH, WVP and FCP hereby irrevocably and unconditionally authorize Wells Fargo to immediately transfer the Bridge Finance, without delay or any deduction, to ADI at the following account by wire transfer:

LT-005741

**Execution Version**

| | |
|---|---|
| | Account Name: Berwin Leighton Paisner LLP USD Client Account<br>Bank Name: Barclays Bank Plc, 7th Floor, United Kingdom House, 180 Oxford Street, London, W1D 1EA<br>Account Number: 63502422<br>Sort Code: 20-65-82<br>SWIFT Code: BARCGB22<br>IBAN: GB34 BARC 2065 8263 5024 22<br>Reference: GSHE/MTRO/Adana<br><br>K. The WVP Line of Credit, FCP Investment and Bridge Finance are hereafter referred to as the ("**Funding**"). The WVP Line of Credit will be based on the Bridge Finance and the matched FCP Investment for the Commitment Amount.<br><br>L. The Funding may be used only for the purposes and pursuant to the terms and conditions stated herein. |
| 3. Term | The term of this Agreement shall commence as of the date of full execution of this Agreement and shall continue until all obligations of the Parties have been fully performed (the "**Term**"), unless terminated earlier in accordance with the provisions of this Agreement. |
| 4. Legal Entity | • WVP is an existing corporation, duly organized under the laws of Nevada.<br>• FCP is an existing corporation, duly organized under the laws of Florida.<br>• WVPH is an existing limited liability company, duly organized under the laws of Oklahoma.<br>• ADI is an existing company, duly organized under the laws of the British Virgin Islands. |
| 5. Master Account, WVP Line of Credit and Related Procedures and Matters | A. WVPH shall, subject to the terms of the Bridge Facility Agreement, deposit the Bridge Finance in the Master Account and FCP shall deposit the corresponding matching FCP Investment in the Master Account, each in accordance with the terms of Section 2 above.<br><br>B. The Master Account shall have FOUR (4) signatories assigned, one from each Party: Ben McConley (FCP), Jason Van Eman (WVPH), Jason Van Eman (WVP) and Marie-France Bastaroli (ADI).<br><br>C. Except as set forth herein with regards to the return of the Bridge Finance, the Bridge Finance shall not be removed from the Master Account and shall not be conveyed, |

LT-005742

transferred, assigned, granted, encumbered, or otherwise used for any purpose other than obtaining the WVP Line of Credit until such time as the WVP Line of Credit is created and the Commitment Amount has been drawn down and deposited in the WVPH Hold Account pursuant to the terms of this Agreement.

D.  All transactions concerning the Master Account, except, as set forth herein with regards to the drawing down and deposit of the WVP Line of Credit in the WVPH Hold Account or the return of the Bridge Finance to ADI, shall require the execution of all four signatories.

E.  At no time shall there be any transfer or removal of the Bridge Finance from the Master Account without the prior express written consent of ADI.

F.  FCP shall create the WVP Line of Credit in the name of WVP for the benefit of WVPH as soon as reasonably practical following the deposit of the Bridge Finance and the FCP Investment in accordance with the terms of Section 2. above, based on the deposited Bridge Finance and the matching FCP Investment, and immediate funding thereafter.

G.  WVP shall not be required to provide the WVP Line of Credit until the Bridge Finance is deposited into the Master Account.

H.  ADI and WVPH will not be responsible for repayment of any portion of the WVP Line of Credit or the FCP Investment.

I.  WVP / FCP are solely responsible for establishing and retiring the WVP Line of Credit and will protect, defend, indemnify and hold ADI and WVPH and their respective members, managers, officers, employees, agents, attorneys, insurers and all other persons acting through or on behalf of ADI and WVPH, harmless from and against any obligations related to or arising out of the WVP Line of Credit and the retiring, or repayment of, the WVP Line of Credit. This includes all of the costs of establishing and retiring the WVP Line of Credit as well as any interest payments associated with the WVP Line of Credit.

