# EXHIBIT 16

**SETTLEMENT AND RELEASE AGREEMENT**

This Settlement and Release Agreement ("Agreement") is entered into as of May 15, 2015 (the "Effective Date") by and between Euro Pictures, Inc. ("Claimant"), on the one hand, and Urge Productions, LLC ("Production Company"), on the other hand. Claimant and Production Company are sometimes referred to individually as a "party" or collectively as the "parties".

1. Nature of Agreement:

A. Production Company is in the process of producing and owns and controls the rights to the motion picture project currently entitled "Urge" starring Pierce Brosnan and Danny Masterson and directed by Aaron Kaufman (the "Picture");

B. Claimant and its principals have been the defendant(s) to claims made by I.A.T.S.E. as a result of the Production Company's failure to make certain payments (the "Obligations") to employees when and as due, in respect of the Picture (as hereinafter defined) relating to an agreement dated August 7, 2014 and entered into by and between Claimant and Production Company with respect to the Picture (the "Prior Agreement"). Accordingly, the Claimant has claims against Production Company for, among other things, breach of contract and indemnification, the validity of which Production Company neither admits nor denies; (the "Claims");

C. The parties have agreed to resolve all claims between them arising out of and relating to the Picture and the Claims on the terms and conditions set forth in this Agreement.

2. Conditions Precedent:

The effectiveness of this Agreement is conditioned upon satisfaction of each of the following:

A. Full execution and delivery of this Agreement by each of the parties; full execution and delivery by Claimant of the Copyright Mortgage and Assignment to be entered into by Claimant in favor of Raven Asset-Based Opportunity Fund II LP ("Raven") with respect to the Picture (the "Copyright Mortgage") and approval of the UCC-1 prepared in favor of Raven (the "UCC-1"); and full execution and delivery of the Certificate of Results and Proceeds for the services of Sofia Sondervan with respect to the Picture (the "Certificate").

B. Closing of additional financing for the Picture by the Production Company, which is currently in process, the closing of which shall be confirmed to Claimant's counsel by Production Company's counsel via e-mail; and

C. Payment by Production Company to Claimant of the Payment (defined below) to Claimant no later than May 30, 2015.

1

LT-006514

    D.  Payment by Production Company to I.A.T.S.E. of the outstanding obligations as set forth in Section 3.B., below.

3.    <u>Compromise</u>:  The parties hereby agree to fully and finally settle their disputes on the terms set forth below:

    A.    <u>Payment to Claimant</u>: Subject to the terms of this Agreement, Production Company shall pay Claimant the sum of $6,500 (the "<u>Additional Payment</u>").  For the avoidance of doubt, Claimant acknowledges that Production Company previously paid $20,000 (the "<u>Prior Fee</u>") to Dutch Tilt LLC ("<u>Dutch Tilt</u>"), pursuant to Paragraph 5 of the Prior Agreement, and hereby confirms that payment of the Prior Fee to Dutch Tilt constituted payment in full for all services rendered by Euro Pictures with regard to the Picture, and, except for the Additional Payment, no further consideration is due and payable to either Claimant or Dutch Tilt in connection with the Picture

    B.    <u>Payment to I.A.T.S.E</u>: Subject to the terms of this Agreement, Production Company shall pay the outstanding obligations due to the International Alliance of Theatrical Stage Employees ("<u>I.A.T.S.E</u>") under the National Low-Budget Agreement ("<u>NG</u>") of $520,905.69 (or, if additional incremental amounts have accrued and are owing to I.A.T.S.E. before payment is made the Production Company, the payment amount shall be increased to pay such additional incremental amounts; or, a lesser amount if, and only if, I.A.T.S.E. agrees to accept a lesser amount as payment in full, e.g., by waiving or reducing fines, penalties or interest).

    C.    I.A.T.S.E. Escrow for Future Services: Subject to the terms of this agreement, Production Company shall establish an escrow or place in deposit with its payroll company, Ease Entertainment ("<u>Escrow Entity</u>") the mutually-approved estimate of amounts that will become payable to I.A.T.S.E. union members who work on the Picture in the future; provided however, that all amounts so escrowed must be used to make the applicable payments to the I.A.T.S.E union members who render the services for which such amounts are estimated, and provided further, that the failure to establish an escrow or place funds in deposit shall not affect the release of Claims (excluding, for the avoidance of doubt, claims accruing to Claimant after the Effective Date) released herein by Claimant, it being acknowledged that Production Company shall not have any obligation to escrow or place funds in deposit at any time when subsequent employment of I.A.T.S.E. members in not imminently expected.  As of the Effective Date, Production Company represents that a deposit of $100,000 has been provided for such purposes.

