# EXHIBIT 20

Case 1:15-cv-24038-MGC Document 182 Entered on FLSD Docket 05/20/2016 Page 2 of 56

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:15-cv-24038-COOKE/TORRES**

ADANA INVESTING, INC.,
a British Virgin Islands company,

      Plaintiff,

v.

FORREST CAPITAL PARTNERS, INC.,
a Florida corporation,
FORREST CAPITAL AND CO LLC,
a Florida limited liability company,
WEATHERVANE PRODUCTIONS, INC.,
a Nevada corporation, WVP HOLDING, LLC,
an Oklahoma limited liability company,
BENJAMIN MCCONLEY, an individual,
JASON VAN EMAN, an individual,
THE JV GROUP, LLC, an Oklahoma limited
liability company, and CAPITAL B, LLC, a
Florida limited liability company,

      Defendants.

_____ /

**AMENDED COMPLAINT**

Plaintiff ADANA INVESTING, INC. ("ADANA"), by and through counsel, brings this

Amended Complaint against Defendants FORREST CAPITAL PARTNERS, INC. ("FORREST

CAPITAL INC."); FORREST CAPITAL AND CO LLC ("FORREST CAPITAL LLC");

WEATHERVANE PRODUCTIONS, INC. ("WEATHERVANE"); WVP HOLDING, LLC

("WVP HOLDING"); BENJAMIN MCCONLEY ("MCCONLEY"); JASON VAN EMAN

("VAN EMAN"); THE JV GROUP, LLC ("THE JV GROUP"); and CAPITAL B, LLC

("CAPITAL B"), and states:

1

**EXHIBIT**

**26**

Case 1:20-cv-21536-MGC Document 152 Entered on FLSD Docket 05/26/2023 Page 3 of 56

## PARTIES

1.      Plaintiff ADANA is a British Virgin Islands corporation, with its principal place of business in Tortola, British Virgin Islands.

2.      Defendant FORREST CAPITAL INC. is a Florida corporation, with its principal place of business in Ft. Lauderdale, Florida.

3.      Defendant FORREST CAPITAL LLC is a Florida limited liability company, with its principal place of business in Ft. Lauderdale, Florida.

4.      Defendant WEATHERVANE is a Nevada corporation, with its principal place of business in Bartlesville, Oklahoma.

5.      Defendant WVP HOLDING is an Oklahoma limited liability company, with its principal place of business in Tulsa, Oklahoma.

6.      Defendant MCCONLEY is an individual and a citizen of Florida, and resides in Miami, Florida.

7.      Defendant VAN EMAN is an individual and a citizen of Oklahoma, and resides in Bartlesville, Oklahoma.

8.      Defendant THE JV GROUP is an Oklahoma limited liability company, with its principal place of business in Tulsa, Oklahoma.

9.      Defendant CAPITAL B is a Florida limited liability company, with its principal place of business in Miami, Florida.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States and a citizen of a foreign state.

Case 1:20-cv-21536-MGC Document 101-20 Entered on FLSD Docket 01/04/2021 Page 4 of 56

11.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events and omissions giving rise to ADANA's claims occurred in this District and, upon information and belief, a substantial part of the property that is subject of this action may be or may have been at certain times relevant to this action in this District.

12.     The Court has personal jurisdiction over FORREST CAPITAL INC. because it is a Florida corporation, with its principal place of business in Ft. Lauderdale, Florida.

13.     The Court has personal jurisdiction over FORREST CAPITAL LLC because it is a Florida company, with its principal place of business in Ft. Lauderdale, Florida.

14.     The Court has personal jurisdiction over WEATHERVANE because it committed a tort within Florida, and participated in a civil conspiracy, at least one act in furtherance of which was committed in Florida.

15.     The Court has personal jurisdiction over WVP HOLDING because it committed a tort within Florida and participated in a civil conspiracy, at least one act in furtherance of which was committed in Florida.

16.     The Court has personal jurisdiction over MCCONLEY because he is a citizen of Florida, committed a tort within Florida, and participated in a civil conspiracy, at least one act in furtherance of which was committed in Florida.

17.     The Court has personal jurisdiction over VAN EMAM because he committed a tort within Florida and participated in a civil conspiracy, at least one act in furtherance of which was committed in Florida.

18.     The Court has personal jurisdiction over THE JV GROUP because it participated in a civil conspiracy, at least one act in furtherance of which was committed in Florida, and THE JV GROUP is the alter ego of Defendant VAN EMAN.

19. The Court has personal jurisdiction over CAPITAL B because it is a Florida company , with its principal place of business in Miami, Florida.

## FACTS

20. FORREST CAPITAL INC. is a Florida-based investment office.

21. FORREST CAPITAL LLC is an entity affiliated with FORREST CAPITAL INC.

22. WEATHERVANE is the film and entertainment financing arm of FORREST CAPITAL.

23. WVP HOLDING is a special purpose vehicle affiliated with WEATHERVANE to provide film financing.

24. FORREST CAPITAL INC., FORREST CAPITAL LLC, WEATHERVANE, and WVP HOLDING are all owned and controlled by MCCONLEY and VAN EMAN.

25. THE JV GROUP was created on September 22, 2015, is owned and controlled by VAN EMAN, and is the alter ego of VAN EMAN.

26. VAN EMAN conducts business under the name THE JV GROUP.

### THE MAY LOAN

#### *Defendants Fraudulently Induce Plaintiff to Loan $15 Million*

27. In or around January 2015, VAN EMAN, along with two other individuals referred to as "arrangers," represented to ADANA that WEATHERVANE had the opportunity to invest in three films being produced by Aldamisa Releasing, LLC.

28. VAN EMAN and these arrangers represented to ADANA that VAN EMAN had created a special purpose vehicle, WVP Holding, which had entered into an agreement with Aldamisa Releasing, LLC to provide financing for the three films.

29. VAN EMAN represented to ADANA that, in order to provide the financing required by the agreement with Aldamisa Releasing, LLC, WVP HOLDING intended to secure a

4

$30 million line of credit (the "First Line of Credit") from Wells Fargo Bank, N.A. ("Wells Fargo").

30. VAN EMAN also represented to ADANA that, to obtain the $30 million Line of Credit, WVP HOLDING needed to raise an equivalent amount as collateral.

31. VAN EMAN further represented to ADANA that WVP had already received a commitment from FORREST CAPITAL INC. to loan $15 million to WVP HOLDING on the condition that WVP HOLDING first secure matched funding in the amount of $15 million. VAN EMAN represented to ADANA that FORREST CAPITAL INC.'s charter prohibited it from lending money unless matched funding from another lender was also made.

32. VAN EMAN then proposed that ADANA provide a short-term, $15 million bridge loan (the "$15 Million Bridge Loan") as the matched funding needed to obtain the $15 million loan from FORREST CAPITAL INC., with the ultimate goal of securing the First Line of Credit from Wells Fargo.

33. VAN EMAN represented to ADANA that once WVP HOLDING obtained the First Line of Credit, WVP HOLDING would repay the $15 Million Bridge Loan to ADANA with interest.

34. ADANA reasonably relied on the representations made by VAN EMAN. To wit, ADANA relied on the representations that VAN EMAN, WEATHERVANE, WVP HOLDING, and FORREST CAPITAL INC. intended to finance three films; that Wells Fargo required $30 million in collateral before issuing the First Line of Credit; and that while FORREST CAPITAL INC. had committed to investing $15 million toward the film financing, FORREST CAPITAL INC.'s charter required matched financing before FORREST CAPITAL INC. could make the investment.

35.     In reliance on the representations made by VAN EMAN, ADANA agreed to provide the $15 Million Bridge Loan to WVP HOLDING.

36.     On or about May 14, 2015, ADANA and WVP HOLDING entered into a Bridging Facility Agreement, dated as of May 15, 2015 (the "May 15, 2015 Bridging Facility Agreement"). A true and correct copy of the May 15, 2015 Bridging Facility Agreement is attached hereto as **Exhibit "1"**.

37.     The May 15, 2015 Bridging Facility Agreement provided, in relevant part and in summary, that:

    a.  ADANA would lend $15 million to WVP HOLDING at 2% interest per month, with 7% minimum interest over the term of the $15 Million Bridge Loan;

    b.  WVP HOLDING was obligated to repay the $15 Million Bridge Loan to ADANA within 125 days (the "First Repayment Date").

38.     Upon obtaining the proceeds from the $15 Million Bridge Loan, WVP Holding was to deposit the proceeds of the loan into an account in the name of FORREST CAPITAL LLC at Wells Fargo (the "Master Account").

39.     Once deposited into the Master Account, the loan proceeds were to be used in accordance with the terms of a Funding Agreement, dated as of May 15, 2015, among ADANA, FORREST CAPITAL INC., WEATHERVANE, and WVP HOLDING (the "May 15, 2015 Funding Agreement").

40.     The May 15, 2015 Funding Agreement provided, in relevant part and in summary, as follows:

    a.  FORREST CAPITAL INC. would contribute an additional $15 million to the Master Account.

6

b. After a total of $30 million in funds was received in the Master Account, FORREST CAPITAL INC., on behalf of WEATERVANE, would apply to Wells Fargo for the First Line of Credit using the $30 million then in the Master Account as collateral.

c. Upon receipt of the Line of Credit, FORREST CAPITAL INC. would transfer a draw from the First Line of Credit to account no. XXXXX772 at Arvest Bank ("Arvest") in the name of WVP HOLDING (the "Holding Account").

d. FORREST CAPITAL INC. was obligated to transfer the amount drawn from the First Line of Credit to the Holding Account no later than 120 days from the date on which WVP Holding drew down the $15 million in proceeds from the $15 Million Bridge Loan.

e. WVP HOLDING would then transfer $15 million, plus 2% interest per month (subject to 7% minimum interest over the term of the $15 Million Bridge Loan) plus fees and expenses, from the Holding Account back to ADANA.

f. The proceeds from ADANA's $15 million loan were to be used only for the purpose of obtaining the First Line of Credit.

g. The proceeds from ADANA's $15 million loan could not be removed or transferred from the Master Account without ADANA's prior express written consent.

h. In the event of default or if the First Line of Credit did not materialize, Wells Fargo was authorized to return the proceeds from ADANA's $15 million loan to ADANA without further approval by FORREST CAPITAL INC., WEATHERVANE, or WVP HOLDING.

