# EXHIBIT 21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: _____

ADANA INVESTING, INC.,
a British Virgin Islands company,

     Plaintiff,

v.

FORREST CAPITAL PARTNERS, INC.,
a Florida corporation,
FORREST CAPITAL AND CO LLC,
a Florida limited liability company,
WEATHERVANE PRODUCTIONS, INC.,
a Nevada corporation, WVP HOLDING, LLC,
an Oklahoma limited liability company,
BENJAMIN MCCONLEY, an individual, and
JASON VAN EMAN, an individual,

     Defendants.

_____/

## COMPLAINT

Plaintiff ADANA INVESTING, INC. ("ADANA"), by and through counsel, brings this

Complaint against Defendants FORREST CAPITAL PARTNERS, INC. ("FORREST CAPITAL

INC."); FORREST CAPITAL AND CO LLC ("FORREST CAPITAL LLC");

WEATHERVANE PRODUCTIONS, INC. ("WEATHERVANE"); WVP HOLDING, LLC

("WVP HOLDING"); BENJAMIN MCCONLEY ("MCCONLEY"); and JASON VAN EMAN

("VAN EMAN"), and states:

## PARTIES

1.     Plaintiff ADANA is a British Virgin Islands corporation, with its principal place

of business in Tortola, British Virgin Islands.

EXHIBIT

25

Case 1:20-cv-21536-MGC Document 16-1 Entered on FLSD Docket 05/04/2020 Page 3 of 18

2. Defendant FORREST CAPITAL INC. is a Florida corporation, with its principal place of business in Ft. Lauderdale, Florida.

3. Defendant FORREST CAPITAL LLC is a Florida limited liability company, with its principal place of business in Ft. Lauderdale, Florida.

4. Defendant WEATHERVANE is a Nevada corporation, with its principal place of business in Bartlesville, Oklahoma.

5. Defendant WVP HOLDING is an Oklahoma limited liability company, with its principal place of business in Tulsa, Oklahoma.

6. Defendant MCCONLEY is an individual and a citizen of Florida, and resides in Pembroke Pines, Florida.

7. Defendant VAN EMAN is an individual and a citizen of Oklahoma, and resides in Bartlesville, Oklahoma.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States and a citizen of a foreign state.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events and omissions giving rise to ADANA's claims occurred in this District and, upon information and belief, a substantial part of the property that is subject of this action may be or may have been at certain times relevant to this action in this District.

10. The Court has personal jurisdiction over FORREST CAPITAL INC. because it is a Florida corporation, with its principal place of business in Ft. Lauderdale, Florida.

11. The Court has personal jurisdiction over FORREST CAPITAL LLC because it is a Florida corporation, with its principal place of business in Ft. Lauderdale, Florida.

Case 1:20-cv-21536-MGC Document 16-1 Entered on FLSD Docket 05/04/2020 Page 4 of 18

12.     The Court has personal jurisdiction over WEATHERVANE because it committed a tort within Florida, and participated in a civil conspiracy, at least one act in furtherance of which was committed in Florida.

13.     The Court has personal jurisdiction over WVP HOLDING because it committed a tort within Florida and participated in a civil conspiracy, at least one act in furtherance of which was committed in Florida.

14.     The Court has personal jurisdiction over MCCONLEY because he is a citizen of Florida, committed a tort within Florida, and participated in a civil conspiracy, at least one act in furtherance of which was committed in Florida.

15.     The Court has personal jurisdiction over VAN EMAM because he committed a tort within Florida and participated in a civil conspiracy, at least one act in furtherance of which was committed in Florida.

**FACTS**

16.     FORREST CAPITAL INC. is a Florida-based investment office.

17.     FORREST CAPITAL LLC is an entity affiliated with FORREST CAPITAL INC.

18.     WEATHERVANE is the film and entertainment financing arm of FORREST CAPITAL.

19.     WVP HOLDING is a special purpose vehicle affiliated with WEATHERVANE to provide film financing.

20.     FORREST CAPITAL INC., FORREST CAPITAL LLC, WEATHERVANE, and WVP HOLDING are all owned and controlled by MCCONLEY and VAN EMAN.

