# EXHIBIT 22

**Exhibit 75**

 Gmail

Sofia Sondervan-Bild <sofiasondervan@gmail.com>

## See attached

1 message

**Tom Butterfield** <tom@culminationprod.com>                    Wed, Nov 11, 2015 at 7:40 PM
To: Sofia gmail <sofiasondervan@gmail.com>

Scary reading!!

Tom Butterfield
Culmination Productions
tom@culminationprod.com
+1 323 636 6085 /+44 (0)7802 608 890

AM CURRENTLY ON MY US NUMBER

📄 **Adana_Investing_Inc_v_Forrest_Capital_Inc_et_al__flsdce-15-24038__0001.2.pdf**
380K

DEFENDANT'S EXHIBIT

**75**

LT-009646

Case 1:15-cv-24038-MGC    Document 1-2    Entered on FLSD Docket 10/28/2015    Page 1 of 14

# EXHIBIT 1

LT-009647

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: _____

Adana INVESTING, INC.,
a British Virgin Islands company,

      Plaintiff,

v.

FORREST CAPITAL PARTNERS, INC.,
a Florida corporation,
FORREST CAPITAL AND CO LLC,
a Florida limited liability company,
WEATHERVANE PRODUCTIONS, INC.,
a Nevada corporation, WVP HOLDING, LLC,
an Oklahoma limited liability company,
BENJAMIN MCCONLEY, an individual, and
JASON VAN EMAN, an individual,

      Defendants.

_____ /

## **Declaration of Marc Trottier**

Pursuant to 28 U.S.C. § 1746, I declare as follows:

1.      My name is Marc Trottier. I am over 18 years of age.

2.      I am a partner at the law firm of Berwin Leighton Paisner LLP ("BLP").

3.      BLP represents Adana Investing, Inc. ("Adana") as transactional counsel in connection with a $15 million bridge loan Adana made to WVP Holding, LLC ("WVP Holding") on or about May 15, 2015 (the "Bridge Loan").

4.      I make this Declaration in my capacity as transactional counsel for Adana in connection with the Bridge Loan, and on behalf of Adana. This Declaration is based on my personal knowledge.

1

LT-009648

5. Forrest Capital Partners, Inc. ("Forrest Capital Inc.") purports to be an investment office based in Florida. Forrest Capital and Co LLC ("Forrest Capital LLC") is an entity affiliated with Forrest Capital Inc.

6. Weathervane Productions, Inc. ("Weathervane") purports to be the film and entertainment financing arm of Forrest Capital Inc.

7. WVP Holding purports to be a special purpose vehicle affiliated with Weathervane to provide film financing.

8. Forrest Capital Inc., Forrest Capital LLC, Weathervane, And WVP Holding are all owned and/or controlled by Benjamin McConley ("McConley") and Jason Van Eman ("Van Eman").

9. On or about May 14, 2015, Adana and WVP Holding entered into a Bridging Facility Agreement, dated as of May 15, 2015 (the "Bridging Facility Agreement").

10. The Bridging Facility Agreement provided, in relevant part and in summary, that Adana would make the Bridge Loan of $15 million to WVP Holding at 2% interest per month, with a 7% minimum, subject to the terms of a Funding Agreement, dated as of May 15, 2015, among Adana, WVP Holding, Forrest Capital Partners, Inc. ("Forrest Capital Inc."), and Weathervane Productions, Inc. ("Wealthervane") (the "Funding Agreement").

11. The Funding Agreement provided, in relevant part and in summary, as follows:

   a. Adana would deposit the $15 million in proceeds from the Bridge Loan into account no. xxxxxx5075 at Wells Fargo Bank, N.A. ("Wells Fargo") in the name of Forrest Capital and Co LLC ("Forrest Capital LLC") (the "Master Account").

   b. Forrest Capital Inc. would then contribute an additional $15 million to the Master Account.

