# EXHIBIT 36

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-cv-21536-MGC

LONDON TOWN PIC LIMITED,
SOFIA SONDERVAN-BILD, and
TOM BUTTERFIELD,

     Plaintiffs,

v.

WELLS FARGO BANK, N.A., and
WELLS FARGO ADVISORS, LLC,

     Defendants.

_____/

### PLAINTIFF, TOM BUTTERFIELD'S ANSWERS TO DEFENDANT WELLS FARGO BANK, N.A.'S FIRST INTERROGATORIES

Plaintiff, TOM BUTTERFIELD, by and through undersigned counsel, hereby provides his

answers to Defendant, WELLS FARGO BANK, N.A.'s First Set of Interrogatories, propounded

on June 19, 2020, in accordance with the applicable Federal Rules of Civil Procedure.

Respectfully submitted,

By: /s/ *Benjamin H. Brodsky*
Benjamin H. Brodsky, Esq.
Florida Bar No. 73748
BRODSKY FOTIU-WOJTOWICZ, PLLC
*Counsel for Plaintiffs*
200 SE 1 Street, Suite 400
Miami, Florida 33131
Tel:  305-503-5054
Fax:  786-749-7644
bbrodsky@bfwlegal.com
docketing@bfwlegal.com



BRODSKY FOTIU-WOJTOWICZ

EXHIBIT

28

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic mail

on July 20, 2020, on all counsel or parties of record on the Service List below.


s/      *Benjamin H. Brodsky*
Benjamin H. Brodsky

## SERVICE LIST

Emily Y. Rottmann
MCGUIRE WOODS LLP
50 North Laura Street, Suite 3300
Jacksonville, FL 32202904-798-3200
904-798-3207
erottmann@mcguirewoods.com
flservice@mcguirewoods.com

Jarrod D. Shaw, Esq.
MCGUIRE WOODS LLP
50 North Laura Street, Suite 3300
Jacksonville, FL 32202
904-798-3207
jshaw@mcguirewoods.com

Benjamin J. Sitter
MCGUIRE WOODS LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222
412-667-6000
bsitter@mcguirewoods.com

2

BFW

BRODSKY FOTIU-WOJTOWICZ

## ANSWERS

1.     Identify (by name, address, telephone number, occupation, and relationship to You) each Person who You believe witnessed or has knowledge of any of the alleged facts, allegations or claims set forth in the Complaint.  For each identified Person, describe in detail the knowledge that You believe the Person possesses and Identify any Documents related to Your response.

**ANSWER:** Plaintiff believes that following individuals have knowledge about the basis and substance of Plaintiff's claims:

| NAME | EMAIL | TELEPHONE |
|------|-------|-----------|
| Sofia Sondervan | sofiasondervan@gmail.com | |
| Scott Alverez | swa@cinemarevival.com | |
| Peter Holden | ratbastardceo@gmail.com | |
| Marc Novak | nova861@hotmail.com | |
| Jason Van Eman | weathervaneproductions@yahoo.com | |
| Ben McConley | bmcconley@aol.com | |
| Benjamin Rafael | benjamin.rafael@wellsfargo.com | |
| Hernan Bermudez | hernan.bermudez@wellsfargo.com | |
| Paul Zoch | Paul.M.Zoch@wellsfargo.com | |
| Ross Marroso | ross@weathervaneprod.com | |
| Lee Vandermolen | lvandermolen@icloud.com | |
| Alastair Burlingham | alastair.burlingham@outlook.com | |
| Dennis Mykytyn | dennis@modern.net | |
| Luke Daniels | luke@redwirepictures.com | |
| Alan Poe | alan.pao@tunnelpost.com | |
| Alan Moss | Alan.Moss@harbottle.com | |
| Gary Raskin | GRaskin@raskinlawllp.com | |
| Antony Gostyn | antony.gostyn@swanturton.com | |
| Kate McCullagh | | +44 20 7812 3270 |
| Jeremy Tenser | jt@tenserlaw.com | |
| Gadi Wildstrom | gadi.wildstrom@freeway-entertainment.com | |
| Daniel Simonyi | daniel.simonyi@freeway-entertainment.com | |
| Phil Hunt | phil@headgearfilms.com | |
| Angela Scurrah | angelascurrah@leeandthompson.com | |