J.  After WVPH has verified that it has irrevocably received 100% of the Commitment Amount (i.e. $4,485,000.00) in the WVPH Hold Account, and ADI has confirmed that is has received in cleared funds monies due under the Bridge Facility Agreement from the WVPH Hold Account:

(a)  WVP / FCP may then utilize the Bridge Finance to pay

LT-005743

**Execution Version**

<table>
<tr>
<td></td>
<td>

down fifty percent (50%) of the WVP Line of Credit; and

(b) WVP / FCP will pay down the remaining fifty percent (50%) of the WVP Line of Credit according to an internal schedule. For the avoidance of doubt, in no event shall repayment of the WVP Line of Credit by WVP / FCP, (i) reduce the Commitment Amount (i.e. $4,485,000.00) being received by WVPH into the WVPH Hold Account or (ii) be the responsibility of WVPH or ADI.

K.  The FCP Investment and the ADI Bridge Finance is the full collateral for the WVP Line of Credit provided that the ADI Bridge Finance is non-recourse collateral until repayment to ADI of all sums due to ADI under the Bridge Facility Agreement.

L.  Neither the Picture nor any rights therein or related thereto including, any proceeds derived therefrom or related thereto, shall be pledged, hypothecated and used as collateral in any respect for or in connection with the WVP Line of Credit. For the avoidance of doubt, WVP and FCP will be solely responsible for the WVP Line of Credit based on the FCP Investment and the deposited ADI Bridge Finance and no other assets or resources of ADI and WVPH or the Picture or any rights therein or related thereto will be utilized as collateral for the WVP Line of Credit.

M.  As oversight for WVP, WVP shall appoint two members, Ross Marroso and Jason Van Eman, as WVP's representative (the "**WVP Representative**") to detail out the conditions precedents to release the equity from WVPH in connection with the production and exploitation of the Picture.
</td>
</tr>
<tr>
<td>6.  Funding; Security</td>
<td>

A.  As soon as reasonably practical following the execution of this Agreement (in any event no later than 48 hours from the execution of this Agreement by parties), and in accordance with the terms of this Agreement and the Bridge Facility Agreement, WVPH shall draw down the Bridge Finance and shall deposit the Bridge Finance into the Master Account, being the following:

**Incoming Wire instructions**
FORREST CAPITAL & CO.
Wells Fargo Bank
420 Montgomery Street
San Francisco, CA 94104
Account # 1644585075
ABA 121000248
SWIFT: WFBIUS6S
</td>
</tr>
</table>

LT-005744

|  |  |
|---|---|
|  | Reference: "ADI capital for WVP LOC for WVHP"<br><br>• WVPH Hold account: |

| Bank | ARVEST BANK |
|---|---|
| Swift | ARVTUS44 |
| Account Number | 31602053 |
| Account Name | WVP Holding, LLC |

| 7. Representations | A. Each of the Parties represents, warrants and agrees that: (a) it is a duly organized, valid and extant company authorized to enter into and fully perform under this Agreement without the authorization or permissions of any third party; (b) there are no contracts, agreements or understandings which will or might conflict with its entering into and performing fully under this Agreement; (c) to the best of its knowledge after the exercise of reasonable diligence there are no existing or pending claims, liens, or encumbrances affecting it which might adversely affect the Parties' rights or obligations hereunder, and (d) to the best of its knowledge, entering into and performing this Agreement by it does not violate or infringe upon the rights of any third party.<br><br>B. FCP and WVP, jointly and severally, represent and warrant the following:<br><br>(1) Each of FCP and WVP: (i) is an "accredited investor" as such term is defined in Regulation D promulgated by the Securities and Exchange Commission in the Securities Act of 1933, as amended; (ii) has the right to enter into and fully perform this Agreement and the other agreements contemplated hereunder (including the LP Agreement); (iii) is entering into this Agreement and providing the financing provided for hereunder for its own account and shall not sell or transfer its interest hereunder without the prior written consent of WVPH and without complying with the provisions of all applicable state and federal securities laws, if any; (iv) has sufficient knowledge and experience in similar ventures so as to be able to evaluate the risks and merits of the transaction contemplated herein and is able financially to bear the risk thereof, including a complete loss of the financing provided for herein; (v) understands that this transaction involves a high degree of risk and has independently reviewed the transaction and the risk, and is not relying on any representation or warranty of any nature from WVPH or any employee, representative or agent thereof, regarding the likelihood, or lack thereof, of repayment of the financing provided for herein or any other amounts which may be payable hereunder.<br><br>(2) Each of them is in compliance with all material laws, rules, and regulations relating to obligations set forth |
|---|---|