    D.    In no way meant to limit the foregoing and in any event, as between the parties hereto the Production Company shall be solely responsible for discharging obligations incurred to I.A.T.S.E. after the Effective Date, including but not limited to the notices of any overages due to I.A.T.S.E. under Article I Section D.

    E.    In no way meant to limit the terms of the subsection D, above, the Production Company shall guarantee that the Picture does not lose I.A.T.S.E. Tier Three characterization.

2

LT-006515

F.      The Production Company shall provide the Claimant with monthly cost reports which shall reasonably evidence the discharge of the obligations set forth in (D) and (E) above to the extent applicable; provided, however, that a failure to do so shall not constitute a breach of this Agreement , unless such breach (i) remains uncured following thirty (30) days' written notice thereof and (ii) is followed by a Future IA Euro Claim.

G.      <u>Additional Terms</u>:  The additional terms and conditions set forth in this Agreement including, without limitation, the mutual releases, non-disparagement and non-interference provisions herein.

4.      <u>Mutual Releases</u>:  Except for the obligations expressly set forth in this Agreement:

A.      Claimant hereby releases and forever discharges Production Company and its respective affiliates, related entities, employees, agents, insurers, attorneys and all other persons acting through or on behalf of them, including, without limitation, Aaron Kaufman, Lotus Land Entertainment, and Bridgeworks Media Capital Ltd. as well as all distributors, exhibitors, licensees, financiers and all other persons who participated or participate in the production, distribution, management or exploitation of the Picture (and each of their respective subsidiaries, parents, affiliates, related entities, principals, members, officers, shareholders, directors, employees, agents, insurers, attorneys and all other persons acting through or on behalf of them) of and from any and all manner of action or actions, cause or causes of action, in law or in equity, judgments, suits, debts, liens, contracts, agreements, guaranties, promises, liabilities, claims, demands, damages, losses, interest, penalties, costs or expenses (including without limitation attorneys' fees and disbursements), concerning, arising out of or relating to the Picture or the Claims through the Effective Date.

B.      Production Company and its respective affiliates, related entities, employees, agents, insurers, attorneys and other representatives, including, without limitation, Aaron Kaufman, Lotus Land Entertainment, (and each of their respective subsidiaries, parents, affiliates, related entities, principals, members, officers, shareholders, directors, employees, agents, insurers, attorneys and all other persons acting through or on behalf of them) in their capacity as such or to the extent the executing parties below can act on their behalf hereby releases and forever discharges Claimant and Claimant's owners, principals (including Sofia Sondervan and Petra Hoebel) affiliates, related entities, employees, agents, insurers, attorneys and all other persons acting through or on behalf of them, of and from any and all manner of action or actions, cause or causes of action, in law or in equity, judgments, suits, debts, liens, contracts, agreements, guaranties, promises, liabilities, claims, demands, damages, losses, interest, penalties, costs or expenses (including without limitation attorneys' fees and disbursements), concerning, arising out of or relating to the Picture or the Claims through the Effective Date.

C.      The parties, and each of them, acknowledge that they are familiar with the provisions of California Civil Code § 1542, which provides as follows:

> A general release does not extend to claims which the
> creditor does not know or suspect to exist in his or her favor
> at the time of executing the release, which if known by him

3

LT-006516

or her must have materially affected his or her settlement with the debtor.

Each of the parties being aware of Civil Code § 1542, hereby expressly waives any rights he or it may have thereunder, as well as any other statute or common law principle of similar effect.

Each of the parties understands and acknowledges that one of the consequences of this waiver of California Civil Code § 1542 is that even if he/she/it should eventually suffer any damages of any action or omission committed or caused by any other person specifically released herein, he/she/it will not be able to make any claims for those damages.  Furthermore, each of the parties acknowledges that he/it consciously intends these consequences even as to claims that may exist as of the date hereof but which he/she/it does not know exist, and which, if known, would materially affect his/her/its decision to execute the releases herein, regardless of whether such lack of knowledge is the result of ignorance, oversight, error, negligence, or any other cause.

D.      Each of the parties acknowledges and warrants that his/her/its execution of the releases herein is free and voluntary.