41. Prior to the execution of the May 15, 2015 Bridging Facility Agreement, on May 13, 2015, VAN EMAN provided ADANA with a letter from Benjamin Rafael, purportedly a banker at Wells Fargo in Miami, Florida. In Mr. Rafael's letter, Wells Fargo confirmed that it "irrevocably and unconditionally" agreed to open the Master Account for the sole purpose of holding the funds loaned by ADANA and FORREST CAPITAL INC., and that it would manage the Master Account in accordance with the terms of the May 15, 2015 Funding Agreement (the "May 12, 2015 Wells Fargo Letter"). *See* Exhibit "A" to the October 27, 2015 Declaration of Marc Trottier [10/27/15 Trottier Decl.], attached hereto as **Exhibit "2"**.

42. ADANA reasonably relied on the representations in the May 12, 2015 Wells Fargo Letter. To wit, ADANA reasonably relied on the representation that Wells Fargo would manage the Master Account in accordance with the terms of the May 15, 2015 Funding Agreement.

43. ADANA, FORREST CAPITAL INC., and WVP HOLDING also executed a Security Agreement, dated May 15, 2015 (the "First May 15, 2015 Security Agreement"). A true and correct copy of the "First May 15, 2015 Security Agreement" is attached hereto as **Exhibit "3"**.

44. The First May 15, 2015 Security Agreement provided, in relevant part and in summary, that FORREST CAPITAL INC. and WVP HOLDING granted to ADANA a security interest in the $15 million (the "Collateral"). ¶¶ 1&2. In addition, the First May 15, 2015 Security Agreement provided, in relevant part and in summary, that if there was a default under the May 15, 2015 Bridging Facility Agreement, then (i) the $15 million was to be held in trust for ADANA; (ii) ADANA has an immediate "right to take possession of the Collateral"; and (iii) FORREST CAPITAL INC. and WVP HOLDING "waive[] any and all rights that [they] may

have to a judicial hearing in advance of the enforcement of any of the Secured Parties rights and remedies." ¶¶ 5&6(a)(i).

45. In addition, ADANA and WVP HOLDING executed a separate Security Agreement, also dated May 15, 2015 (the "Second May 15, 2015 Security Agreement"), pursuant to which WVP HOLDING granted to ADANA a security interest in all of WVP HOLDING's accounts, letters of credit, and money. A true and correct copy of the Second May 15, 2015 Security Agreement" is attached hereto as **Exhibit "4"**.

46. In the event of default, the Second May 15, 2015 Security Agreement provided, in relevant part and in summary, that (i) "any revenue, income or other sums" was to be held in trust for ADANA; (ii) ADANA has an immediate "right to take possession of the Collateral"; and (iii) ADANA may "[i]nstitute any proceeding at law, in equity, or otherwise for the foreclosure of the Collateral or any part thereof." ¶¶ 5, 7.1 & 7.3.

47. To perfect the First May 15, 2015 Security Agreement and Second May 15, 2015 Security Agreement, ADANA recorded UCC-1 Financing Statements for FORREST CAPITAL INC. and WVP HOLDING in Florida and Oklahoma, respectively. True and correct copies of the UCC-1 Financing Statements are attached hereto as **Exhibit "5"**.

48. ADANA also executed a Deposit Account Control Agreement, dated May 15, 2015, with Arvest and WVP HOLDING (the "First Arvest DACA"). *See* 10/27/15 Trottier Decl., ¶ 13, Ex. "B".

49. Thereafter, on May 15, 2015, in reliance on the representations made by VAN EMAN, and the May 12, 2015 Wells Fargo Letter, ADANA, at the instruction of WVP HOLDING, deposited the $15 million into an account in the name of FORREST CAPITAL LLC (account no. xxxxxx5075) at Wells Fargo. *See* 10/27/15 Trottier Decl., ¶ 15, Ex. "C".

50. Accordingly, the First Repayment Date under the May 15, 2015 Bridging Facility Agreement was September 17, 2015 (*i.e.*, 125 days from the date of draw down on May 15, 2015).

***Defendant Forrest Capital LLC Transfers Adana's Funds to Forrest Capital Inc., The JV Group, McConley, and Capital B***

51. On May 15, 2015, ADANA deposited the $15 million into an account in the name of FORREST CAPITAL LLC (account no. xxxxxx5075 at Wells Fargo). True and correct copies of the account statements for account nos. xxxxxx5075 and xxxxxx5059 at Wells Fargo are attached hereto as **Exhibit "6"**.

52. From May 19 through June 2, 2015, FORREST CAPITAL LLC (account no. xxxxxx5075 at Wells Fargo) transferred $13.7 million to FORREST CAPITAL INC. (account no. xxxxxx5059 at Wells Fargo). *See id.*

53. On May 19, 2015, FORREST CAPITAL INC. (account no. xxxxxx5059 at Wells Fargo) transferred $400,000 to another account in the name of FORREST CAPITAL INC. at Regions Bank. *See id.*

54. From May 19, 2015 to June 16, 2015, FORREST CAPITAL INC. (account no. xxxxxx5059 at Wells Fargo) transferred $900,000 to MCCONLEY. *See id.*

55. From May 19, 2015 to June 16, 2015, FORREST CAPITAL INC. (account no. xxxxxx5059 at Wells Fargo) transferred $4,682,000 to THE JV GROUP (account no. xxxxxx257 at Arvest). *See id.*

56. On June 16, 2015, FORREST CAPITAL INC. (account no. xxxxxx5059 at Wells Fargo) transferred $250,000 to an account in the name of CAPITAL B at Regions Bank. *See id.*

*Defendants Make Fraudulent Statements and Produce Fraudulent Bank Records*

57.     On May 28, 2015, MCCONLEY, on behalf of FORREST CAPITAL INC., sent a letter to VAN EMAN and ADANA in which MCCONLEY confirmed receipt of ADANA's $15 million loan, and made the following representations: (i) FORREST CAPITAL INC. had "matched the contribution and allocated applicable resources to complete the financing of our project's budget;" (ii) Wells Fargo had verified funds; and (iii) ADANA's funds would "be used for the sole purpose described in [the May 15, 2015 Funding Agreement]." It is now apparent that ADANA's funds have not been "used for the sole purpose described in [the May 15, 2015 Funding Agreement]." In the transmittal email, VAN EMAN represented that "our banker Mr. Rafael notarized this document." *See* 10/27/15 Trottier Decl., ¶ 17, Ex. "D".

58.     The following month, on June 27, 2015, VAN EMAN forwarded to ADANA an email from MCCONLEY that attached a letter from Wells Fargo. Therein, Mr. Rafael, on behalf of Wells Fargo, confirmed (i) that account no. xxxxxx4620 in the name of WVP Holding had a balance of $30,021,000, and (ii) represented that the "[$30 Million] Line of Credit titled and on behalf of 'WVP Holding' continues with normal processing time and is expected to be drawn upon and released on or before the end of September." *See* 10/27/15 Trottier Decl., ¶ 18, Ex. "E".

59.     Since the commencement of this action, Wells Fargo has advised that account no. xxxxxx4620 in the name of WVP Holding never existed.

60.     As of no later than September 17, 2015, pursuant to the Bridging Facility Agreement, Adana was entitled to the return of its $15 million, plus interest, fees, and expenses—which, as of September 17, 2015, totaled $16,774,340.

11

61. On September 30, 2015, MCCONLEY and FORREST CAPITAL INC. sent a letter to VAN EMAN and ADANA in which they made the following representations: (i) they had completed the requirements for securing the First Line of Credit from Wells Fargo (Wells Fargo has no record of the existence of the First Line of Credit); (ii) FORREST CAPITAL INC. was in the process of finalizing the transfer of $30 million to the Arvest Holding Account (as of the filing of this Amended Complaint, the transfer of the $30 million has not occurred); (iii) upon receipt of the Arvest Holding Account information, an initial $15 million transfer would be completed within five business days, with another $15 million transfer to follow three to five business days later (as of the filing of this Amended Complaint, the two $15 million transfers have not occurred); (iv) Wells Fargo had verified the amount of funds in the Master Account (to the contrary, Wells Fargo has since advised that no such account exists); and (v) ADANA's funds would "be used for the sole purpose described in [the May 15, 2015 Funding Agreement]" (they have not). Again, a notary stamp purportedly from Mr. Rafael appeared on the letter from FORREST CAPITAL INC. *See* 10/27/15 Trottier Decl., ¶ 21, Ex. "F".

62. The following day, on October 1, 2015, VAN EMAN forwarded to ADANA a letter purportedly from Mr. Rafael of Wells Fargo to FORREST CAPITAL INC., in which Wells Fargo advised that: (i) it was "ready to complete the transfer as directed" (which transfer has not occurred as of the filing of this Amended Complaint); (ii) "the account ending in -3574 has a current balance of $30,021,391 and is allocated in full to the referenced project above"; and (iii) Wells Fargo "anticipate[d] completing the first portion of funding as instructed by Wednesday October 7, 2015 and the balance within 3 business days following the initial transfer" (this did not occur). *See* 10/27/15 Trottier Decl., ¶ 22, Ex. "G".

63. Since the commencement of this action, Wells Fargo has advised that account no. xxxxxx3574 in the name of WVP Holding never existed.

12

64. Then, on October 8, 2015, VAN EMAN forwarded to ADANA an email from MCCONLEY that included what they represented to be an email from Wells Fargo confirming the transfer of $15 million from Wells Fargo to the Arvest Holding Account. This transfer did not in fact occur. *See* 10/27/15 Trottier Decl., ¶ 25, Ex. "H".

65. On October 10, 2015—after repeated assurances and representations by MCCONLEY and VAN EMAM that FORREST CAPITAL INC. had wired the $15 million from the Master Account to the Holding Account—attorney Marc Trottier of Berwin Leighton Paisner LLP ("BLP"), for and on behalf of ADANA, emailed a notice of events of default and reservation of rights to WEATHERVANE, WVP HOLDING, FORREST CAPITAL INC., VAN EMAN, and MCCONLEY ("October 10, 2015 Notice of Default"). *See* 10/27/15 Trottier Decl., ¶ 26, Ex. "I".

66. After the October 10, 2015 Notice of Default, VAN EMAN and MCCONLEY continued by telephone and email to make false representations to ADANA that the funds had been wired.