*Defendants Fraudulently Induce Plaintiff to Loan $15 Million*

21.     In or around January 2015, VAN EMAN, along with two other individuals referred to as "arrangers," represented to ADANA that WEATHERVANE had the opportunity to invest in three films being produced by Aldamisa Releasing, LLC.

22.     VAN EMAN and these arrangers represented to ADANA that VAN EMAN had created a special purpose vehicle, WVP Holding, which had entered into an agreement with Aldamisa Releasing, LLC to provide financing for the three films.

23.     VAN EMAN represented to ADANA that, in order to provide the financing required by the agreement with Aldamisa Releasing, LLC, WVP HOLDING intended to secure a $30 million line of credit (the "Line of Credit") from Wells Fargo Bank, N.A. ("Wells Fargo").

24.     VAN EMAN also represented to ADANA that, to obtain the $30 million line of credit, WVP HOLDING needed to raise an equivalent amount as collateral.

25.     VAN EMAN further represented to ADANA that WVP had already received a commitment from FORREST CAPITAL INC. to loan $15 million to WVP HOLDING on the condition that WVP HOLDING first secure matched funding in the amount of $15 million. VAN EMAN represented to ADANA that FORREST CAPITAL INC.'s charter prohibited it from lending money unless matched funding from another lender was also made.

26.     VAN EMAN then proposed that ADANA provide a short-term, $15 million bridge loan (the "Bridge Loan") as the matched funding needed to obtain the $15 million loan from FORREST CAPITAL INC., with the ultimate goal of securing the $30 million Line of Credit from Wells Fargo.

27.     VAN EMAN represented to ADANA that once WVP HOLDING obtained the $30 million Line of Credit, WVP HOLDING would repay the $15 million Bridge Loan to ADANA with interest.

4

Case 1:20-cv-21536-MGC Document 16-1 Entered on FLSD Docket 05/01/2020 Page 6 of 18

28.     ADANA reasonably relied on the representations made by VAN EMAN. To wit, ADANA relied on the representations that VAN EMAN, WEATHERVANE, WVP HOLDING, and FORREST CAPITAL INC. intended to finance three films; that Wells Fargo required $30 million in collateral before issuing a $30 million Line of Credit; and that while FORREST CAPITAL INC. had committed to investing $15 million toward the film financing, FORREST CAPITAL INC.'s charter required matched financing before FORREST CAPITAL INC. could make the investment.

29.     In reliance on the representations made by VAN EMAN, ADANA agreed to provide the Bridge Loan to WVP HOLDING.

30.     On or about May 14, 2015, ADANA and WVP HOLDING entered into a Bridging Facility Agreement, dated as of May 15, 2015 (the "Bridging Facility Agreement").

31.     The Bridging Facility Agreement provided, in relevant part and in summary, that ADANA would lend $15 million to WVP HOLDING at 2% interest per month, with 7% minimum interest over the term of the Bridge Loan, subject to the terms of a Funding Agreement, dated as of May 15, 2015, among ADANA, FORREST CAPITAL INC., WEATHERVANE, and WVP HOLDING (the "Funding Agreement").

32.     The Funding Agreement provided, in relevant part and in summary, as follows:

a.  ADANA would deposit the $15 million in proceeds from the Bridge Loan into account no. xxxxxx5075 in the name of FORREST CAPITAL LLC at Wells Fargo (the "Master Account").

b.  FORREST CAPITAL INC. would then contribute an additional $15 million to the Master Account.

c.  After a total of $30 million in funds was received in the Master Account, FORREST CAPITAL INC., on behalf of WEATERVANE, would apply to Wells

5

Case 1:20-cv-21536-MGC Document 16-1 Entered on FLSD Docket 05/04/2020 Page 9 of 18

Fargo for a $30 million Line of Credit using the $30 million then in the Master Account as collateral.

d. Upon receipt of the Line of Credit, FORREST CAPITAL INC. and WVP HOLDING would transfer a draw from the $30 million Line of Credit to account no. XXXXX772 at Arvest Bank ("Arvest") in the name of WVP HOLDING (the "Holding Account").