2

LT-009649

Case 1:15-cv-24038-MGC Document 1-2 Entered on FLSD Docket 10/28/2015 Page 4 of 14

c. After a total of $30 million in funds was received in the Master Account, Forrest Capital Inc., on behalf of Weatervane, would apply to Wells Fargo for a $30 million Line of Credit using the $30 million then in the Master Account as collateral.

d. Upon receipt of the Line of Credit, Forrest Capital Inc. and WVP Holding would transfer a draw from the $30 million Line of Credit to account no. XXXXX772 at Arvest Bank ("Arvest") in the name of WVP Holding (the "Holding Account").

e. WVP Holding would then transfer $15 million, plus 2% interest per month (subject to a 7% minimum interest over the term of the Bridge Loan) plus fees and expenses, from the Holding Account back to Adana by wiring to funds to the trust account of BLP (the "BLP Trust Account").

f. WVP Holding was obligated to repay Adana no later than 120 days from the date on which WVP Holding drew down the $15 million in proceeds from the Bridge Loan (the "Repayment Date").

g. Adana's $15 million contribution was to be used only for the purpose of obtaining the Line of Credit.

h. Adana's $15 million contribution could not be removed or transferred from the Master Account without Adana's prior express written consent.

i. In the event of default or if the Line of Credit did not materialize by the Repayment Date, Wells Fargo was authorized to return the $15 million contribution to Adana without further approval by Forrest Capital Inc., Weathervane, or WVP Holding.

3

LT-009650

12.     Prior to the execution of the Funding Agreement, on May 13, 2015, Van Eman provided Adana with a letter from Benjamin Rafael, purportedly a banker at Wells Fargo, in which Wells Fargo confirmed that it "irrevocably and unconditionally" agreed to open the Master Account for the sole purpose of holding the funds loaned by Adana and Forrest Capital Inc., and that it would manage the Master Account in accordance with the terms of the Funding Agreement (the "May 12, 2015 Wells Fargo Letter"). A true and correct copy of the May 12, 2015 Wells Fargo Letter, as provided by Van Eman, is attached hereto as **Exhibit "A"**.

13.     Adana also executed a Deposit Account Control Agreement, dated May 15, 2015, with Arvest and WVP Holding (the "Arvest DACA"). A true and correct copy of the Arvest DACA is attached hereto as **Exhibit "B"**.

14.     The Arvest DACA provided, in relevant part and in summary, that WVP Holding was not authorized to make withdrawals from the Arvest Holding Account, and that Adana was to have "exclusive access" to the Holding Account.

15.     On May 15, 2015, in reliance on the representations made by Van Eman and the May 12, 2015 Wells Fargo Letter, Adana caused BLP to wire $15 million to the Master Account (account no. xxxxxx5075 at Wells Fargo). A true and correct copy of the wire confirmation for the $15 million from the BLP trust Account, on behalf of Adana, to Wells Fargo account no. xxxxxx5075 is attached hereto as **Exhibit "C"**.

16.     Accordingly, the Final Repayment Date under the Funding Agreement was September 17, 2015 (*i.e.*, 120 days from the date of draw down on May 15, 2015).

17.     On May 28, 2015, McConley, on behalf of Forrest Capital Inc., sent a letter to Van Eman and Adana in which McConley confirmed receipt of Adana's $15 million loan, and made the following representations: (i) Forrest Capital Inc. had "matched the contribution and

4

LT-009651

allocated applicable resources to complete the financing of our project's budget;" (ii) Wells Fargo had verified funds; and (iii) Adana's funds would "be used for the sole purpose described in [the Funding Agreement]." It is now apparent that Adana's funds have not been "used for the sole purpose described in [the Funding Agreement]." In the transmittal email, Van Eman represented that "our banker Mr. Rafael notarized this document." True and correct copies of the June 3, 2015 email from Van Eman, and attached May 28, 2015 letter from McConley, on behalf of Forrest Capital Inc., to Van Eman and Adana, are attached as **Exhibit "D"**.