3

| | | |
|---|---|---|
| Peter La Terriere | | +44 2076296557 |
| Johan Ewing | johanewing@leeandthompson.com | |
| Sudie Smyth | | 46 8 409 188 00 |
| Roger Brewitt | | 011 61 39 531 0090 |
| Simon Cox | | 442082224007 |
| Ted Cawrey | info@blueprintlaw.com.au | |
| Charles Auty | | +44 2073887868 |
| Jamie Carmichael | jamie@atlanticnomad.com | |
| Libby Darcy | | +44 207 183 4739 |
| Rick Kwak | | |
| Lief Tilden | leifbag@mac.com | |
| Derrick Borte | dborte@mac.com | |
| Nanda Rao | nandarao@me.com | |
| Victoria Goodall | victoriacruicegoodall@gmail.com | |
| Rajiv Patel | rbpatel@ymail.com | |
| Frank Ramey | frankramey2002@yahoo.com | |

Plaintiff objects to the interrogatory to the extent it asks Plaintiff to testify as to the knowledge of other people. Plaintiff further objects to the interrogatory as vague and unduly burdensome to the extent it requires him to identify any document relating to his response. Plaintiff refers Defendants to his document production.

2.      Identify and describe all contact or Communications, including the substance, date, and manner (*e.g.,* by telephone, in person, etc.) of the Communications, since January 1, 2014 between You and the Forrest Capital Entities and/or Forrest Capital Individuals.

**ANSWER:** Pursuant to Fed. R. Civ. P. 33(d), the answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Plaintiffs' document production, and the burden of deriving or ascertaining the answer will be substantially the same for Defendants as it would be for Plaintiff.

3.      Identify and describe all contact or Communications since January 1, 2014 between You and Defendants Relating to or Regarding the Forrest Capital Entities, Forrest Capital

4

Individuals, and/or the alleged Forrest Capital Scheme, including (a) the date of the Communication, (b) the substance of the Communication, (c) the manner of the Communication (*e.g.,* by telephone, in person, etc.), and (d) the name of the Wells Fargo employee(s) with whom You communicated.

> **ANSWER:** Pursuant to Fed. R. Civ. P. 33(d), the answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Plaintiffs' document production, and the burden of deriving or ascertaining the answer will be substantially the same for Defendants as it would be for Plaintiff.

4. Identify every investment, payment, or other transfer of money that You made or received Relating to the alleged Forrest Capital Scheme, including (a) the date the payment was made, (b) the amount, (c) the medium through which payment was sent, (d) the payor, (e) the payee, (f) the financial institution and account number if any, from which the payment originated, (g) the financial institution, if any, to which the payment was sent, and (h) any check number, confirmation number, or other number identifying the transaction.

> **ANSWER:** Pursuant to Fed. R. Civ. P. 33(d), the answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Plaintiffs' document production, and the burden of deriving or ascertaining the answer will be substantially the same for Defendants as it would be for Plaintiff.

5. Identify every Wells Fargo account that You allege is Related to the Forrest Capital Scheme and/or controlled by any of the Forrest Capital Entities or Forrest Capital Individuals, including the account number if known, the name of the accountholder, and why You believe the account is Related to the Forrest Capital Scheme.

**ANSWER:** Wells Fargo Bank Account Nos. 1085234639; 3084885288; 3084885288; 1560249391; 1560249409; 1560249433; 1560249441; 1644585059; 1644585075; 7331750849; *46391

Wells Fargo Advisors Account Nos. *8119; *3623; *8505; *4498; *2611

I believe these accounts are related to the Forrest Capital Scheme as these accounts are referenced in Defendants' internal emails and documents as the accounts held by the fraudsters at Wells Fargo Bank and Wells Fargo Advisors.

6.      Identify and describe all misrepresentations You allege Defendants, the Forrest Capital Entities, and/or the Forrest Capital Individuals made, including the substance, date, and manner (*e.g.,* by telephone, in person, etc.) of the Communications.

**ANSWER:**

Pursuant to Fed. R. Civ. P. 33(d), the answer to this interrogatory as it relates to the written misrepresentations of Forrest Capital Entities, the Forrest Capital Individuals, and Defendants may be determined by examining, auditing, compiling, abstracting, or summarizing Plaintiffs' document production, and the burden of deriving or ascertaining the answer will be substantially the same for Defendants as it would be for Plaintiff.

Additionally, during 2014 and 2015, I had dozens of phone conversations and meetings with the Forrest Capital Individuals in which they repeatedly lied to me about the scheme, including that it was legitimate and that it was to be administered and overseen by Wells Fargo.

As to Defendants specifically, they made the following misrepresentations:

- On October 30, 2014, representatives of Adana and Vandermolen met with Weathervane and Forrest Capital at a branch of Wells Fargo Advisors in Fort

6

Lauderdale. At the October 30, 2014 meeting, Paul Zoch, a Wells Fargo Advisors employee, detailed the film financing scheme, represented that it was to administered and overseen by Wells Fargo, and vouched for the legitimacy of Weathervane and Forrest Capital.