LT-005745

|  |  |
|---|---|
|  | herein or otherwise affecting the Bridge Finance and the FCP Investment and Funding to be provided hereunder;<br><br>(3) They have ownership, possession, and/or control over a sufficient amount of liquid assets in order to deposit the FCP Investment in the Master Account; and<br><br><br>C. As long as this Agreement is in effect and until their obligations hereunder are fully discharged, FCP and WVP shall:<br><br>(1)     Use the Funding solely for the purposes set forth herein. |
| 8. Indemnification | Each of WVP, FCP and WVPH (the "**Indemnifying Party**") hereby indemnifies, holds harmless and agrees to defend the other Parties (the "Indemnified Parties") against any and all third party claims, damages, penalties, liabilities and costs (including reasonable outside attorneys' fees and disbursements) arising from a breach or alleged breach of the Indemnifying Party's representations, warranties or agreements hereunder, except to the extent the Indemnified Party is entitled to indemnification by one or both of the Indemnified Parties.  This provision shall survive any termination of this Agreement. Parties shall be excused from performance, in regards to time of delivery but not in regards to fulfilling the funding obligation, and shall not be in default in respect of any obligation hereunder to the extent that the failure to perform such obligation is due to a Natural, Financial or Political Force Majeure Event. |
| 9. Confidentiality; Non-Circumvention | The Parties shall keep the terms of this Agreement strictly confidential except: (a) to the extent disclosure is required to effectuate this Agreement; (b) to the extent disclosure is required pursuant to court order or applicable laws or regulations; (c) each Party may disclose the terms hereof to its professional representatives and advisors on a confidential basis and (d) to the extent mutually agreed by the Parties.  In the event any Party discloses the terms herein to any other party as permitted by this Section, such Party shall inform such other party to whom it reveals confidential information hereunder of the confidential nature of such information, and shall be liable for any disclosure by such third party which, such Party made such disclosure, would have been a breach of this Agreement.<br><br>For a period of two (2) years (acknowledged by the Parties as a reasonable term in light of the transaction) from the date of this Agreement as set forth above, WVP (and its parents, principals, affiliates, subsidiaries, directors, officers, and related entities) shall not, for the purpose of entering into investment agreements, directly contact, deal with, transact with, or otherwise be involved with the business of WVPH, or any of such person's or entity's business entities,     shareholders,     members,     trusts,     partners,     parents, |

LT-005746

**Execution Version**

| | subsidiaries, officers, directors, without WVPH's prior express written consent. |
|---|---|
| 10.  Governing Law; Binding Arbitration; Service of Process and Waiver of Injunctive Relief by WVP and FCP | A. This Agreement has been made in and shall be interpreted and governed by the laws of the State of California applicable to agreements entered into and to be performed fully therein, without regard to principles of conflicts of law.<br><br>B. Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by binding arbitration in Miami, Florida before one arbitrator. The arbitration shall be administered by JAMS pursuant to its JAMS' Comprehensive Arbitration Rules and Procedures.  The Parties hereby agree to waive the right to seek punitive damages or equitable or injunctive relief and the arbitrator shall not have the authority to award such damages or relief.  Judgment on the arbitration award may be entered in any court having jurisdiction. The prevailing party in any arbitration shall be entitled to recover its reasonable attorney's fees and costs incurred in connection with the arbitration against each non-prevailing party. |
| 11.  Binding Authority; Assignment | The person signing on behalf of each of the Parties represents that he or she has the right and power to execute this Agreement on behalf of his/her respective party and to bind the same to the terms set forth herein.<br><br>This Agreement shall not be assignable by any Party without the prior written consent of the non-assigning Parties. Any assignment in violation of this section shall be void from the making thereof and of no force or effect.  This Agreement shall inure to the benefit of the Parties and their respective successors and permitted assigns. |
| 12.  Termination and Notice of Breach | Any Party shall have the right to terminate this Agreement if:<br><br>A. Another Party materially breaches its obligations hereunder and fails to cure such breach within a reasonable time, not to exceed two (2) business days following receipt of written notice from one or both of the other Parties; or<br><br>B. The condition precedent as stated in Section 5 above, in regards to funding the Master Account with respect to the Bridge Finance, is not satisfied within two (2) business days after execution of this Agreement by all Parties.<br><br>The termination of this Agreement shall not prejudice any of the |