4.      No Equitable Relief; Covenant Not to Sue:  In the event of a breach of this Agreement or in the event of any act or omission by any third party, each party's remedies shall be limited to money damages, if any, and in no event shall either party be entitled to injunctive or other equitable relief, including, without limitation, rescission or termination of this Agreement.  Without limiting the foregoing, in no event shall either party be entitled to (or seek to) enjoin or otherwise interfere with the exploitation, marketing or other use of the Picture (or any allied or ancillary rights relating thereto).  Each of the parties hereto agrees that he/she/it will not bring nor authorize any other person to bring any claims which are released herein; for avoidance of doubt, the foregoing covenant not to sue does not apply to obligations created by this Agreement.

Solely in the case of one or more claims which (a) are future claims (namely a suit, action, arbitration, case or other litigation stemming from claims arising after the Effective Date) (b) against Euro and/or its principals, Petra Hoebel and/or Sofia Sondervan (c) by I.A.T.S.E.  pursuant to the Prior Agreement and which are (d) solely in respect to (e) non-payment or late payment to I.A.T.S.E. members of amounts due (or interest or other penalties thereupon) (f) specifically and solely as a result of services by I.A.T.S.E. members rendered after the Effective Date but including any retroactive amounts incurred or owed as a result of the Picture exceeding the Tier Three production costs amounts of the 2014-2016 Low Budget Theatrical Agreement (g) for the Picture only (any such claims meeting all of the foregoing criteria, "Future IA EURO Claims") then, in such case, and notwithstanding anything herein to the contrary Claimant shall not as a result of entering into this Agreement, lose or suffer any derogation of rights under the Prior Agreement (including the Production Company's obligation to indemnify Claimant subject to the terms and conditions of the Prior Agreement) with respect to Future IA Euro Claims.  With

4

LT-006517

respect to any Future IA Euro Claim that proceeds to arbitration or other litigation in which Euro, Sofia Sondervan, and/or Petra Hoebel is a defendant and I.A.T.S.E. and/or any member thereof in its capacity as such is a plaintiff, the Production Company (and any successor-in-interest thereto with respect to production of the Picture) shall indemnify and hold harmless Claimant, Sofia Sondervan, and Petra Hoebel against any liability, cost, damage, obligation, fee, expense or loss not arising from or relating to the wilful misconduct or gross negligence of such defendants.

5.      Non-Disparagement and Press Releases:  Neither Claimant, Sofia Sondervan, nor Petra Hoebel shall make or publish any statement (orally or in writing) or instigate, assist or participate in the making or publication of any statement which disparages the Picture, in any respect, or in which Claimant asserts any claim concerning the Picture.  Production Company, including its principals and owners and including Aaron Kaufman,shall not make or publish any statement (orally or in writing) or instigate, assist or participate in the making or publication of any statement which disparages the Claimant, Sofia Sondervan or Petra Hoebel in any respect or asserting any claim.  In addition, Claimant shall not publish nor issue any press release concerning the Picture.  Neither party shall publish (orally or in writing) this Agreement or any material terms concerning this Agreement. The foregoing restrictions shall not apply to statements or other matters: (i) as compelled by applicable law; (ii) as is necessary to comply with specific provisions of this Agreement, in which event, such disclosure shall be to persons on a "need to know" basis and such disclosure shall be limited to the greatest extent reasonably practicable; and (iii) to each party's attorneys, immediate family members, professional advisors and financial and tax advisors, provided such persons first agree to adhere to the restrictions set forth in this section.

6.      No Admission of Liability:  The parties each understand and acknowledge that this Agreement represents a compromise settlement of a legal dispute which the parties enter into solely to avoid the expense and uncertainty of litigation.  Nothing in this Agreement shall be deemed to be or construed as an admission of any liability or wrongdoing by or against any party hereto, but Production Company acknowledges that the Claimant and its principals, and Production Company and its principals, have been the subject of claims asserted by I.A.T.S.E. for non-payment of monies to I.A.T.S.E. members, the obligations for which, in the opinion of Claimant, as between the parties hereto, was the sole and exclusive responsibility of Production Company.

7.      No Representations:  The parties each hereby acknowledge and agree that no representation of any kind or nature has been made by any of them or by any representative, employee, attorney or agent to induce any of them to enter into this Agreement or the exhibit hereto, except as set forth in this Agreement.

8.      Execution of Documents:  In addition to the acts set forth in this Agreement, each party likewise agrees to perform or cause to be performed all further acts consistent herewith, and to execute or cause to be executed promptly all documents and instruments consistent herewith, necessary to give effect to each term and the purpose and intent of this Agreement and the exhibit hereto and to refrain from taking any steps which could prevent the other party from receiving the benefits of the Agreement.