67. On October 10, 2015, VAN EMAN represented to ADANA by email that the wire of the funds from Wells Fargo to the Holding Account at Arvest had been initiated, and that WVP HOLDING would repay the $15 million, plus interest, as soon as the funds posted into the Arvest Holding Account. As of the filing of this Amended Complaint, the funds have yet to be wired from Wells Fargo to the Holding Account at Arvest.

68. By October 13, 2015, however, VAN EMAN was unable to provide a confirmation number from the Federal Reserve for transmittal of the wire (a "Fedwire confirmation number"). Then, despite representing that he was now in possession of the Fedwire confirmation number, VAN EMAN did not provide it to ADANA. Further, VAN EMAN could not provide confirmation to ADANA that Arvest ever received the wire.

13

69.     Throughout October 14–16, 2015, ADANA made repeated requests for updates and information concerning the wire, but VAN EMAN and MCCONLEY failed to provide the Fedwire confirmation number or other proof that Arvest had received the funds.

70.     On October 18, 2015, MCCONLEY emailed (i) an October 12, 2015 Letter of Authorization to Transfer Funds or Securities from a FORREST CAPITAL INC. account at Wells Fargo (account no. XXXXXX5335) to the Arvest Holding Account for the amount of $15,023,951 (the "October 12, 2015 Letter of Authorization"); and (ii) what he represented to be a Fedwire confirmation number for the transfer of $15,023,951 from yet another FORREST CAPITAL INC. account at Wells Fargo (account no. XXXXXX3574) to the Arvest Holding Account (the "Fedwire"). *See* 10/27/15 Trottier Decl., ¶ 32, Ex. "K".

71.     In another October 18, 2015 email, MCCONLEY represented that the FORREST CAPITAL INC. account at Wells Fargo (account no. XXXXXX5335) was the account into which the First Line of Credit was deposited and funded. *See* 10/27/15 Trottier Decl., ¶ 32, Ex. "K".

72.     Since the commencement of this action, Wells Fargo has advised that account no. xxxxxx5335 in the name of WVP Holding never existed, and that it does not have any record of the First Line of Credit.

73.     The October 12, 2015 Letter of Authorization provided by MCCONLEY on October 18, 2015 was fabricated.

74.     The Fedwire provided by MCCONLEY on October 18, 2015 was fabricated.

75.     On or about October 19, 2015, Mr. Trottier of BLP, on behalf of ADANA, attempted to email Benjamin Rafael at benjamin.rafael@wellsfargo.com, but received an email bounce-back. *See* 10/27/15 Trottier Decl., ¶ 33, Ex. "L".

14

76. On October 19, 2015, when asked again about the status of the funds, VAN EMAN emailed ADANA that he would initiate a wire track through Wells Fargo. *See* 10/27/15 Trottier Decl., ¶ 35, Ex. "M".

77. Since the commencement of this action, Arvest has advised that it has no record of the wire.

78. On October 20, 2015, ADANA requested from VAN EMAN and MCCONLEY proof from Wells Fargo that Benjamin Rafael was a Wells Fargo employee. VAN EMAN and MCCONLEY were unwilling or unable to provide proof of Benjamin Rafael's employment at Wells Fargo.

79. Since the commencement of this action, Wells Fargo has advised that Benjamin Rafael was employed by Wells Fargo, but has since been terminated.

80. That same day, on October 20, 2015, VAN EMAN and MCCONLEY again represented by telephone that the funds has been wired and that they were working with Wells Fargo to determine why Arvest had not yet received them. *See* 10/27/15 Trottier Decl., ¶ 36.

81. Later that day, VAN EMAN emailed ADANA with a screen shot of purported account activity on October 20, 2015 for the Arvest Holding Account. The account activity for October 20, 2015 purported to show that a <u>check</u> for $23,951—and *not* a <u>wire</u> for $15,023,951— had been deposited into the Arvest Holding account, but not yet cleared. *See* 10/27/15 Trottier Decl., ¶ 37, Ex. "N".

82. The next day, on October 21, 2015, VAN EMAN emailed ADANA with another screen shot of that day's activity for the Arvest Holding Account. The account activity for October 20, 2015 purported to show that a <u>check</u> for $15,000,000—again, *not* a <u>wire</u> for $15,023,951—had been deposited into the Arvest Holding Account, but not yet cleared. VAN EMAN advised that it would take yet another three to five business days to clear the $15 million

transfer, and that thereafter they would transfer the second $15 million. *See* 10/27/15 Trottier Decl., ¶ 38, Ex. "O".

83. On October 22, 2015, VAN EMAN forwarded ADANA an email purportedly from James Wilson at Arvest, in which Arvest represented that the funds would be available on October 27, 2015. *See* 10/27/15 Trottier Decl., ¶ 39, Ex. "P".

84. On October 26, 2015, VAN EMAN provided another screen shot of the account activity for the Arvest Holding Account for October 25, 2015. The account activity for October 25, 2015 purported to show that there was a hold on a deposit of $15,000,000. The October 25, 2015 account activity also revealed that the $23,951 purportedly deposited by check on October 20, 2015 was no longer in the Arvest Holding Account. *See* 10/27/15 Trottier Decl., ¶ 40, Ex. "Q".

85. Since the commencement of this action, Arvest has advised that both checks bounced.

86. Despite repeated false representations made by VAN EMAN and MCCONLEY to ADANA, including the production of records purportedly from two banks, that FORREST CAPITAL INC. had wired the funds to the Arvest Holding Account, as of the filing of this Amended Complaint, ADANA's $15 million investment, plus interest, has not been returned.

87. MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE and WVP HOLDING, used ADANA's funds for his and their own purposes without ADANA's consent.

88. MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, conspired with VAN EMAN, individually and on behalf of

16

WEATHERVANE, WVP HOLDING, and THE JV GROUP, to engage in a scheme to defraud ADANA of its $15 million.

## THE JUNE LOAN

### *Defendants Fraudulently Induce Plaintiff to Loan $2.3 Million*

89.     In or around June 5, 2015, VAN EMAN, along with the two so-called "arrangers," represented to ADANA that WEATHERVANE had the opportunity to invest in a film being produced by London Town Pic Limited.

90.     VAN EMAN and these arrangers represented to ADANA that WVP HOLDING had entered into an agreement with London Town Pic Limited to provide financing for a film.

91.     VAN EMAN represented to ADANA that, in order to provide the financing required by the agreement with London Town Pic Limited, WVP HOLDING intended to secure a $4,485,000 line of credit from Wells Fargo (the "Second Line of Credit").

92.     VAN EMAN also represented to ADANA that, to obtain the $4,485,000 Line of Credit, WVP HOLDING needed to raise an equivalent amount as collateral.

93.     VAN EMAN further represented to ADANA that WVP had already received a commitment from FORREST CAPITAL INC. to loan $2,242,500 million to WVP HOLDING on the condition that WVP HOLDING first secure matched funding in the amount of $2,242,500 million. VAN EMAN represented to ADANA that FORREST CAPITAL INC.'s charter prohibited it from lending money unless matched funding from another lender was also made.

94.     VAN EMAN then proposed that ADANA provide a short-term, $2.3 million bridge loan (the "$2.3 Million Bridge Loan") as the matched funding (plus a commission for the arrangers) needed to obtain the $2,242,500 million loan from FORREST CAPITAL INC., with the ultimate goal of securing the Second Line of Credit from Wells Fargo.

17

95.  VAN EMAN represented to ADANA that once WVP HOLDING obtained the Second Line of Credit, WVP HOLDING would repay the $2.3 Million Bridge Loan to ADANA with interest.

96.  ADANA reasonably relied on the representations made by VAN EMAN. To wit, ADANA relied on the representations that VAN EMAN, WEATHERVANE, WVP HOLDING, and FORREST CAPITAL INC. intended to finance a film; that Wells Fargo required $4,485,000 in collateral before issuing the Second Line of Credit in the amount of $4,485,000; and that while FORREST CAPITAL INC. had committed to investing $2,242,500 toward the film financing, FORREST CAPITAL INC.'s charter required matched financing before FORREST CAPITAL INC. could make the investment.

97.  In reliance on the representations made by VAN EMAN, ADANA agreed to provide the $2.3 Million Bridge Loan to WVP HOLDING.

98.  On or about June 22, 2015, ADANA and WVP HOLDING entered into a Bridging Facility Agreement, dated as of June 22, 2015 (the "June 22, 2015 Bridging Facility Agreement"). A true and correct copy of the June 22, 2015 Bridging Facility Agreement is attached hereto as **Exhibit "7"**.

99.  The June 22, 2015 Bridging Facility Agreement provided, in relevant part and in summary, that:

   a.  ADANA would lend $2.3 million to WVP HOLDING at 2% interest per month, with 6% minimum interest over the term of the $2.3 Million Bridge Loan;

   b.  WVP HOLDING was to repay ADANA within 125 days (the "Second Repayment Date").

100. Upon obtaining the proceeds from the $2.3 Million Bridge Loan, WVP Holding was to deposit the proceeds of the loan into an account in the Master Account.

101.   Once deposited into the Master Account, the loan proceeds were to be used pursuant to the terms of a Funding Agreement, dated as of June 22, 2015, among ADANA, FORREST CAPITAL INC., WEATHERVANE, and WVP HOLDING (the "June 22, 2015 Funding Agreement").

102.   The June 22, 2015 Funding Agreement provided, in relevant part and in summary, as follows:

a.   FORREST CAPITAL INC. would contribute an additional $2,242,500 to the Second Master Account.

b.   After a total of $4,485,000 in funds was received in the Second Master Account, FORREST CAPITAL INC., on behalf of WEATERVANE, would apply to Wells Fargo for the Second Line of Credit in the amount of $4,485,000 using the $4,485,000 million then in the Second Master Account as collateral.

c.   Upon receipt of the Second Line of Credit, FORREST CAPITAL INC. would transfer a draw from the Second Line of Credit to account no. xxxx2053 at Arvest in the name of WVP HOLDING (the "Second Arvest Holding Account").

d.   FORREST CAPITAL INC. was obligated to transfer a draw from the Second Line of Credit to Second Arvest Holding Account no later than 120 days from the date on which WVP Holding drew down the $2.3 million in proceeds from the $2.3 Bridge Loan.

e.   WVP HOLDING was then to repay ADANA from the proceeds of the Second Line of Credit deposited into the Second Arvest Holding Account.

f.   The proceeds from ADANA's $2,242,500 million loan were to be used only for the purpose of obtaining the Second Line of Credit.