e. WVP HOLDING would then transfer $15 million, plus 2% interest per month (subject to 7% minimum interest over the term of the Bridge Loan) plus fees and expenses, from the Holding Account back to ADANA.

f. WVP HOLDING was obligated to repay ADANA no later than 120 days from the date on which WVP Holding drew down the $15 million in proceeds from the Bridge Loan (the "Repayment Date").

g. ADANA's $15 million contribution was to be used only for the purpose of obtaining the Line of Credit.

h. ADANA's $15 million contribution could not be removed or transferred from the Master Account without ADANA's prior express written consent.

i. In the event of default or if the Line of Credit did not materialize by the Repayment Date, Wells Fargo was authorized to return the $15 million contribution to ADANA without further approval by FORREST CAPITAL INC., WEATHERVANE, or WVP HOLDING.

33. Prior to the execution of the Funding Agreement, on May 13, 2015, VAN EMAN provided ADANA with a letter from Benjamin Rafael, purportedly a banker at Wells Fargo in Miami, Florida. In Mr. Rafael's letter, the Wells Fargo confirmed that it "irrevocably and unconditionally" agreed to open the Master Account for the sole purpose of holding the funds

loaned by ADANA and FORREST CAPITAL INC., and that it would manage the Master Account in accordance with the terms of the Funding Agreement (the "May 12, 2015 Wells Fargo Letter"). *See* Exhibit "A" to the October 27, 2015 Declaration of Marc Trottier [Trottier Decl.], attached hereto as **Exhibit "1"**.

34.     ADANA reasonably relied on the representations in the May 12, 2015 Wells Fargo Letter. To wit, ADANA reasonably relied on the representation that Wells Fargo would manage the Master Account in accordance with the terms of the Funding Agreement.

35.     ADANA also executed a Deposit Account Control Agreement, dated May 15, 2015, with Arvest and WVP HOLDING (the "Arvest DACA"). *See* Trottier Decl., ¶ 13, Ex. "B".

36.     The Arvest DACA provided, in relevant part and in summary, that WVP HOLDING was not authorized to make withdrawals from the Arvest Holding Account, and that ADANA was to have "exclusive access" to the Holding Account.

37.     Thereafter, on May 15, 2015, in reliance on the representations made by VAN EMAN; the May 12, 2015 Wells Fargo Letter; and the Arvest DACA; ADANA deposited the $15 million into the Master Account (account no. xxxxxx5075 at Wells Fargo). *See* Trottier Decl., ¶ 15, Ex. "C".

38.     Accordingly, the Final Repayment Date under the Funding Agreement was September 17, 2015 (*i.e.*, 120 days from the date of draw down on May 15, 2015).

### *Defendants Make Fraudulent Statements and Produce Fraudulent Bank Records*

39.     On May 28, 2015, MCCONLEY, on behalf of FORREST CAPITAL INC., sent a letter to VAN EMAN and ADANA in which MCCONLEY confirmed receipt of ADANA's $15 million loan, and made the following representations: (i) FORREST CAPITAL INC. had "matched the contribution and allocated applicable resources to complete the financing of our project's budget;" (ii) Wells Fargo had verified funds; and (iii) ADANA's funds would "be used

Case 1:20-cv-21536-MGC   Document 16-1   Entered on FLSD Docket 05/01/2020   Page 9 of 18

for the sole purpose described in [the Funding Agreement]." It is now apparent that ADANA's funds have not been "used for the sole purpose described in [the Funding Agreement]." In the transmittal email, VAN EMAN represented that "our banker Mr. Rafael notarized this document." *See* Trottier Decl., ¶ 17, Ex. "D".

40.     The following month, on June 27, 2015, VAN EMAN forwarded to ADANA an email from MCCONLEY that attached a letter from Wells Fargo. Therein, Mr. Rafael, on behalf of Wells Fargo, confirmed that account no. xxxxxx4620 in the name of WVP Holding had a balance of $30,021,000, and represented that the "Line of Credit titled and on behalf of 'WVP Holding' continues with normal processing time and is expected to be drawn upon and released on or before the end of September." *See* Trottier Decl., ¶ 18, Ex. "E".