18.     The following month, on June 27, 2015, Van Eman forwarded to Adana an email from McConley that attached a letter from Wells Fargo. Therein, Mr. Rafael, on behalf of Wells Fargo, confirmed that account no. xxxxxx4620 in the name of WVP Holding had a balance of $30,021,000, and represented that the "Line of Credit titled and on behalf of 'WVP Holding' continues with normal processing time and is expected to be drawn upon and released on or before the end of September." A true and correct copy of the June 26, 2015 Letter from Benjamin Rafael to Van Eman and Mr. Shear, as provided by Van Eman, is attached as **Exhibit "E"**.

19.     By September 17, 2015, Adana's $15 million, plus interest, had not been wired to the BLP Trust Account.

20.     As of no later than September 17, 2015, Adana was entitled to the return of its $15 million, plus interest, fees, and expenses—which, as of September 17, 2015, totaled $16,774,340.

21.     On September 30, 2015, McConley and Forrest Capital Inc. sent a letter to Van Eman and Graham Shear, also a partner at BLP, in which they made the following representations: (i) they had completed the requirements for securing the $30 million Line of

LT-009652

Credit from Wells Fargo; (ii) Forrest Capital Inc. was in the process of finalizing the transfer of $30 million to the Arvest Holding Account; (iii) upon receipt of the Arvest Holding Account information, an initial $15 million transfer would be completed within five business days, with another $15 million transfer to follow three to five business days later; (iv) Wells Fargo had verified the amount of funds in the Master Account; and (v) Adana's funds would "be used for the sole purpose described in [the Funding Agreement]." A notary stamp purportedly from Mr. Rafael appeared on the letter from Forrest Capital Inc. A true and correct copy of the September 30, 2015 Letter from McConley and Forrest Capital Inc. to Van Eman and Mr. Shear is attached hereto as **Exhibit "F"**.

22.     The following day, on October 1, 2015, Van Eman forwarded to me and others a letter purportedly from Mr. Rafael of Wells Fargo to Forrest Capital Inc., in which Wells Fargo advised that: (i) it was "ready to complete the transfer as directed"; (ii) "the account ending in -3574 has a current balance of $30,021,391 and is allocated in full to the referenced project above;" and (iii) Wells Fargo "anticipate[d] completing the first portion of funding as instructed by Wednesday October 7, 2015 and the balance within 3 business days following the initial transfer." A true and correct copy of the October 1, 2015 email from Van Eman, attaching the October 1, 2015 Letter from Wells Fargo to Forrest Capital Inc., is attached as **Exhibit "G"**.

23.     To my knowledge, Wells Fargo did not transfer the funds as required by the Funding Agreement to the Arvest Holding Account on October 7, 2015, or any date thereafter.

24.     From October 1 through October 10, 2015, I participated in regular (usually daily) calls with Van Eman, in which he represented that the transfer of the $15 million from Wells Fargo to the Arvest Holding Account had been initiated and was expected to clear soon.

6

LT-009653

25.     On October 8, 2015, Van Eman forwarded to me an email from McConley that included what they represented to be an email from Wells Fargo confirming the transfer of $15 million from a Forrest Capital Inc. account at Wells Fargo (account no. xxxxxx6322) to the Arvest Holding Account. A true and correct copy of the October 8, 2015 email chain from Van Eman and McConley is attached hereto as **Exhibit "H"**. To my knowledge, this transfer did not occur.

26.     On October 10, 2015—after repeated assurances and representations by McConley and Van Eman that Forrest Capital Inc. had wired the $15 million from the Master Account to the Holding Account—I, for and on behalf of Adana, emailed a notice of events of default and reservation of rights to Weathervane, WVP Holding, Forrest Capital Inc., Van Eman, and McConley. A true and correct copy of the October 10, 2015 Notice of Default Email to Weathervane, WVP Holding, Forrest Capital Inc., Van Eman, McConley, and others is attached hereto as **Exhibit "I"**.