- On March 13, 2015, representatives of Adana and Vandermolen met with Weathervane and Forrest Capital at a branch of Wells Fargo Bank in the Brickell neighborhood of Miami. At the March 13, 2015 meeting, Benjamin Rafael, a Wells Fargo Bank employee, again detailed the film financing scheme, represented that it was to administered and overseen by Wells Fargo, and vouched for the legitimacy of Weathervane and Forrest Capital and their mutually beneficial relationship with the bank.

- On March 16, 2015, at another meeting with Adana and Vandermolen representatives at the Brickell branch, Rafael again represented the safety and legitimacy of the film financing scheme.

- Additionally, on May 12, 2015, June 18, 2015, and June 26, Defendants, the Forrest Capital Entities, and/or the Forrest Capital Individuals provided written letters to Adana supposedly confirming the legitimacy of the scheme by sending Adana a letter on Wells Fargo Bank letterhead, signed by Rafael, attesting that the "matching funds" provided by Adana would be held in a secure Wells Fargo Bank account.

- On June 2, 2015, Rafael sent Adana an email confirming that the funds it was putting up were being matched by Forrest Capital and were held in a secure account.

7.      For each item or category of damage or harm You claim that You and/or any of the Plaintiffs suffered because of some action or inaction by Wells Fargo, identify and describe: (a)

7

the nature and amount of damages sought, (b) how the damages were calculated, (c) the facts supporting Your claim that the damages results from some action or inaction of Wells Fargo, and (d) all Documents reflecting or Relating to the incurrence of such costs or damages.

**ANSWER:**

1. **London Town Pic Limited's Damages**

   a.   *Damages Relating to the Vandermolen Film Co. Bridge Loan:*   Unpaid Interest, Fees, and Premium on the Bridge Loan Agreement between Vandermolen Film Co. and Plaintiff London Town Pic, Ltd. (through 7/21/20) (accounting for setoffs to interest first): **$7,197,220.06**.

   Damages were calculated by calculated by <u>multiplying</u> the amount of the Debt on the Bridge Loan Agreement, <u>$2,098,980.00</u> (Primary Advance of $1,794,000.00, plus the 10% Premium on the Primary Advance of $179,400.00, plus the 7% Additional Premium on the Primary Advance of $125,580.00 (representing the seven weeks between the Eight Week Mark and Cure Period Expiry Date at 1% per week)), by the weekly interest charge following the Cure Period Expiry Date, <u>1.5%</u>, by the number of weeks of default, <u>246</u> (as of July 21, 2020, dating from October 27, 2015), <u>less</u> setoffs for payments received by Vandermolen Film Co., $<u>548,016.14</u> (as of June 30, 2020).   The above damages number does not include assessments for attorneys' fees and costs by Vandermolen Film Co. against London Town Pic, Ltd.  Vandermolen Film Co. has calculated the interest, fees, and premia owed under the Bridge Loan Agreement in several different ways, but London Town Pic, Ltd. believes that its calculations set

forth above are the correct ones.

b.    *Lost Profits on the Film:* Plaintiffs will prove up the lost profits caused by Defendants' torts through expert witness testimony. These lost profits will include the loss of domestic and foreign presales as well as loss of worldwide box office. Documents supporting the lost profits damages will be provided in Plaintiffs' forthcoming production.

c.    *Punitive Damages:* to be determined by jury

d.    *Treble Damages Under Fla. Stat. § 772.104*: to be calculated upon jury verdict

## 2.    Tom Butterfield's Damages

a.    *Deferred production fee*: $17,500

b.    *Loss of gross receipts*: $45,000

c.    *Loss of back-end net profits of* 4%: Plaintiffs will prove up the lost profits caused by Defendants' torts through expert witness testimony. These lost profits will include the loss of domestic and foreign presales as well as loss of worldwide box office. Documents supporting the lost profits damages will be provided in Plaintiffs' forthcoming production.

d.    *Reputational damages*: Plaintiff Butterfield will prove up his reputational damages caused by Defendants' torts through expert witness testimony.

e.    *Punitive Damages:* to be determined by jury

f.    *Treble Damages Under Fla. Stat. § 772.104*: to be calculated upon jury

verdict

8.      Identify and Describe all agreements, contracts, or Documents that Relate to, memorialize, reference, or evidence the financing of *London Town* as alleged in the Complaint.

**ANSWER:** Pursuant to Fed. R. Civ. P. 33(d), the answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Plaintiffs' document production, and the burden of deriving or ascertaining the answer will be substantially the same for Defendants as it would be for Plaintiff.

Under penalties of perjury, I declare that I have read the foregoing Answers to Defendant Wells Fargo Bank, N.A.'s First Set of Interrogatories and they are true and correct.

Dated: July 20, 2020.

*Thomas Butterfield*
TOM BUTTERFIELD

13