LT-005747

**Execution Version**

| | |
|---|---|
| | rights or remedies of the Parties hereto.<br><br>Any Party that is aware of a breach or default hereunder shall give the non-breaching Parties prompt written notice thereof and each Party shall give the other Parties prompt written notice of any changes in management, litigation, or of any other matter which has resulted in or may result in a materially adverse change in such Party's financial condition or operations. |
| 13. No Waiver; Severability | No breach of any provision of this Agreement may be waived, and no such breach shall be deemed waived, unless such waiver is in writing.  The waiver of any breach of this Agreement shall not be deemed to be a waiver of any other breach of this Agreement (or any provision hereof).   No provision of this Agreement shall be interpreted for or against any Party because that Party and/or its legal representative drafted such provision.  If any provision of this Agreement is or shall be deemed to be invalid, illegal or unenforceable, such provision shall be deemed modified or deleted, only to the extent necessary to render such provision (and the remainder of this Agreement, if otherwise affected) valid, legal and enforceable, and so as modified, this Agreement shall continue in full force and effect.<br><br>The Parties acknowledge that each, respectively, has reviewed and revised this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.  All pronouns and common nouns shall be deemed to refer to the masculine, feminine, neuter, singular, and plural, as the context may require. |
| 14. Further Assurances; Entire Agreement; Notices | A.  The Parties hereby agree to do such acts and execute such documents at the request of any other Party as may be reasonably necessary to give full effect to this Agreement and the terms set forth herein.<br><br>B.  This Agreement sets forth the entire understanding of the Parties relating to the subject matter hereof, and all prior understandings, whether written or oral, express or implied, are superseded by this Agreement.  This Agreement may not be amended or modified except by a writing signed by the Parties. This Agreement may be executed in multiple counterparts (including by facsimile or email by a signed/scanned PDF), each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same agreement.<br><br>C.  All notices and payments which either of the Parties may be required to give under this Agreement will be in writing and |

LT-005748

will be served by registered or certified mail, nationally recognized next-day or same-day courier service, facsimile (with a copy by registered or certified mail), electronic transmission, including email (with a copy by registered or certified mail), or personal delivery, as appropriate, as set forth below.

D. Except as otherwise specified herein, all notices and other communications shall be deemed to have been given on the date of receipt if delivered personally, two (2) business days after posting if transmitted by registered or certified mail or courier service, or the date of transmission if transmitted by facsimile or electronically transmitted (provided that if transmitted after the recipient's regular business hours, then such notice shall be deemed received on the next business day), whichever shall first occur.

E. Until further notice, the addresses of the parties for any such notices or payments shall be:

If to ADANA INVESTING, INC:

c/o Berwin Leighton Paisner LLP,
Adelaide House,
London Bridge,
London
EC4R 9hA
Tel: +44 20 3400 1000
Fax: +44 20 3400 1111
Email: Graham.Shear@blplaw.com

With a copy to:

Email: Marc.Trottier@blplaw.com

If to: WVP Holding, LLC.
P.O. Box 3524
Bartlesville, OK 74006
Attn: Jason Van Eman
Tel: 818-720-3182
Fax: 720-721-1702
Email: jason@wvp-inc.com

With a copy to:
The Rossi Law Group, P.A.
21218 St. Andrews Blvd. #225
Boca Raton, FL USA 33433