5

LT-006518

9.      Conditions of Execution:  Each party to this Agreement acknowledges and warrants that in executing this Agreement and the exhibit hereto he has relied upon legal advice from the attorney of his choice (for legal advice, but not for business advice) or had a reasonable opportunity to do so and that each party fully understands the terms of this Agreement.  The executed copy of this Agreement by Claimant as well as the Certificate, UCC-1 financing statement, and Copyright Mortgage shall be provided to the attorneys for the lender (Greenberg Traurig) with whom the Company intends to close the additional production financing and will not be deemed released until such time as the Conditions Precedent set forth in Section 2 of this Agreement have been fully satisfied.

10.     Attorneys' Fees and Disputes; Mandatory Arbitration:   Except as otherwise specifically noted herein, each party shall bear its/his/her own attorneys' fees in connection with the negotiation and preparation of this Agreement and with respect to all matters released hereunder and all other matters through the date this Agreement has been fully executed and delivered.  Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in New York City before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules.  Judgment on the Award may be entered in any court having jurisdiction. Except as limited in this Agreement (including, pursuant to Section 4) this clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction or in enforcement of the provisions set forth in Section 5 of this Agreement.  The prevailing party in any action to arising out of or relating to this Agreement, including any arbitration, shall be entitled to its reasonable attorney's fees and costs, including those incurred for expert witnesses and for the enforcement of any order or judgment relating thereto.

11.     Entire Agreement:  This Agreement constitutes the final expression of and contains the entire agreement between the parties with respect to the subject matter hereof.  Each party hereto acknowledges that no other party, nor agent or attorney of any other party, has made any promise, representation or warranty whatsoever, express or implied, not contained herein to induce him/her/it to execute this Agreement, and acknowledges that he/it has not executed this Agreement in reliance upon any outside representation.  This Agreement supersedes all prior agreements, negotiations and oral understandings relating to the subject matter hereof.  The parties intend this Agreement to be a fully integrated contract.

12.     Modification:  This Agreement may not be altered, modified, or otherwise changed in any respect except by a writing duly executed by each of the parties who signed the Agreement.  Any purported alteration, modification, or other change which fails to comply with these requirements shall be deemed null and void.

13.     Governing Law:  This Agreement shall be construed and interpreted in accordance with, the laws of the State of California pertaining to agreements entered into and to be performed in California.

LT-006519

14.     Counterparts:  This Agreement may be executed in one or more counterparts that shall be deemed effective upon full execution and delivery by all parties.  Each counterpart shall be deemed an original, but all of which together shall constitute one in the same instrument and agreement.  Copies bearing facsimile, pdf or tiff signatures shall be deemed original signatures and shall have the same force and effect as an original signature.

15.     Authority:  The persons executing this Agreement represent and warrant that they have full right and authority to enter into this Agreement on behalf of the parties hereto and the full right and authority to execute the instruments and to fully bind said parties to the terms and obligations of this Agreement, and that such persons have not heretofore assigned, encumbered or in any manner transferred to any person or entity all or any portion of the rights, interests or claims covered or released by this Agreement.  No party hereto has commenced any action or proceeding in any court, tribunal or other forum relating to the subject matter hereof.

16.     Binding Effect:  This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective heirs, devisees, affiliates, spouses, subsidiaries, successors, assigns, agents, officers, directors, employees, shareholders, members, associates, legal representatives, executors and administrators.

17.     No Continuing Waiver:  Any waiver by any party of any breach of any term or provision of this Agreement shall neither be, nor be construed as being, a waiver of any preceding, concurrent or succeeding breach of the same or any other terms or provision hereof.

18.     Drafting of Agreement:  Each party represents and warrants that he/it has cooperated and participated in the drafting and preparation of this Agreement.  Each party to this Agreement acknowledges that this Agreement and its reduction to final written form is the result of extensive arms-length good faith negotiations.  Accordingly, the parties hereby acknowledge and agree that the Agreement shall not be construed or interpreted in favor or against any of the parties by virtue of the identity of its preparer.

[Remainder of Page Left Blank Intentionally; Signatures on Following Page]

LT-006520

AGREED AND ACCEPTED:

| URGE PRODUCTIONS, LLC | EURO PICTURES, INC. |
|---|---|
| By: _____<br>AARON KAUFMAN,<br>Authorized Signatory | By: _____<br>SOFIA SONDERVAN-BILD,<br>Authorized Signatory |
| | |

8

LT-006521