19

g. The proceeds from ADANA's $2,242,500 million loan could not be removed or transferred from the Master Account without ADANA's prior express written consent.

h. In the event of default or if the Line of Credit did not materialize, Wells Fargo was authorized to return the proceeds from ADANA's $2,242,500 million to ADANA without further approval by FORREST CAPITAL INC., WEATHERVANE, or WVP HOLDING.

103. Prior to the execution of the June 22, 2015 Bridging Facility Agreement, on June 18, 2015, VAN EMAN provided ADANA with a letter from Benjamin Rafael, purportedly a banker at Wells Fargo in Miami, Florida. In Mr. Rafael's letter, the Wells Fargo confirmed that it "irrevocably and unconditionally" agreed to open the Second Master Account for the sole purpose of holding the funds loaned by ADANA and FORREST CAPITAL INC., and that it would manage the Second Master Account in accordance with the terms of the June 22, 2015 Funding Agreement (the "June 18, 2015 Wells Fargo Letter").

104. ADANA reasonably relied on the representations in the June 18, 2015 Wells Fargo Letter. To wit, ADANA reasonably relied on the representation that Wells Fargo would manage the Second Master Account in accordance with the terms of the June 22, 2015 Funding Agreement.

105. ADANA, FORREST CAPITAL INC., and WVP HOLDING also executed a Security Agreement, dated June 22, 2015 (the "First June 22, 2015 Security Agreement"). A true and correct copy of the First June 22, 2015 Security Agreement is attached hereto as **Exhibit "8"**. A notary stamp from Mr. Rafael appeared next to the signature of Benjamin McConley, as Managing Partner on behalf of FORREST CAPITAL INC.

106.   The First June 22, 2015 Security Agreement provided, in relevant part and in summary, that FORREST CAPITAL INC. and WVP HOLDING granted to ADANA a security interest in the $2.3 million. ¶¶ 1&2. In addition, the First June 22, 2015 Security Agreement provided, in relevant part and in summary, that if there was a default under the June 22, 2015 Bridging Facility Agreement, then (i) the $2.3 million was to be held in trust for ADANA; (ii) ADANA has an immediate "right to take possession of the [$2.3 million]"; and (iii) FORREST CAPITAL INC. and WVP HOLDING "waive[] any and all rights that [they] may have to a judicial hearing in advance of the enforcement of any of the Secured Parties rights and remedies." ¶¶ 5&6(a)(i).

107.   In addition, ADANA and WVP HOLDING executed a separate Security Agreement, also dated June 22, 2015 (the "Second June 22, 2015 Security Agreement"), pursuant to which WVP HOLDING granted to ADANA a security interest in all of WVP HOLDING's accounts, letters of credit, and money. A true and correct copy of the Second June 22, 2015 Security Agreement is attached hereto as **Exhibit "9"**.

108.   In the event of default, the Second June 22, 2015 Security Agreement provided, in relevant part and in summary, that (i) "any revenue, income or other sums" was to be held in trust for ADANA; (ii) ADANA has an immediate "right to take possession of the Collateral"; and (iii) ADANA may "[i]nstitute any proceeding at law, in equity, or otherwise for the foreclosure of the Collateral or any part thereof." ¶¶ 5, 7.1 & 7.3.

109.   To perfect the First June 22, 2015 Security Agreement, ADANA recorded a UCC-1 Financing Statement for FORREST CAPITAL INC. in Florida, respectively. A true and correct copy of the UCC-1 Financing Statement is attached hereto as **Exhibit "10"**.

110.   ADANA also executed a Deposit Account Control Agreement, dated June 22, 2015, with Arvest and WVP HOLDING (the "Second Arvest DACA").

21

111. Thereafter, in reliance on the representations made by VAN EMAN, and the June 18, 2015 Wells Fargo Letter ADANA deposited the $2,242,500 million into an account in the name of FORREST CAPITAL LLC (account no. xxxxxx5075) at Wells Fargo on June 22, 2015.

112. Accordingly, the Second Repayment Date under the June 22, 2015 Bridging Finance Agreement was October 25, 2015 (*i.e.*, 125 days from the date of draw down on June 22, 2015).

### *Defendant Forrest Capital LLC Transfers Adana's Funds to Forrest Capital Inc., The JV Group, and McConley*

113. On June 22, 2015, ADANA deposited the $2,242,500 million into an account in the name of FORREST CAPITAL LLC (account no. xxxxxx5075 at Wells Fargo). *See* **Exhibit "6"**.

114. On June 22 and 23, 2015, FORREST CAPITAL LLC (account no. xxxxxx5075 at Wells Fargo) transferred $1.8 million to FORREST CAPITAL INC. (account no. xxxxxx5059 at Wells Fargo). *See id.*

115. On June 26, 2015, FORREST CAPITAL INC. (account no. xxxxxx5059 at Wells Fargo) transferred $500,000 to THE JV GROUP (account no. xxxxxx257 at Arvest). *See id.*

116. On June 26, 2015, three cash withdrawals, totaling $217,287.23 were made from the FORREST CAPITAL INC. account (account no. xxxxxx5059 at Wells Fargo). *See id.*

### *Defendants Make Fraudulent Statements and Produce Fraudulent Bank Records*

117. On June 27, 2015, VAN EMAN sent a letter to ADANA from Wells Fargo. Therein, Mr. Rafael, on behalf of Wells Fargo, confirmed that account no. xxxxxx4331 in the name of WVP Holding had a current balance of $4,522,400, and represented that "[t]his balance

reflects both contribution from the project and the matched contribution from Forrest Capital Partners."

118. As of no later than October 25, 2015, Adana was entitled to the return of its $2.3 million, plus interest, fees, and expenses—which, as of October 25, 2015, totaled $2,550,712.50.

119. As of the filing of this Amended Complaint, ADANA's $2.3 million investment, plus interest, has not been returned.

120. MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, used ADANA's funds for their own purposes without ADANA's consent.

121. MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, conspired with VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, to engage in a scheme to defraud ADANA of its $2.3 million.

**THE JULY LOAN**

***Defendants Fraudulently Induce Plaintiff to Loan $11.3 Million***

122. In or around June 30, 2015, Ross Marroso, a co-owner of WEATHERVANE, along with two other individuals referred to as "arrangers," represented to ADANA that WEATHERVANE had the opportunity to invest in three films.

123. VAN EMAN and these arrangers represented to ADANA that VAN EMAN had created a special purpose vehicle, WVP Holding, which had entered into an agreement to provide financing for the film.

23

124.    VAN EMAN represented to ADANA that, in order to provide the financing required by the agreement, LLC, WVP HOLDING intended to secure a $22.6 million line of credit (the "Third Line of Credit") from Wells Fargo.

125.    VAN EMAN also represented to ADANA that, to obtain the Third Line of Credit, WVP HOLDING needed to raise an equivalent amount as collateral.

126.    VAN EMAN further represented to ADANA that WVP had already received a commitment from FORREST CAPITAL INC. to loan $11.3 million to WVP HOLDING on the condition that WVP HOLDING first secure matched funding in the amount of $11.3 million. VAN EMAN represented to ADANA that FORREST CAPITAL INC.'s charter prohibited it from lending money unless matched funding from another lender was also made.

127.    VAN EMAN then proposed that ADANA provide a short-term, $11.3 million bridge loan (the "Bridge Loan") as the matched funding needed to obtain the $11.3 million loan from FORREST CAPITAL INC., with the ultimate goal of securing the Third Line of Credit from Wells Fargo.

128.    VAN EMAN represented to ADANA that once WVP HOLDING obtained the Third Line of Credit, WVP HOLDING would repay the $11.3 million Bridge Loan to ADANA with interest.

129.    ADANA reasonably relied on the representations made by VAN EMAN. To wit, ADANA relied on the representations that VAN EMAN, WEATHERVANE, WVP HOLDING, and FORREST CAPITAL INC. intended to finance three films; that Wells Fargo required $22.6 million in collateral before issuing a $22.6 million Line of Credit; and that while FORREST CAPITAL INC. had committed to investing $11.3 million toward the film financing, FORREST CAPITAL INC.'s charter required matched financing before FORREST CAPITAL INC. could make the investment.

24

130.    In reliance on the representations made by VAN EMAN, ADANA agreed to provide the $11.3 Bridge Loan to WVP HOLDING.

131.    On or July 13, 2015, ADANA and WVP HOLDING entered into a Bridging Facility Agreement, dated as of July 13, 2015 (the "July 13, 2015 Bridging Facility Agreement"). A true and correct copy of the July 13, 2015 Bridging Facility Agreement is attached hereto as **Exhibit "11"**.

132.    The July 13, 2015 Bridging Facility Agreement provided, in relevant part and in summary, that:

a.  ADANA would lend $11.3 million to WVP HOLDING at 2% interest per month, with 7% minimum interest over the term of the $11.3 Million Bridge Loan;

b.  WVP HOLDING was obligated to repay the $11.3 Million Bridge Loan to ADANA within 125 days (the "Third Repayment Date").

133.    Upon obtaining the proceeds from the $11.3 Million Bridge Loan, WVP Holding was to deposit the proceeds of the loan into the Master Account.

134.    Once deposited into the Master Account, the loan proceeds were to be used in accordance with the terms of a Funding Agreement, dated as of July 13, 2015, among ADANA, FORREST CAPITAL INC., WEATHERVANE, and WVP HOLDING (the "July 13, 2015 Funding Agreement").

135.    The July 13, 2015 Funding Agreement provided, in relevant part and in summary, as follows:

a.  FORREST CAPITAL INC. would contribute an additional $15 million to the Master Account.

b.  After a total of $22.6 million in funds was received in the Master Account, FORREST CAPITAL INC., on behalf of WEATERVANE, would apply to Wells

25

Fargo for the Third Million Line of Credit using the $22.6 million then in the Master Account as collateral.

c. Upon receipt of the Line of Credit, FORREST CAPITAL INC. would transfer a draw from the $22.6 Million Line of Credit to an at Arvest Bank ("Arvest") in the name of WVP HOLDING (the "Third Holding Account").

d. FORREST CAPITAL INC. was obligated to transfer the draw from the $22.6 Million Line of Credit the Third Holding Account no later than 120 days from the date on which WVP Holding drew down the $11.3 million in proceeds from the $11.3 Million Bridge Loan.

e. WVP HOLDING would then transfer $11.3 million, plus 2% interest per month (subject to 7% minimum interest over the term of the $11.3 Million Bridge Loan) plus fees and expenses, from the Third Holding Account back to ADANA.

f. The proceeds from ADANA's $11.3 million loan were to be used only for the purpose of obtaining the $22.6 Million Line of Credit.

g. The proceeds from ADANA's $11.3 million loan could not be removed or transferred from the Master Account without ADANA's prior express written consent.

h. In the event of default or if the $22.6 Million Line of Credit did not materialize, Wells Fargo was authorized to return the proceeds from ADANA's $11.3 million loan to ADANA without further approval by FORREST CAPITAL INC., WEATHERVANE, or WVP HOLDING.