41.     As of no later than September 17, 2015, Adana was entitled to the return of its $15 million, plus interest, fees, and expenses—which, as of September 17, 2015, totaled $16,774,340.

42.     On September 30, 2015, MCCONLEY and FORREST CAPITAL INC. sent a letter to VAN EMAN and ADANA in which they made the following representations: (i) they had completed the requirements for securing the $30 million Line of Credit from Wells Fargo; (ii) FORREST CAPITAL INC. was in the process of finalizing the transfer of $30 million to the Arvest Holding Account (as of the filing of this Complaint, the transfer of the $30 million has not occurred); (iii) upon receipt of the Arvest Holding Account information, an initial $15 million transfer would be completed within five business days, with another $15 million transfer to follow three to five business days later (as of the filing of this Complaint, the two $15 million transfers have not occurred); (iv) Wells Fargo had verified the amount of funds in the Master Account (as of the date of this Complaint, no verification from Wells Fargo has been forthcoming) ; and (v) ADANA's funds would "be used for the sole purpose described in [the

8

Funding Agreement]" (they have not). Again, a notary stamp purportedly from Mr. Rafael appeared on the letter from FORREST CAPITAL INC. *See* Trottier Decl., ¶ 21, Ex. "F".

43. The following day, on October 1, 2015, VAN EMAN forwarded to ADANA a letter purportedly from Mr. Rafael of Wells Fargo to FORREST CAPITAL INC., in which Wells Fargo advised that: (i) it was "ready to complete the transfer as directed" (which transfer has not occurred as of the filing of this Complaint); (ii) "the account ending in -3574 has a current balance of $30,021,391 and is allocated in full to the referenced project above;" (which ADANA cannot verify) and (iii) Wells Fargo "anticipate[d] completing the first portion of funding as instructed by Wednesday October 7, 2015 and the balance within 3 business days following the initial transfer" (this did not occur). *See* Trottier Decl., ¶ 22, Ex. "G".

44. Then, on October 8, 2015, VAN EMAN forwarded to ADANA an email from MCCONLEY that included what they represented to be an email from Wells Fargo confirming the transfer of $15 million from Wells Fargo to the Arvest Holding Account. This transfer did not in fact occur. *See* Trottier Decl., ¶ 25, Ex. "H".

45. On October 10, 2015—after repeated assurances and representations by MCCONLEY and VAN EMAM that FORREST CAPITAL INC. had wired the $15 million from the Master Account to the Holding Account—attorney Marc Trottier of Berwin Leighton Paisner LLP ("BLP"), for and on behalf of ADANA, emailed a notice of events of default and reservation of rights to WEATHERVANE, WVP HOLDING, FORREST CAPITAL INC., VAN EMAN, and MCCONLEY. *See* Trottier Decl., ¶ 26, Ex. "I".

46. After the notice of default, VAN EMAN and MCCONLEY continued by telephone and email to make false representations to ADANA that the funds had been wired.

47. On October 10, 2015, VAN EMAN represented to ADANA by email that the wire of the funds from Wells Fargo to the Holding Account at Arvest had been initiated, and that

Case 1:20-cv-21536-MGC Document 16-1 Entered on FLSD Docket 05/01/2020 Page 11 of 18

WVP HOLDING would repay the $15 million, plus interest, as soon as the funds posted into the Arvest Holding Account. As of the filing of this Complaint, the funds have yet to be wired from Wells Fargo to the Holding Account at Arvest.

48.     By October 13, 2015, however, VAN EMAN was unable to provide a confirmation number from the Federal Reserve for transmittal of the wire (a "Fedwire confirmation number"). Then, despite representing that he was now in possession of the Fedwire confirmation number, VAN EMAN did not provide it to ADANA. Further, VAN EMAN could not provide confirmation to ADANA that Arvest ever received the wire.

49.     Throughout October 14–16, 2015, ADANA made repeated requests for updates and information concerning the wire, but VAN EMAN and MCCONLEY failed to provide the Fedwire confirmation number or other proof that Arvest had received the funds.