27.     After the notice of default email, Van Eman and McConley continued by telephone and email to make representations to me, on behalf of Adana, that the funds had been wired from Wells Fargo to the Arvest Holding Account in accordance with the Funding Agreement.

28.     On October 10, 2015, Van Eman emailed me, on behalf of Adana, that the wire of the funds from Wells Fargo to the Holding Account at Arvest had been initiated, and that WVP Holding would repay the $15 million, plus interest, as soon as the funds posted into the Arvest Holding Account. A true and correct copy of the October 10, 2015 email from Van Eman is attached hereto as **Exhibit "J"**.

7

LT-009654

29.     Again, to my knowledge, the funds have yet to be wired from Wells Fargo to the Holding Account at Arvest.

30.     By October 13, 2015, however, Van Eman had failed to provide me with a confirmation number from the Federal Reserve for transmittal of the wire (a "Fedwire confirmation number") or any other documentation (*e.g.*, an account statement from Wells Fargo or Arvest) to confirm that Arvest ever received the wire.

31.     Throughout October 14–16, 2015, myself and other attorneys at BLP, on behalf of Adana, made repeated requests for updates and information concerning the wire, but Van Eman and McConley failed to provide the Fedwire confirmation number or other proof that Arvest had received the funds.

32.     Then, on October 18, 2015, McConley emailed (i) an October 12, 2015 Letter of Authorization to Transfer Funds or Securities from a second Forrest Capital Inc. account at Wells Fargo (account no. XXXXXX5335) to the Arvest Holding Account for the amount of $15,023,951; and (ii) what he represented to be a Fedwire confirmation number for the transfer of $15,023,951 from yet now a third Forrest Capital Inc. account at Wells Fargo (account no. XXXXXX3574) to the Arvest Holding Account. True and correct copies of the October 18, 2015 emails from McConley, and attached October 12, 2015 Letter of Authorization to Transfer Funds or Securities, are attached hereto as **Exhibit "K"**. To my knowledge, the wire transfer of $15,023,951 to the Arvest Holding Account never occurred.

33.     In another October 18, 2015 email, McConley represented that the Forrest Capital Inc. account at Wells Fargo (account no. XXXXXX5335) was the account into which the Line of Credit was deposited and funded. *See* Exhibit K.

8

LT-009655

34. On October 19, 2015, I, on behalf of Adana, attempted to email Benjamin Rafael at benjamin.rafael@wellsfargo.com, but I received an email bounce-back. A true and correct copy of the October 19, 2015 email bounce-back is attached hereto as **Exhibit "L"**.

35. On October 19, 2015, Van Eman emailed me, on behalf of Adana, that he would initiate a wire track through Wells Fargo. A true and correct copy of the October 19, 2015 email from Van Eman is attached hereto as **Exhibit "M"**.

36. On October 20, 2015, I, on behalf of Adana, had multiple telephone conversations with Van Eman and McConley. During one call, I requested that Van Eman and McConley provide me proof from Wells Fargo that Benjamin Rafael was a Wells Fargo employee, but Van Eman and McConley were unwilling or unable do so. During a later call, Van Eman and McConley represented to me, on behalf of Adana, that the funds had been wired and that they were working with Wells Fargo to determine why Arvest had not yet received them.

37. Later that day, on October 20, 2015, Van Eman emailed me, on behalf of Adana, with a screen shot of purported account activity on October 20, 2015 for the Arvest Holding Account. The account activity for October 20, 2015 purported to show that a <u>check</u> for $23,951—and *not* a <u>wire</u> for $15,023,951—had been deposited into the Arvest Holding account, but not yet cleared. A true and correct copy of the October 20, 2015 email and attachment from Van Eman is attached hereto **Exhibit "N"**.