LT-005749

|  | Tel:  561-452-0676<br>Fax:  561-892-8005<br>Email:  italpower@aol.com<br>Attn:  Richard Rossi<br><br><br>If to:  WVP and/or FCP<br>P.O. Box 3524<br>Bartlesville, OK 74006<br>Attn:  Jason Van Eman<br>Tel:  818-720-3182<br>Fax:  720-721-1702<br>Email:  jason@wvp-inc.com<br><br>With a copy to:<br>The Rossi Law Group, P.A.<br>21218 St. Andrews Blvd. #225<br>Boca Raton, FL USA 33433<br>Tel:  561-452-0676<br>Fax:  561-892-8005<br>Email:  italpower@aol.com<br>Attn:  Richard Rossi |

The terms of this Agreement shall be binding upon the Parties and their respective successors and permitted assigns.

*[signature page to follow]*

LT-005750

**Execution Version**

**SIGNATURE PAGE TO
WVPH_WVP_FCP
FUNDING AGREEMENT**

**AGREED TO AND ACCEPTED:**

**WEATHERVANE PRODUCTIONS, INC.,** a Nevada Corporation

*I have the authority to bind the company.*

By:_____
Jason Van Eman
President

Date:  06-18-15

**ADANA INVESTING, INC.,**
a company registered in the British Virgin Islands

*I have the authority to bind the company.*

By: _____
Marie-France Bastaroli
Authorized signatory

Date:  06-18-15

**FORREST CAPITAL PARTNERS, INC.,**
a Florida Corporation

*I have the authority to bind the company.*

By:_____
Benjamin McConley
Managing Partner

Date:  06-18-15

**WVP HOLDING, LLC.,**
a Oklahoma Limited Liability Company

*I have the authority to bind the company.*

By:_____
Jason Van Eman
Member

Date:  06-18-15

*[notary page to follow]*

13 of 17

LT-005751

**NOTARY PAGE TO
WVPH_WVP_WPF
FUNDING AGREEMENT**

STATE OF OKLAHOMA        )
                                     :ss
COUNTY OF WASHINGTON     )

Before me, the undersigned, a Notary Public in and for said County and State, on this 18th day of June, 2015, appeared personally Jason Van Eman to me known to be the identical person who executed the within and foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act and deed for the uses and purposes therein set forth.

_____
Notary Public

My Commission Expires:_____ (Seal)

STATE OF FLORIDA                    )
                                     :ss
COUNTY OF _____     \_\_\_)

Before me, the undersigned, a Notary Public in and for said County and State, on this 18th day of June, 2015, appeared personally Benjamin McConley to me known to be the identical person who executed the within and foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act and deed for the uses and purposes therein set forth.

_____
Notary Public

My Commission Expires:_____ (Seal)

LT-005752

**EXHIBIT A**
**INVESTMENT SCHEDULE**

The effective date (the "Effective Date" or "ED") shall be the date on which the Agreement is fully executed by all parties.

<u>Investment</u>

| Tranche | Investment Amount | Aggregate Deposited | Date | FCP/WVP Limited Partner Interests |
|---|---|---|---|---|
| WVPH Deposit | | $2,242,500.00 | Pd  06-19-15 | |
| FCP Internal Wells Fargo Private | | $2,242,500.00 | On or about 06-__-15 | |
| Tranche FCP to WVPH | $4,485,000.00 | | LOC 120 days after engagement* with FCP | TBD% |
| **Total:** | **$4,485,000.00** | **$4,485,000.00** | | **100%** |

\* Engagement refers to the execution of the Agreement and the clearing of the deposit of the agreed US $2,242,500.00 from ADI into the Master account.

LT-005753

**EXHIBIT B**

**FCP ASSETS**

FCP's assets held by Wells Fargo Private are liquid assets. These assets are but not limited to certificate of deposits, capital in savings accounts and money markets, mutual funds, stocks and bonds, account receivable, demand and time deposits, precious metals.  As a family office there is not one set of assets that are utilized as the collateral for the Line of Credit, but a large grouping of several families assets that are held and managed by Wells Fargo Private.  As such any number of assets can and will be used to be the collateral for the Line of Credit.

LT-005754

**Appendix 1**
**Bridge Facility Agreement**

LT-005755