136. Prior to the execution of the July 13, 2015 Bridging Facility Agreement, on July 10, 2015, VAN EMAN provided ADANA with a letter from Benjamin Rafael, purportedly a banker at Wells Fargo in Miami, Florida. In Mr. Rafael's letter, Wells Fargo confirmed that it

26

"irrevocably and unconditionally" agreed to open the Master Account for the sole purpose of holding the funds loaned by ADANA and FORREST CAPITAL INC., and that it would manage the Master Account in accordance with the terms of the July 13, 2015 Funding Agreement (the "July 9, 2015 Wells Fargo Letter").

137. ADANA reasonably relied on the representations in the July 9, 2015 Wells Fargo Letter. To wit, ADANA reasonably relied on the representation that Wells Fargo would manage the Master Account in accordance with the terms of the July 13, 2015 Funding Agreement.

138. ADANA, FORREST CAPITAL INC., and WVP HOLDING also executed a Security Agreement, dated July 13, 2015 (the "First July 13, 2015 Security Agreement"). A true and correct copy of the First July 13, 2015 Security Agreement is attached hereto as **Exhibit "12"**.

139. The First July 13, 2015 Security Agreement provided, in relevant part and in summary, that FORREST CAPITAL INC. and WVP HOLDING granted to ADANA a security interest in the $11.3 million (the "Collateral"). *See* ¶¶ 1&2. In addition, the First July 13, 2015 Security Agreement provided, in relevant part and in summary, that if there was a default under the July 13, 2015, Bridging Facility Agreement, then (i) the $11.3 million was to be held in trust for ADANA; (ii) ADANA has an immediate "right to take possession of the Collateral"; and (iii) FORREST CAPITAL INC. and WVP HOLDING "waive[] any and all rights that [they] may have to a judicial hearing in advance of the enforcement of any of the Secured Parties rights and remedies." *See* ¶¶ 5&6(a)(i).

140. In addition, ADANA and WVP HOLDING executed a separate Security Agreement, also dated July 13, 2015 (the "Second July 13, 2015 Security Agreement"), pursuant to which WVP HOLDING granted to ADANA a security interest in all of WVP HOLDING's

accounts, letters of credit, and money. A true and correct copy of the Second July 13, 2015 Security Agreement is attached hereto as **Exhibit "13"**.

141.    In the event of default, the Second July 13, 2015 Security Agreement provided, in relevant part and in summary, that (i) "any revenue, income or other sums" was to be held in trust for ADANA; (ii) ADANA has an immediate "right to take possession of the Collateral"; and (iii) ADANA may "[i]nstitute any proceeding at law, in equity, or otherwise for the foreclosure of the Collateral or any part thereof." ¶¶ 5, 7.1 & 7.3.

142.    ADANA also executed a Deposit Account Control Agreement, dated July 13, 2015, with Arvest and WVP HOLDING (the "Third Arvest DACA").

143.    Thereafter, on July 13, 2015, in reliance on the representations made by VAN EMAN, and the July 9, 2015 Wells Fargo Letter, ADANA, at the instruction of WVP HOLDING, deposited the $11.3 million into an account in the name of FORREST CAPITAL LLC (account no. xxxxxx5075) at Wells Fargo.

144.    Accordingly, the Third Repayment Date under the July 13, 2015 Bridging Facility Agreement was November 15, 2015 (*i.e.*, 125 days from the date of draw down on July 13, 2015).

### Defendant Forrest Capital LLC Transfers Adana's Funds to Forrest Capital Inc. and The JV Group

145.    On July 13, 2015, ADANA deposited the $11,299,980 into an account in the name of FORREST CAPITAL LLC (account no. xxxxxx5075 at Wells Fargo).

146.    Prior to ADANA's $11,299,980 deposit, the FORREST CAPITAL LLC account (account no. xxxxxx5075 at Wells Fargo) had a balance of only $63,602.09.

147. From July 14–16, 2015, FORREST CAPITAL LLC (account no. xxxxxx5075 at Wells Fargo) made 14 separate transfers, totaling $11,313,566.09, to FORREST CAPITAL INC. (account no. xxxxxx5059 at Wells Fargo).

148. Prior to the receipt of these 14 transfers in the amount of $11,313,566.09, the FORREST CAPITAL INC. account (account no. xxxxxx5059 at Wells Fargo) had a balance of only $27,655.16.

149. On July 14, FORREST CAPITAL INC. account (account no. xxxxxx5059 at Wells Fargo) transferred $300,000 to another account in the name of FORREST CAPITAL INC. at Regions Bank.

150. On July 16, 2015, FORREST CAPITAL INC. account (account no. xxxxxx5059 at Wells Fargo) transferred $1,000,000 to another account in the name of FORREST CAPITAL INC. at Regions Bank.

151. From July 14–16, 2015, FORREST CAPITAL INC. (account no. xxxxxx5059 at Wells Fargo) transferred $4,818,400 to THE JV GROUP (account no. xxxxxx257 at Arvest).

### *Defendants Make Fraudulent Statements and Produce Fraudulent Bank Records*

152. On July 31, 2015, VAN EMAN forwarded to ADANA an email from MCCONLEY that attached a letter from Wells Fargo, dated July 30, 2015. Therein, Mr. Rafael, on behalf of Wells Fargo, confirmed (i) that account no. xxxxxx6339 in the name of WVP Holding had a balance of $22,647,100, and (ii) represented that the "[Third] Line of Credit titled and on behalf of 'WVP Holding' continues with normal processing time and is expected to be drawn upon and released on or before the end of September."

153. Since the commencement of this action, Wells Fargo has advised that account no. xxxxxx6339 in the name of WVP HOLDING never existed.

154. As of no later than November 15, 2015, pursuant to the Bridging Facility Agreement, Adana was entitled to the return of its $11.3 million, plus interest, fees, and expenses—which, as of November 15, 2015, totaled $12,669,875.00.

155. As of the filing of this Amended Complaint, ADANA's $11.3 million investment, plus interest, has not been returned.

156. MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, used ADANA's funds for their own purposes without ADANA's consent.

157. MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, conspired with VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, to engage in a scheme to defraud ADANA of its $11.3 million.

## DEFENDANTS ARE SYSTEMATICALLY STEALING FROM INVESTORS

158. Upon information and belief, MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, have in the past and are currently engaged in a series of internally consistent schemes to defraud investors and convert their funds for personal use. In the past year, VAN EMAN and/or MCCONLEY have been sued in no fewer than three civil actions, including twice in this District, for fraud, civil conspiracy, and conversion based on similar schemes. *See Anthony Buzbee v. Gayle Dickie, Jason Van Eman, Weathervane Productions, Inc., Forrest Capital Partners, Inc., Forrest Capital & Co., LLC, et al.*, Case No. 4:14-Cv-03431 (S.D. Tx.) (initial complaint filed in state court on 10/20/2014); *Dane A. Miller v. Benjamin Forrest McConley*, Case No. 0:14-Cv-62449-WPD

30

(S.D. Fla.) (initial complaint filed on Oct. 28, 2014); *Superhuman International Pty Ltd. v. Benjamin Forrest McConley, Jason Van Eman, Forrest Capital, Partners, Inc., Weathervane Productions, Inc., et al.*, Case No. 1:15-Cv-22690-CMA (S.D. Fla) (initial complaint filed on July 17, 2015).

159.    All conditions precedent to the institution of this action and under all agreements referenced herein have been met, occurred or have been waived.

160.    Adana has retained its undersigned attorneys, and is obligated to pay them for costs and expenses, including attorneys' fees.

## COUNT I
## COMMON LAW CONVERSION — THE MAY LOAN
### (AGAINST ALL DEFENDANTS)

161.    ADANA re-alleges paragraphs 1–88 and 158–160 above, as if fully set forth herein.

162.    The $15 million deposited into FORREST CAPITAL LLC's bank account at Wells Fargo (account no. xxxxxx5075) is the property of ADANA.

163.    As of no later than September 17, 2015, ADANA has had the immediate right to possess its $15 million.

164.    MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, are wrongfully exercising control and dominion over ADANA's $15 million, without ADANA's authorization, which is inconsistent with and adverse to the rights of ADANA as the true owner of the $15 million, plus interest.

165.    ADANA has demanded return of the $15 million, plus interest, but MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and

VAN EMAN, individually and on behalf of WEATHERVANE and WVP HOLDING have refused and failed to deliver the funds to ADANA as of the filing of this Complaint.

166. As a result of the unauthorized possession of ADANA's investment by MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, ADANA has been damaged.

167. MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, have acted willfully and intentionally in depriving ADANA of possession of its $15 million, plus interest.

**WHEREFORE**, ADANA prays for judgment in its favor and against Defendants for compensatory damages in the amount of Fifteen Million and 00/100 Dollars ($15,000,000), plus interest, plus punitive damages in an amount sufficient to punish Defendants and deter them from engaging in similar tortious conduct in the future, plus the costs of this action, and for all other proper relief.

**COUNT II**
**FRAUD IN THE INDUCEMENT—THE MAY LOAN**
**(AGAINST DEFENDANTS FORREST CAPITAL INC.; FORREST CAPITAL LLC;**
**WEATHERVANE; WVP HOLDING; MCCONLEY; AND VAN EMAN)**

168. ADANA re-alleges paragraphs 1–88 and 158–160 above, as if fully set forth herein.

169. Defendants have made misrepresentations of material facts to ADANA. To wit, Defendants made the statements specifically identified in paragraphs 27–33 above, each of which was a misrepresentation of material fact.

170. At the time they made these misrepresentations, Defendants knew or should have known of the falsity of each statement.