50.     On October 18, 2015, MCCONLEY emailed (i) an October 12, 2015 Letter of Authorization to Transfer Funds or Securities from a FORREST CAPITAL INC. account at Wells Fargo (account no. XXXXXX5335) to the Arvest Holding Account for the amount of $15,023,951; and (ii) what he represented to be a Fedwire confirmation number for the transfer of $15,023,951 from yet another FORREST CAPITAL INC. account at Wells Fargo (account no. XXXXXX3574) to the Arvest Holding Account. *See* Trottier Decl., ¶ 32, Ex. "K".

51.     Upon information and belief, the Fedwire confirmation number provided by MCCONLEY on October 18, 2015 was fabricated.

52.     In another October 18, 2015 email, MCCONLEY represented that the FORREST CAPITAL INC. account at Wells Fargo (account no. XXXXXX5335) was the account into which the Line of Credit was deposited and funded. *See* Trottier Decl., ¶ 32, Ex. "K".

53. On or about October 19, 2015, Mr. Trottier of BLP, on behalf of ADANA, attempted to email Benjamin Rafael at benjamin.rafael@wellsfargo.com, but received an email bounce-back. *See* Trottier Decl., ¶ 33, Ex. "L".

54. On October 19, 2015, when asked again about the status of the funds, VAN EMAN emailed ADANA that he would initiate a wire track through Wells Fargo. *See* Trottier Decl., ¶ 35, Ex. "M".

55. On October 20, 2015, ADANA requested from VAN EMAN and MCCONLEY proof from Wells Fargo that Benjamin Rafael was a Wells Fargo employee. VAN EMAN and MCCONLEY were unwilling or unable to provide proof of Benjamin Rafael's employment at Wells Fargo.

56. That same day, on October 20, 2015, VAN EMAN and MCCONLEY again represented by telephone that the funds has been wired and that they were working with Wells Fargo to determine why Arvest had not yet received them. *See* Trottier Decl., ¶ 36.

57. Later that day, VAN EMAN emailed ADANA with a screen shot of purported account activity on October 20, 2015 for the Arvest Holding Account. The account activity for October 20, 2015 purported to show that a <u>check</u> for $23,951—and *not* a <u>wire</u> for $15,023,951— had been deposited into the Arvest Holding account, but not yet cleared. *See* Trottier Decl., ¶ 37, Ex. "N".

58. The next day, on October 21, 2015, VAN EMAN emailed ADANA with another screen shot of that day's activity for the Arvest Holding Account. The account activity for October 20, 2015 purported to show that a <u>check</u> for $15,000,000—again, *not* a <u>wire</u> for $15,023,951—had been deposited into the Arvest Holding Account, but not yet cleared. VAN EMAN advised that it would take yet another three to five business days to clear the $15 million transfer, and that thereafter they would transfer the second $15 million. As of the filing of this

Case 1:20-cv-21536-MGC Document 16-1 Entered on FLSD Docket 05/21/2020 Page 13 of 18

Complaint, ADANA has not received proof that the $15,000,000 check cleared in the Arvest Holding Account. *See* Trottier Decl., ¶ 38, Ex. "O".

59.     On October 22, 2015, VAN EMAN forwarded ADANA an email purportedly from James Wilson at Arvest, in which Arvest represented that the funds would be available on October 27, 2015. As of the filing of this Complaint, ADANA has not received confirmation that the $15 million check ever cleared or became available in the Arvest Holding Account, nor have any funds been wired from the Arvest Holding Account to ADANA. *See* Trottier Decl., ¶ 39, Ex. "P".

60.     On October 26, 2015, VAN EMAN provided another screen shot of the account activity for the Arvest Holding Account for October 25, 2015. The account activity for October 25, 2015 purported to show that there was a hold on a deposit of $15,000,000. The October 25, 2015 account activity also revealed that the $23,951 purportedly deposited by check on October 20, 2015 was no longer in the Arvest Holding Account. *See* Trottier Decl., ¶ 40, Ex. "Q".