38. The next day, on October 21, 2015, Van Eman emailed me, on behalf of Adana, with another screen shot of purported activity for the Arvest Holding Account. The account activity for October 20, 2015 purported to show that a <u>check</u> for $15,000,000—again, *not* a <u>wire</u> for $15,023,951—had been deposited into the Arvest Holding Account, but not yet cleared. Van Eman advised that it would take yet another three to five business days to clear the $15 million

9

LT-009656

transfer, and that thereafter they would transfer the second $15 million. A true and correct copy of the October 21, 2015 email and attachment from Van Eman is attached hereto **Exhibit "O"**.

39.     On October 22, 2015, Van Eman forwarded to me, on behalf of Adana, an email purportedly from James Wilson at Arvest, in which Arvest represented that the funds would be available on October 27, 2015. A true and correct copy of the October 22, 2015 email from Van Eman is attached hereto as **Exhibit "P"**.

40.     On October 26, 2015, Van Eman provided another screen shot of the account activity for the Arvest Holding Account for October 25, 2015. The account activity for October 25, 2015 purported to show that there was a hold on a deposit of $15,000,000. A true and correct copy of the October 26, 2015 email, attaching the October 25, 2015 Account Activity, is attached as **Exhibit "Q"**.

41.     To my knowledge, and as of October 28, 2015, the purported check for $15,000,000 has not cleared in the Arvest Holding Account.

42.     The October 25, 2015 account activity also revealed that the $23,951 purportedly deposited by check on October 20, 2015 was no longer in the Arvest Holding Account. *See* Exhibit "Q".

43.     The $23,951 was not wired to BLP's Trust Account.

44.     As of October 28, 2015, it is unknown whether the $23,951 check bounced, if the Defendants withdrew the funds in contravention of the Arvest DACA, or if the funds were diverted in some other way.

45.     Since September 30, 2015, Van Eman and McConley consistently have made representations to me, on behalf of Adana, that the wire of the funds in accordance with the Funding Agreement was in progress. Initially, Van Eman and McConley represented, and even

10

LT-009657

provided records purportedly from Wells Fargo confirming same, that Forrest Capital Inc. had wired the funds to the Arvest Holding Account. The Wells Fargo records provided by Van Eman and McConley, however, reference three different account numbers for Forrest Capital Inc.: (i) xxxxxx5335; (ii) xxxxxx3574; and (iii) xxxxxx6332. These three Forrest Capital Inc. account numbers are in addition to the Master Account in the name of Forrest Capital LLC at Wells Fargo (account no. xxxxxx5075). They are also in addition to the account identified by Mr. Rafael in his letter of June 27, 2015 (account no. xxxxxx4620 in the name of WVP Holding at Wells Fargo).

46.     To my knowledge, and as of October 28, 2015, the wire required by the Funding Agreement was never made to the Arvest Holding Account.

47.     Then, within the past week, Van Eman provided documents purportedly from Arvest to show that two checks (for a total of $15,023,951) were deposited into the Arvest Holding Account on October 20 and 21, 2015, respectively.

48.     As of October 28, 2015, I have not received or reviewed any documentation that there are funds available in the Arvest Holding Account.

49.     On October 27, 2015, I emailed James Wilson, purportedly of Arvest, seeking confirmation that Arvest was enforcing the Arvest DACA, but he refused to provide me with any information about the Arvest Holding Account or even confirm compliance with the Arvest DACA. Instead, he suggested that I speak with Van Eman.

50.     As of October 28, 2015, Adana's $15 million, plus interest, has not been received by the BLP Trust Account.

51.     Despite repeated demands for the return of Adana's $15 million, as of October 28, 2015, McConley, individually and on behalf of Forrest Capital Inc. and Forrest Capital LLC, and

11

LT-009658

Van Eman, individually and on behalf of Weathervane and WVP Holding, remain in control of Adana's $15 million without Adana's consent.

52.    There were projected uses for the $15 million capital in profit-generating ventures that, as a result of Defendants' actions, are now stymied, to the ongoing and significant detriment of Adana.

LT-009659

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed in London, United Kingdom on October 28th, 2015.

Marc Trottier

LT-009660