171. Defendants intended for the misrepresentations to induce ADANA to rely and act on them to enter into the Bridging Finance Agreement to loan the $15 million.

172. ADANA justifiably and reasonably relied on the representations.

173. ADANA was fraudulently induced into entering into the Bridging Finance Agreement to loan the $15 million, and has been injured as a result of its justifiable reliance on the representations.

174. Defendants acted willfully and intentionally to fraudulently induce ADANA to enter into the Bridging Finance Agreement to loan the $15 million.

**WHEREFORE**, ADANA prays for judgment in its favor and against Defendants for compensatory damages in the amount of Fifteen Million and 00/100 Dollars ($15,000,000), plus the interest and fees owed under the Bridging Facility Agreement, plus interest, plus punitive damages in an amount sufficient to punish Defendants and deter them from engaging in similar tortious conduct in the future, plus the costs of this action, and for all other proper relief.

**COUNT III**
**CIVIL CONSPIRACY—THE MAY LOAN**
**(AGAINST ALL DEFENDANTS)**

175. ADANA re-alleges paragraphs 1–88 and 158–160 above, as if fully set forth herein.

176. MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, agreed with VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, to engage in a scheme to defraud and convert $15 million from ADANA.

33

Case 1:20-cv-21536-MGC Document 80-2 Entered on FLSD Docket 05/01/2020 Page 34 of 55

177. In furtherance of the conspiracy to defraud ADANA, MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, made overt acts, including but not limited to, making false representations about the status of the Wells Fargo Master Account, making false representations that he had wired the $15 million from Wells Fargo to the Arvest Holding Account, and producing forged Fedwire confirmation numbers.

178. In furtherance of the conspiracy to defraud ADANA, VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, made overt acts, including but not limited to, making false representations about the status of the Wells Fargo Master Account, making false representations that MCCONLEY had wired the $15 million from Wells Fargo to the Arvest Holding Account, and producing forged Fedwire confirmation numbers.

179. As a result of the civil conspiracy among MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, ADANA has been damaged.

180. MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, acted willfully and intentionally in conspiring to defraud and convert $15 million from ADANA.

**WHEREFORE**, ADANA prays for judgment in its favor and against Defendants for compensatory damages in the amount of Fifteen Million and 00/100 Dollars ($15,000,000), plus interest, plus punitive damages in an amount sufficient to punish Defendants and deter them from engaging in similar tortious conduct in the future, plus the costs of this action, and for all other proper relief.

## COUNT IV
## BREACH OF CONTRACT
### (AGAINST DEFENDANT WVP HOLDING)

181. ADANA re-alleges paragraphs 1, 5, 10, 11, 15, 23, 24, 35–38, 43–52, 60, 65, 86, 159, and 160 above, as if fully set forth herein.

182. On May 15, 2015, ADANA and WVP HOLDING entered into the May 15, 2015 Bridging Facility Agreement, a contract pursuant to which ADANA loaned $15 million to WVP HOLDING.

183. By failing to repay ADANA its $15 million, plus interest, fees, and expenses, by September 17, 2015, WVP HOLDING has breached the contract.

184. As a result of WVP HOLDING's breach, ADANA has been damaged.

**WHEREFORE**, ADANA prays that Judgment be entered in its favor and against Defendant WVP HOLDING for the following relief:

(a) imposing a constructive trust over the Fifteen Million and 00/100 Dollars ($15,000,000);

(b) requiring Defendant WVP HOLDING to provide an accounting under section 15.1 of the Bridging Facility Agreement; and

(c) awarding compensatory damages in the amount of Fifteen Million and 00/100 Dollars ($15,000,000), plus interest, fees, and expenses, plus the costs of this action, and for all other proper relief.

## COUNT V
## FORECLOSURE OF SECURITY INTEREST IN COLLATERAL
### (AGAINST DEFENDANT WVP HOLDING)

185. ADANA re-alleges paragraphs 1, 5, 10, 11, 15, 23, 24, 35–38, 43–52, 60, 65, 86, 159, and 160 above, as if fully set forth herein.

35

186. To secure repayment of the $15 Million loan and any amounts that are required to be reimbursed by WVP HOLDING to ADANA, WVP HOLDING granted ADANA a security interest in "any revenue, income or other sums" as collateral.

187. WVP HOLDING defaulted under the May 15, 2015 Bridging Facility Agreement.

188. Pursuant to the terms of the May 15, 2015 Bridging Facility Agreement, the $15 million is now due and payable.

189. ADANA is permitted and entitled to foreclose its security interests in the collateral. It has elected to do so.

**WHEREFORE**, ADANA prays that Judgment be entered in its favor and against Defendant WVP HOLDING for the following relief:

(a) enjoining and restraining Defendant WVP HOLDING, its agents, servants, lawyers and partners (current, former and departing), and employees from transferring, selling, secreting, insulating, disposing, assigning, dissipating, and/or further encumbering the collateral;

(b) permitting foreclosure of its security interest in the collateral; and

(c) requiring Defendant WVP HOLDING to produce all documents evidencing the Collateral, including financial information, records, and statements; and

(d) granting such other further relief as is equitable and just, including recovery of costs of suit and reasonable attorneys' fees.

**COUNT VI**
**FORECLOSURE OF SECURITY INTEREST IN COLLATERAL**
**(AGAINST DEFENDANTS WVP HOLDING AND FORREST CAPITAL INC.)**

190. ADANA re-alleges paragraphs 1, 2, 5, 10–12 15, 10, 23, 24, 35–38, 43–52, 60, 65, 86, 159, and 160 above, as if fully set forth herein.

191. To secure repayment of the $15 Million loan and any amounts that are required to be reimbursed by WVP HOLDING to ADANA, WVP HOLDING and FORREST CAPITAL INC. granted ADANA a security interest in the $15 million as collateral.

192. WVP HOLDING defaulted under the May 15, 2015 Bridging Facility Agreement.

193. Pursuant to the terms of the May 15, 2015 Bridging Facility Agreement, the $15 million is now due and payable.

194. ADANA is permitted and entitled to foreclose its security interests in the collateral. It has elected to do so.

**WHEREFORE**, ADANA prays that Judgment be entered in its favor and against Defendant WVP HOLDING for the following relief:

(a) enjoining and restraining Defendants WVP HOLDING and FORREST CAPITAL INC., their agents, servants, lawyers and partners (current, former and departing), and employees from transferring, selling, secreting, insulating, disposing, assigning, dissipating, and/or further encumbering the collateral;

(b) permitting foreclosure of its security interest in the collateral;

(c) requiring Defendant WVP HOLDING and FORREST CAPITAL INC. to produce all documents evidencing the Collateral, including financial information, records, and statements; and

(d) granting such other further relief as is equitable and just, including recovery of costs of suit and reasonable attorneys' fees.

## COUNT VII
### COMMON LAW CONVERSION — THE JUNE LOAN
### (AGAINST ALL DEFENDANTS)

195. ADANA re-alleges paragraphs 1–26, 89–121, and 158–160 above, as if fully set forth herein.

196. The $2.3 million deposited into FORREST CAPITAL LLC's bank account at Wells Fargo (account no. xxxxxx5075) is the property of ADANA.

197. As of no later than October 25, 2015, ADANA has had the immediate right to possess its $2.3 million.

198. MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, are wrongfully exercising control and dominion over ADANA's $15 million, without ADANA's authorization, which is inconsistent with and adverse to the rights of ADANA as the true owner of the $2.3 million, plus interest.

199. ADANA has demanded return of the $2.3 million, plus interest, but MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE and WVP HOLDING have refused and failed to deliver the funds to ADANA as of the filing of this Complaint.

200. As a result of the unauthorized possession of ADANA's investment by MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, ADANA has been damaged.

201. MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, have acted willfully and intentionally in depriving ADANA of possession of its $2.3 million, plus interest.

**WHEREFORE**, ADANA prays for judgment in its favor and against Defendants for compensatory damages in the amount of Two Million, Three-Hundred Thousand and 00/100

Dollars ($2,300,000), plus interest, plus punitive damages in an amount sufficient to punish Defendants and deter them from engaging in similar tortious conduct in the future, plus the costs of this action, and for all other proper relief.

**COUNT VIII**
**FRAUD IN THE INDUCEMENT—THE JUNE LOAN**
**(AGAINST DEFENDANTS FORREST CAPITAL INC.; FORREST CAPITAL LLC; WEATHERVANE; WVP HOLDING; MCCONLEY; AND VAN EMAN)**

202.    ADANA re-alleges paragraphs 1–26, 89–121, and 158–160 above, as if fully set forth herein.

203.    Defendants have made misrepresentations of material facts to ADANA. To wit, Defendants made the statements specifically identified in paragraphs 89–95 above, each of which was a misrepresentation of material fact.

204.    At the time they made these misrepresentations, Defendants knew or should have known of the falsity of each statement.

205.    Defendants intended for the misrepresentations to induce ADANA to rely and act on them to enter into the Bridging Finance Agreement to loan the $2.3 million.

206.    ADANA justifiably and reasonably relied on the representations.

207.    ADANA was fraudulently induced into entering into the Bridging Finance Agreement to loan the $2.3 million, and has been injured as a result of its justifiable reliance on the representations.

208.    Defendants acted willfully and intentionally to fraudulently induce ADANA to enter into the Bridging Finance Agreement to loan the $2.3 million.

**WHEREFORE**, ADANA prays for judgment in its favor and against Defendants for compensatory damages in the amount of Two Million, Three-Hundred Thousand and 00/100 Dollars ($2,300,000), plus the interest and fees owed under the Bridging Facility Agreement,

39

plus interest, plus punitive damages in an amount sufficient to punish Defendants and deter them from engaging in similar tortious conduct in the future, plus the costs of this action, and for all other proper relief.

## COUNT IX
## CIVIL CONSPIRACY—THE JUNE LOAN
### (AGAINST ALL DEFENDANTS)

209. ADANA re-alleges paragraphs 1–26, 89–121, and 158–160 above, as if fully set forth herein.

210. MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, agreed with VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, to engage in a scheme to defraud and convert $2.3 million from ADANA.

211. In furtherance of the conspiracy to defraud ADANA, MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, made overt acts, including but not limited to, making false representations about the status of the Wells Fargo Master Account.

212. In furtherance of the conspiracy to defraud ADANA, VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, made overt acts, including but not limited to, making false representations about the status of the Wells Fargo Master Account.