61.     The $23,951 was not wired to ADANA. As of the filing of this Complaint, it is unknown whether the $23,951 check bounced, if the Defendants withdrew the funds in contravention of the Arvest DACA, or if the funds were diverted in some other way.

62.     On October 27, 2015, ADANA contacted Arvest seeking confirmation that Arvest was complying with the Arvest DACA—but Arvest refused to provide that confirmation to ADANA.

63.     Despite repeated false representations made by VAN EMAN and MCCONLEY to ADANA, including the production of records purportedly from two banks, that FORREST CAPITAL INC. had wired the funds to the Arvest Holding Account, as of the filing of this Complaint, ADANA's $15 million investment, plus interest, has not been returned.

Case 1:20-cv-21536-MGC Document 16-1 Entered on FLSD Docket 05/01/2020 Page 14 of 18

64.     MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE and WVP HOLDING, used ADANA's funds for his and their own purposes without ADANA's consent.

65.     MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, conspired with VAN EMAN, individually and on behalf of WEATHERVANE and WVP HOLDING, to engage in a scheme to defraud ADANA of its $15 million.

### *Defendants' Are Systematically Stealing from Investors*

66.     Upon information and belief, MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE and WVP HOLDING, have in the past and are currently engaged in a series of internally consistent schemes to defraud investors and convert their funds for personal use. In the past year, VAN EMAN and/or MCCONLEY have been sued in no fewer than three civil actions, including twice in this District, for fraud, civil conspiracy, and conversion based on similar schemes. *See Anthony Buzbee v. Gayle Dickie, Jason Van Eman, Weathervane Productions, Inc., Forrest Capital Partners, Inc., Forrest Capital & Co., LLC, et al.*, Case No. 4:14-Cv-03431 (S.D. Tx.) (initial complaint filed in state court on 10/20/2014); *Dane A. Miller v. Benjamin Forrest McConley*, Case No. 0:14-Cv-62449-WPD (S.D. Fla.) (initial complaint filed on Oct. 28, 2014); *Superhuman International Pty Ltd. v. Benjamin Forrest McConley, Jason Van Eman, Forrest Capital, Partners, Inc., Weathervane Productions, Inc., et al.*, Case No. 1:15-Cv-22690-CMA (S.D. Fla) (initial complaint filed on July 17, 2015).

## COUNT I – COMMON LAW CONVERSION
### (AGAINST ALL DEFENDANTS)

67.     ADANA re-alleges paragraphs 1 through 66 above, as if fully set forth herein.

68.     The $15 million deposited into FORREST CAPITAL LLC's bank account at Wells Fargo (account no. xxxxxx7075) is the property of ADANA.

69.     As of no later than September 17, 2015, MCCONLEY, on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, on behalf of WEATHERVANE and WVP HOLDING, were obligated to deliver the $15 million to ADANA.

70.     ADANA has the immediate right to possess its $15 million, plus interest.

71.     MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE and WVP HOLDING, are wrongfully exercising control and dominion over ADANA's $15 million, without ADANA's authorization, which is inconsistent with and adverse to the rights of ADANA as the true owner of the $15 million, plus interest.

72.     ADANA has demanded return of the $15 million, plus interest, but MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, VAN EMAN, individually and on behalf of WEATHERVANE and WVP HOLDING, and MAROSSO, individually and on behalf of WEATHERVANE and WVP HOLDING have refused and failed to deliver the funds to ADANA as of the filing of this Complaint.

73.     As a result of the unauthorized possession of ADANA's investment by MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE and WVP HOLDING, ADANA has been damaged.

14

74.     MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE and WVP HOLDING, have acted willfully and intentionally in depriving ADANA of possession of its $15 million, plus interest.

**WHEREFORE**, ADANA prays for judgment in its favor and against Defendants for compensatory damages in the amount of Fifteen Million and 00/100 Dollars ($15,000,000), plus interest, plus punitive damages in an amount sufficient to punish Defendants and deter them from engaging in similar tortious conduct in the future, plus the costs of this action, and for all other proper relief.