213. As a result of the civil conspiracy among MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, ADANA has been damaged.

40

214. MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, acted willfully and intentionally in conspiring to defraud and convert $2.3 million from ADANA.

**WHEREFORE**, ADANA prays for judgment in its favor and against Defendants for compensatory damages in the amount of Two Million, Three-Hundred Thousand and 00/100 Dollars ($2,300,000), plus interest, plus punitive damages in an amount sufficient to punish Defendants and deter them from engaging in similar tortious conduct in the future, plus the costs of this action, and for all other proper relief.

## COUNT X
## BREACH OF CONTRACT
### (AGAINST DEFENDANT WVP HOLDING)

215. ADANA re-alleges paragraphs 1, 5, 10, 11, 15, 23, 24, 98–100, 105–116, 118, 119, 159, and 160 above, as if fully set forth herein.

216. On June 22, 2015, ADANA and WVP HOLDING entered into the June 22, 2015 Bridging Facility Agreement, a contract pursuant to which ADANA loaned $2.3 million to WVP HOLDING.

217. By failing to repay ADANA its $2.3 million, plus interest, fees, and expenses, by October 25, 2015, WVP HOLDING has breached the contract.

218. As a result of WVP HOLDING's breach, ADANA has been damaged.

**WHEREFORE**, ADANA prays that Judgment be entered in its favor and against Defendant WVP HOLDING for the following relief:

(d) imposing a constructive trust over the Two Million, Three-Hundred Thousand and 00/100 Dollars ($2,300,000);

(e) requiring Defendant WVP HOLDING to provide an accounting under section 15.1 of the Bridging Facility Agreement; and

(f) awarding compensatory damages in the amount of Two Million, Three-Hundred Thousand and 00/100 Dollars ($2,300,000), plus interest, fees, and expenses, plus the costs of this action, and for all other proper relief.

### COUNT XI
### FORECLOSURE OF SECURITY INTEREST IN COLLATERAL
### (AGAINST DEFENDANT WVP HOLDING)

219.    ADANA re-alleges paragraphs 1, 5, 10, 11, 15, 23, 24, 98–100, 105–116, 118, 119, 159, and 160 above, as if fully set forth herein.

220.    To secure repayment of the $2.3 Million loan and any amounts that are required to be reimbursed by WVP HOLDING to ADANA, WVP HOLDING granted ADANA a security interest in "any revenue, income or other sums" as collateral.

221.    WVP HOLDING defaulted under the June 22, 2015 Bridging Facility Agreement.

222.    Pursuant to the terms of the June 22, 2015 Bridging Facility Agreement, the $2.3 million is now due and payable.

223.    ADANA is permitted and entitled to foreclose its security interests in the collateral. It has elected to do so.

**WHEREFORE**, ADANA prays that Judgment be entered in its favor and against Defendant WVP HOLDING for the following relief:

(d) enjoining and restraining Defendant WVP HOLDING, its agents, servants, lawyers and partners (current, former and departing), and employees from transferring, selling, secreting, insulating, disposing, assigning, dissipating, and/or further encumbering the collateral;

(e) permitting foreclosure of its security interest in the collateral; and

(f) requiring Defendant WVP HOLDING to produce all documents evidencing the Collateral, including financial information, records, and statements; and

(d) granting such other further relief as is equitable and just, including recovery of costs of suit and reasonable attorneys' fees.

**COUNT XII**
**FORECLOSURE OF SECURITY INTEREST IN COLLATERAL**
**(AGAINST DEFENDANTS WVP HOLDING AND FORREST CAPITAL INC.)**

224.    ADANA re-alleges paragraphs 1, 2, 5, 10–12, 15, 20, 23, 24, 98–100, 105–116, 118, 119, 159, and 160 above, as if fully set forth herein.

225.    To secure repayment of the $2.3 Million loan and any amounts that are required to be reimbursed by WVP HOLDING to ADANA, WVP HOLDING and FORREST CAPITAL INC. granted ADANA a security interest in the $2.3 million as collateral.

226.    WVP HOLDING defaulted under the June 22, 2015 Bridging Facility Agreement.

227.    Pursuant to the terms of the June 22, 2015 Bridging Facility Agreement, the $2.3 million is now due and payable.

228.    ADANA is permitted and entitled to foreclose its security interests in the collateral. It has elected to do so.

**WHEREFORE**, ADANA prays that Judgment be entered in its favor and against Defendant WVP HOLDING for the following relief:

(e) enjoining and restraining Defendants WVP HOLDING and FORREST CAPITAL INC., their agents, servants, lawyers and partners (current, former and departing), and employees from transferring, selling, secreting, insulating, disposing, assigning, dissipating, and/or further encumbering the collateral;

(f) permitting foreclosure of its security interest in the collateral;

43

(g) requiring Defendant WVP HOLDING and FORREST CAPITAL INC. to produce all documents evidencing the Collateral, including financial information, records, and statements; and

(h) granting such other further relief as is equitable and just, including recovery of costs of suit and reasonable attorneys' fees.

## COUNT XIII
## COMMON LAW CONVERSION — THE JULY LOAN
### (AGAINST ALL DEFENDANTS)

229.    ADANA re-alleges paragraphs 1–26 and 122–160 above, as if fully set forth herein.

230.    The $11.3 million deposited into FORREST CAPITAL LLC's bank account at Wells Fargo (account no. xxxxxx5075) is the property of ADANA.

231.    As of no later than November 15, 2015, ADANA has had the immediate right to possess its $11.3 million.

232.    MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, are wrongfully exercising control and dominion over ADANA's $11.3 million, without ADANA's authorization, which is inconsistent with and adverse to the rights of ADANA as the true owner of the $11.3 million, plus interest.

233.    ADANA has demanded return of the $11.3 million, plus interest, but MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE and WVP HOLDING have refused and failed to deliver the funds to ADANA as of the filing of this Complaint.

234. As a result of the unauthorized possession of ADANA's investment by MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, ADANA has been damaged.

235. MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, have acted willfully and intentionally in depriving ADANA of possession of its $11.3 million, plus interest.

**WHEREFORE**, ADANA prays for judgment in its favor and against Defendants for compensatory damages in the amount of Eleven Million, Three-Hundred Thousand and 00/100 Dollars ($11,300,000), plus interest, plus punitive damages in an amount sufficient to punish Defendants and deter them from engaging in similar tortious conduct in the future, plus the costs of this action, and for all other proper relief.

### COUNT XIV
### FRAUD IN THE INDUCEMENT—THE JULY LOAN
### (AGAINST DEFENDANTS FORREST CAPITAL INC.; FORREST CAPITAL LLC; WEATHERVANE; WVP HOLDING; MCCONLEY; AND VAN EMAN)

236. ADANA re-alleges paragraphs 1–26 and 122–160 above, as if fully set forth herein.

237. Defendants have made misrepresentations of material facts to ADANA. To wit, Defendants made the statements specifically identified in paragraphs 122–128 above, each of which was a misrepresentation of material fact.

238. At the time they made these misrepresentations, Defendants knew or should have known of the falsity of each statement.

45

239. Defendants intended for the misrepresentations to induce ADANA to rely and act on them to enter into the Bridging Finance Agreement to loan the $11.3 million.

240. ADANA justifiably and reasonably relied on the representations.

241. ADANA was fraudulently induced into entering into the Bridging Finance Agreement to loan the $11.3 million, and has been injured as a result of its justifiable reliance on the representations.

242. Defendants acted willfully and intentionally to fraudulently induce ADANA to enter into the Bridging Finance Agreement to loan the $11.3 million.

**WHEREFORE**, ADANA prays for judgment in its favor and against Defendants for compensatory damages in the amount of Eleven Million, Three-Hundred Thousand and 00/100 Dollars ($11,300,000), plus the interest and fees owed under the Bridging Facility Agreement, plus interest, plus punitive damages in an amount sufficient to punish Defendants and deter them from engaging in similar tortious conduct in the future, plus the costs of this action, and for all other proper relief.

## COUNT XV
## <u>CIVIL CONSPIRACY—THE JULY LOAN</u>
### (AGAINST ALL DEFENDANTS)

243. ADANA re-alleges paragraphs 1–26 and 122–160 above, as if fully set forth herein.

244. MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, agreed with VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, to engage in a scheme to defraud and convert $11.3 million from ADANA.

245. In furtherance of the conspiracy to defraud ADANA, MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, made overt acts,

including but not limited to, making false representations about the status of the Wells Fargo Master Account.

246. In furtherance of the conspiracy to defraud ADANA, VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, made overt acts, including but not limited to, making false representations about the status of the Wells Fargo Master Account.

247. As a result of the civil conspiracy among MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, ADANA has been damaged.

248. MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE, WVP HOLDING, and THE JV GROUP, acted willfully and intentionally in conspiring to defraud and convert $11.3 million from ADANA.

**WHEREFORE**, ADANA prays for judgment in its favor and against Defendants for compensatory damages in the amount of Eleven Million, Three-Hundred Thousand and 00/100 Dollars ($11,300,000), plus interest, plus punitive damages in an amount sufficient to punish Defendants and deter them from engaging in similar tortious conduct in the future, plus the costs of this action, and for all other proper relief.

## COUNT XVI
## BREACH OF CONTRACT
## (AGAINST DEFENDANT WVP HOLDING)

249. ADANA re-alleges paragraphs 1, 5, 10, 11, 15, 23, 24, 131–133, 138–151, 154, 155, 159, and 160 above, as if fully set forth herein.

250. On July 13, 2015, ADANA and WVP HOLDING entered into the July 13, 2015 Bridging Facility Agreement, a contract pursuant to which ADANA loaned $11.3 million to WVP HOLDING.

251. By failing to repay ADANA its $11.3 million, plus interest, fees, and expenses, by November 13, 2015, WVP HOLDING has breached the contract.

252. As a result of WVP HOLDING's breach, ADANA has been damaged.

**WHEREFORE**, ADANA prays that Judgment be entered in its favor and against Defendant WVP HOLDING for the following relief:

(g) imposing a constructive trust over the Eleven Million, Three-Hundred Thousand and 00/100 Dollars ($11,300,000);

(h) requiring Defendant WVP HOLDING to provide an accounting under section 15.1 of the Bridging Facility Agreement; and

(i) awarding compensatory damages in the amount of Eleven Million, Three-Hundred Thousand and 00/100 Dollars ($11,300,000), plus interest, fees, and expenses, plus the costs of this action, and for all other proper relief.