<u>**COUNT II – FRAUD IN THE INDUCEMENT**</u>
**(AGAINT ALL DEFENDANTS)**

75.     ADANA re-alleges paragraphs 1 through 66 above, as if fully set forth herein.

76.     Defendants have made misrepresentations of material facts to ADANA. To wit, Defendants made the statements specifically identified in paragraphs 21–27, 33, and 36 above, each of which was a misrepresentation of material fact.

77.     At the time they made these misrepresentations, Defendants knew or should have known of the falsity of each statement.

78.     Defendants intended for the misrepresentations to induce ADANA to rely and act on them to enter into the Funding Agreement and deposit the $15 million with FORREST CAPITAL LLC.

79.     ADANA justifiably and reasonably relied on the representations.

80.     ADANA was fraudulently induced into entering into the Funding Agreement, and has been injured as a result of its justifiable reliance on the representations.

81.     Defendants acted willfully and intentionally to fraudulently induce ADANA to enter into the Funding Agreement and deposit the $15 million with FORREST CAPITAL LLC.

**WHEREFORE**, ADANA prays for judgment in its favor and against Defendants for compensatory damages in the amount of Fifteen Million and 00/100 Dollars ($15,000,000), plus the interest and fees owed under the Funding Agreement, plus interest, plus punitive damages in an amount sufficient to punish Defendants and deter them from engaging in similar tortious conduct in the future, plus the costs of this action, and for all other proper relief.

<u>**COUNT III – CIVIL CONSPIRACY**</u>
**(AGAINST ALL DEFENDANTS)**

82.     ADANA re-alleges paragraphs 1 through 66 above, as if fully set forth herein.

83.     MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, agreed with VAN EMAN, individually and on behalf of WEATHERVANE and WVP HOLDING, to engage in a scheme to defraud and convert $15 million from ADANA.

84.     In furtherance of the conspiracy to defraud ADANA, MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, made overt acts, including but not limited to, making false representations about the status of the Wells Fargo Master Account, making false representations that he had wired the $15 million from Wells Fargo to the Arvest Holding Account, and producing forged Fedwire confirmation numbers.

85.     In furtherance of the conspiracy to defraud ADANA, VAN EMAN, individually and on behalf of WEATHERVANE and WVP HOLDING, made overt acts, including but not limited to, making false representations about the status of the Wells Fargo Master Account, making false representations that MCCONLEY had wired the $15 million from Wells Fargo to the Arvest Holding Account, and producing forged Fedwire confirmation numbers.

Case 1:20-cv-21536-MGC Document 16-1 Entered on FLSD Docket 03/01/2020 Page 18 of 18

86.     As a result of the civil conspiracy among MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE and WVP HOLDING, ADANA has been damaged.

87.     MCCONLEY, individually and on behalf of FORREST CAPITAL INC. and FORREST CAPITAL LLC, and VAN EMAN, individually and on behalf of WEATHERVANE and WVP HOLDING, acted willfully and intentionally in conspiring to defraud and convert $15 million from ADANA.

**WHEREFORE**, ADANA prays for judgment in its favor and against Defendants for compensatory damages in the amount of Fifteen Million and 00/100 Dollars ($15,000,000), plus interest, plus punitive damages in an amount sufficient to punish Defendants and deter them from engaging in similar tortious conduct in the future, plus the costs of this action, and for all other proper relief.

<u>**JURY DEMAND**</u>

Plaintiff hereby demands a trial by jury in this action on all issues triable by a jury.

Dated:  October 28, 2015                                        Respectfully submitted,

                                                                              **KOBRE & KIM LLP**

                                                                              /s/ John D. Couriel
                                                                              John D. Couriel
                                                                              Fla. Bar No. 831271
                                                                              Stephanie L. Hauser
                                                                              Fla. Bar No. 92765
                                                                              2 South Biscayne Boulevard
                                                                              Miami, FL 33131
                                                                              Tel: +1 305 967 6100
                                                                              Fax: +1 305 967 6120
                                                                              john.couriel@kobrekim.com
                                                                              stephanie.hauser@kobrekim.com

                                                                              *Attorneys for Plaintiff Adana Investing, Inc.*