## COUNT XVII
## FORECLOSURE OF SECURITY INTEREST IN COLLATERAL
### (AGAINST DEFENDANT WVP HOLDING)

253. ADANA re-alleges paragraphs 1, 5, 10, 11, 15, 23, 24, 131–133, 138–151, 154, 155, 159, and 160 above, as if fully set forth herein.

254. To secure repayment of the $11.3 Million loan and any amounts that are required to be reimbursed by WVP HOLDING to ADANA, WVP HOLDING granted ADANA a security interest in "any revenue, income or other sums" as collateral.

255. WVP HOLDING defaulted under the July 13, 2015 Bridging Facility Agreement.

256. Pursuant to the terms of the July 13, 2015 Bridging Facility Agreement, the $11.3 million is now due and payable.

257. ADANA is permitted and entitled to foreclose its security interests in the collateral. It has elected to do so.

**WHEREFORE**, ADANA prays that Judgment be entered in its favor and against Defendant WVP HOLDING for the following relief:

(g) enjoining and restraining Defendant WVP HOLDING, its agents, servants, lawyers and partners (current, former and departing), and employees from transferring, selling, secreting, insulating, disposing, assigning, dissipating, and/or further encumbering the collateral;

(h) permitting foreclosure of its security interest in the collateral; and

(i) requiring Defendant WVP HOLDING to produce all documents evidencing the Collateral, including financial information, records, and statements; and

(d) granting such other further relief as is equitable and just, including recovery of costs of suit and reasonable attorneys' fees.

## COUNT XVIII
### FORECLOSURE OF SECURITY INTEREST IN COLLATERAL
### (AGAINST DEFENDANTS WVP HOLDING AND FORREST CAPITAL INC.)

258. ADANA re-alleges paragraphs 1, 2, 5, 10–12, 15, 20, 23, 24, 131–133, 138–151, 154, 155, 159, and 160 above, as if fully set forth herein.

259. To secure repayment of the $11.3 Million loan and any amounts that are required to be reimbursed by WVP HOLDING to ADANA, WVP HOLDING and FORREST CAPITAL INC. granted ADANA a security interest in the $11.3 million as collateral.

260. WVP HOLDING defaulted under the July 13, 2015 Bridging Facility Agreement.

261. Pursuant to the terms of the July 13, 2015 Bridging Facility Agreement, the $11.3 million is now due and payable.

262.    ADANA is permitted and entitled to foreclose its security interests in the collateral. It has elected to do so.

**WHEREFORE**, ADANA prays that Judgment be entered in its favor and against Defendant WVP HOLDING for the following relief:

(i) enjoining and restraining Defendants WVP HOLDING and FORREST CAPITAL INC., their agents, servants, lawyers and partners (current, former and departing), and employees from transferring, selling, secreting, insulating, disposing, assigning, dissipating, and/or further encumbering the collateral;

(j) permitting foreclosure of its security interest in the collateral;

(k) requiring Defendant WVP HOLDING and FORREST CAPITAL INC. to produce all documents evidencing the Collateral, including financial information, records, and statements; and

(l) granting such other further relief as is equitable and just, including recovery of costs of suit and reasonable attorneys' fees.

## COUNT XIX
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS UNDER FLA. STAT. § 726.105(1)(A)
### (AGAINST DEFENDANT THE JV GROUP)

263.    ADANA re-alleges paragraphs 1, 2, 8, 10–12, 18, 20–26, 51–56, 87–89, 113–116, 120, 121, 145–151, 156, and 157 above, as if fully set forth herein.

264.    ADANA is a creditor of FORREST CAPITAL INC.

265.    The transfers were made by FORREST CAPITAL INC. to THE JV GROUP with the actual intent to hinder or delay present and future creditors of such entity.

266.    When the transfers were made by FORREST CAPITAL INC. to THE JV GROUP, among other badges of fraud, FORREST CAPITAL INC. (i) was dissipating millions

of dollars for the benefit of its insiders to pay for their personal expenses and obligations; and (ii) was insolvent.

**WHEREFORE**, ADANA prays that Judgment be entered in its favor and against Defendant THE JV GROUP for the following relief:

(a) avoiding the transfers under Fla. Stat. § 726.108(1);

(b) ordering attachment of the assets transferred under Fla. Stat. § 726.108(1);

(c) imposing a constructive trust over the assets transferred under Fla. Stat. § 726.108(1);

(d) enjoining further disposition of the assets by THE JV GROUP under Fla. Stat. § 726.108(1);

(e) awarding a monetary award in the amount of the avoided transfers, together with accrued prejudgment interest;

(f) ordering the payment of all costs and expenses incurred in regard to this action;

(g) awarding any other relief the Court deems appropriate.

### COUNT XX
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### UNDER FLA. STAT. § 726.105(1)(B)
### (AGAINST DEFENDANT THE JV GROUP)

267. ADANA re-alleges paragraphs 1, 2, 8, 10–12, 18, 20–26, 51–56, 87–89, 113–116, 120, 121, 145–151, 156, and 157 above, as if fully set forth herein.

268. ADANA is a creditor of FORREST CAPITAL INC.

269. The transfers were made by FORREST CAPITAL INC. to THE JV GROUP without receiving a reasonably equivalent value in exchange for the transfer.

270. When the transfers were made by FORREST CAPITAL INC. to THE JV GROUP, FORREST CAPITAL INC. (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have

51

believed that the debtor would incur, debts beyond its ability to pay such debts as they became due.

**WHEREFORE**, ADANA prays that Judgment be entered in its favor and against Defendant THE JV GROUP for the following relief:

(a) avoiding the transfers under Fla. Stat. § 726.108(1);

(b) ordering attachment of the assets transferred under Fla. Stat. § 726.108(1);

(c) imposing a constructive trust over the assets transferred under Fla. Stat. § 726.108(1);

(d) enjoining further disposition of the assets by THE JV GROUP under Fla. Stat. § 726.108(1);

(e) awarding a monetary award in the amount of the avoided transfers, together with accrued prejudgment interest;

(f) ordering the payment of all costs and expenses incurred in regard to this action;

(g) awarding any other relief the Court deems appropriate.

**COUNT XXI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS UNDER**
**FLA. STAT. § 726.105(1)(A)**
**(AGAINST DEFENDANT CAPITAL B)**

271. ADANA re-alleges paragraphs 1, 2, 9–12, 18–26, 51–56, 87–89, 113–116, and 145–151 above, as if fully set forth herein.

272. ADANA is a creditor of FORREST CAPITAL INC.

273. The transfers were made by FORREST CAPITAL INC. to CAPITAL B with the actual intent to hinder or delay present and future creditors of such entity.

274. When the transfer was made by FORREST CAPITAL INC. to CAPITAL B, among other badges of fraud, FORREST CAPITAL INC. (i) was dissipating millions of dollars for the benefit of its insiders to pay for their personal expenses and obligations; and (ii) was insolvent.

**WHEREFORE**, ADANA prays that Judgment be entered in its favor and against Defendant CAPITAL B for the following relief:

(h) avoiding the transfers under Fla. Stat. § 726.108(1);

(i) ordering attachment of the assets transferred under Fla. Stat. § 726.108(1);

(j) imposing a constructive trust over the assets transferred under Fla. Stat. § 726.108(1);

(k) enjoining further disposition of the assets by CAPITAL B under Fla. Stat. § 726.108(1);

(l) awarding a monetary award in the amount of the avoided transfers, together with accrued prejudgment interest;

(m) ordering the payment of all costs and expenses incurred in regard to this action;

(n) awarding any other relief the Court deems appropriate.

**COUNT XXII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**UNDER  FLA. STAT. § 726.105(1)(B)**
**(AGAINST DEFENDANT CAPITAL B)**

275. ADANA re-alleges paragraphs 1, 2, 9–12, 18–26, 51–56, 87–89, 113–116, and 145–151 above, as if fully set forth herein.

276. ADANA is a creditor of FORREST CAPITAL INC.

277. The transfer was made by FORREST CAPITAL INC. to CAPITAL B without receiving a reasonably equivalent value in exchange for the transfer.

278. When the transfer was made by FORREST CAPITAL INC. to CAPITAL B, FORREST CAPITAL INC (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond its ability to pay such debts as they became due.

**WHEREFORE**, ADANA prays that Judgment be entered in its favor and against Defendant CAPITAL B for the following relief:

(h) avoiding the transfers under Fla. Stat. § 726.108(1);

(i) ordering attachment of the assets transferred under Fla. Stat. § 726.108(1);

(j) imposing a constructive trust over the assets transferred under Fla. Stat. § 726.108(1);

(k) enjoining further disposition of the assets by CAPITAL B under Fla. Stat. § 726.108(1);

(l) awarding a monetary award in the amount of the avoided transfers, together with accrued prejudgment interest;

(m) ordering the payment of all costs and expenses incurred in regard to this action;

(n) awarding any other relief the Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury in this action on all issues triable by a jury.

Dated: November 25, 2015

Respectfully submitted,

**KOBRE & KIM LLP**

/s/ John D. Couriel
John D. Couriel
Fla. Bar No. 831271
Stephanie L. Hauser
Fla. Bar No. 92765
2 South Biscayne Boulevard
Miami, FL 33131
Tel: +1 305 967 6100
Fax: +1 305 967 6120
john.couriel@kobrekim.com
stephanie.hauser@kobrekim.com

*Attorneys for Plaintiff Adana Investing, Inc.*

Case 1:20-cv-21536-MGC   Document 101-20   Entered on FLSD Docket 01/04/2021   Page 56 of 56

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing document was filed on November 25, 2015, with the Clerk of the Court via CM/ECF. I further certify that the foregoing document is being served this date on all counsel of record to all parties via transmission of Notices of Electronic Filing.

/s/ John D. Couriel
John D. Couriel

**SERVICE LIST**

Arturo V. Hernandez P.A.
Ramon Hernandez, Esq.
*Counsel for Defendants Forrest Capital Partners, Inc.;*
*Forrest Capital and Co LLC; Weathervane Productions, Inc.;*
*WVP Holding, LLC; Benjamin McConley; and Jason Van Eman*
Courthouse Center
40 N.W. 3rd Street, Suite 200
Miami, FL 33128