UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: 1:20-cv-21536-COOKE/GOODMAN

LONDON TOWN PIC LIMITED, *et al.*

     Plaintiffs,

v.

WELLS FARGO BANK, N.A.,
WELLS FARGO ADVISORS, LLC,

     Defendants/Third-Party Plaintiffs,

v.

VANDERMOLEN FILM CO. LTD.,
LEE VANDERMOLEN,

     Third-Party Defendants.

_____/

## DEFENDANTS' RULE 56.1 REPLY STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants Wells Fargo Bank, N.A. and Wells Fargo Advisors, LLC (together, "Wells Fargo"), by and through their undersigned counsel, and pursuant to Local Rule 56.1, hereby submit this Reply Statement of Material Facts as to which there is no genuine issue of material fact, and that entitle Wells Fargo to judgment as a matter of law as set forth in its Reply in Support of Motion for Summary Judgment filed concurrently herewith.

68. **Disputed.** Wells Fargo expresses no opinion as to whether the referenced conversation between Butterfield, McConley, and Van Eman occurred. However, Wells Fargo disputes that it ever provided lines of credit to Weathervane or Forrest Capital, ever made similar representations to Plaintiffs, or ever authorized Van Eman or McConley to make such representations. Moreover, Butterfield testified in his September 23, 2020, deposition that Plaintiffs did not put any money into accounts at Wells Fargo. *See* Plaintiffs' Opposition Statement of Facts ("Opp. SOF"), Ex. A at 62:8-10. Indeed, Plaintiffs did not have any accounts at Wells Fargo, and there is no evidence of any written agreements between Wells Fargo and Plaintiffs. *See* Wells Fargo's Statement of Facts ("SOF"), ECF 101, ¶ 9.

69. **Disputed.** Exhibit L and Exhibit M to the Opposition Statement of Facts do not state what Plaintiffs claim they do. These documents, created and provided exclusively by Weathervane, did not "tout[] Wells Fargo's intimate involvement" in Weathervane's funding process. *See* Opp. SOF, Ex. L; Ex. M. Exhibit L, titled "Funding through WeatherVane Productions, Inc.," merely states that investment funds would be deposited into an account at Wells Fargo, eventually resulting in a line of credit. *See id.*, Ex. L ¶¶ 9-10, 13. Exhibit M, titled "Summary of Principle Term," states the same thing. *See id.*, Ex. M at 1-3. Neither document says that Wells Fargo was "backing" Weathervane, or anything remotely similar. *See id.* at Ex. L; Ex. M. In any event, to the extent that Plaintiffs relied on or felt "comfortable" proceeding with Weathervane based representations in materials that Weathervane provided explaining its financing process, Weathervane and Van Eman made these representations, not Wells Fargo. *See id.* Furthermore, Sondervan-Bild stated that she relied exclusive on representations made by a third party, Alastair Burlingham ("Burlingham"), in deciding to proceed with Weathervane, not any statements from Wells Fargo. *See* SOF ¶ 58.

70. **Disputed.** This statement is unsupported by evidence, and Exhibit N does not state what Plaintiffs claim it does. Burlingham and Lee Vandermolen ("Vandermolen") were

1

not Plaintiffs' "agents" and did not otherwise owe them any fiduciary duties.  Burlingham testified that he was never a consultant for Plaintiffs.  *See* **Ex. 39**, A. Burlingham Dep., at 25:22-26:5.  Vandermolen testified that he did not owe any fiduciary duties to Plaintiffs, but rather that any duties he owed were to the creditors and shareholders of his company, Vandermolen Film Co. Ltd ("Vandermolen Film").  *See* **Ex. 40**, L. Vandermolen Dep., at 88:13-89:15.  Moreover, during their depositions, Plaintiffs testified that they did not know if Vandermolen was their agent or owed them any fiduciary duties.  *See* **Ex. 41**, S. Sondervan-Bild Dep. Sept. 16, 2020 ("S. Sondervan-Bild Dep. Vol. I"), at 233:16-234:25; **Ex. 42**, T. Butterfield Dep. Sept. 23, 2020 ("T. Butterfield Dep. Vol. I"), at 113:8-21, 195:6-197:17.  However, Wells Fargo does not dispute that the October 2014 meeting did not concern *London Town*.  *See* **Ex. 40**, L. Vandermolen Dep., at 35:15-19.

71.  **Disputed.**  Paul Zoch ("Zoch") testified during his deposition that another individual was the banker for Forrest Capital.  **Ex. 43**, P. Zoch Dep., at 13:5-15.  Furthermore, Burlingham and Vandermolen's declarations contain nested hearsay concerning what Zoch supposedly told Burlingham and Vandermolen, and should not be considered on summary judgment.

72.  **Disputed.**  Zoch testified that, during the October 30, 2014, meeting, he (1) did not discuss Forrest Capital and Weathervane's film financing, (2) did not discuss or make any representations about how McConley used his accounts, (3) did not discuss how match funding worked, (4) did not make any statements with the intent that Plaintiffs rely on them, and (5) that the purpose of the meeting was merely to introduce Zoch to Vandermolen and Burlingham.  **Ex. 43**, P. Zoch Dep., at 108:16-109:16, 113:19-115:10, 116:9-14.  In addition, during his deposition, Burlingham testified that he could not remember specifically what Zoch had told him during the October 2014 meeting.  *See* **Ex. 39**, A. Burlingham Dep., at 18:5-19:2.  Plaintiffs statement that Zoch was "fired . . . for his involvement in the Weathervane fraud" is not supported by the document Plaintiffs' cite and is not true.  ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████        ████████████████

Furthermore, Burlingham and Vandermolen's declarations contain nested hearsay

concerning what Zoch supposedly told Burlingham and Vandermolen, are refuted by Zoch's testimony, and should not be considered on summary judgment.

73. **Disputed.** Zoch did not make the representations discussed in Paragraph 72 and referenced in Paragraph 73. Zoch testified that, during the October 30, 2014, meeting, he (1) did not discuss Forrest Capital and Weathervane's film financing, (2) did not discuss or make any representations about how McConley used his accounts, (3) did not discuss how match funding worked, (4) did not make any statements with the intent that Plaintiffs rely on them, and (5) that the purpose of the meeting was merely to introduce Zoch to Vandermolen and Burlingham. **Ex. 43**, P. Zoch Dep., at 108:16-109:16, 113:19-115:10, 116:9-14. In addition, Burlingham testified that he could not remember specifically what he relayed to Butterfield after the October 30, 2014, meeting. *See* **Ex. 39**, A. Burlingham Dep., at 28:12-21. Furthermore, Butterfield testified that he did not remember any specific details about what he was told about the October 30, 2014 meeting, at which he was not present. *See* **Ex. 42**, T. Butterfield Dep. Vol. I, at 23:17-25:14, 118:18-119:4. Sondervan-Bild testified that she did not known anything about the October 30, 2014, meeting, that she was not present at that meeting, and that "Tom would know about that" meeting which, as explained above, Butterfield did not. *See* **Ex. 41**, S. Sondervan-Bild Dep. Vol. I., at 141:2-9. Accordingly, because Plaintiffs do not know any specific details of, or representations made at, the October 30, 2014, meeting, Plaintiffs did not, and could not, have relied on any representations made during that meeting.

74. **Disputed.** Plaintiffs' own testimony confirms that they did not rely on any representations made during the March 16, 2015, meeting. Burlingham testified that he could not remember specifically what he relayed to Plaintiffs after the March 16, 2015 meeting. *See* **Ex. 39**, A. Burlingham Dep., at 28:12-14. Butterfield testified that he did not remember any specific details that Burlingham relayed to him regarding the March 16, 2015 meeting, at which he was not present. **Ex. 42**, T. Butterfield Dep. Vol. I, at 23:17-25:14. Sondervan-Bild also testified that she did not "know anything" about the March 16, 2015, meeting, at which she was also not present. **Ex. 41**, S. Sondervan-Bild Dep. Vol. I., at 141:17-19. Accordingly, because Plaintiffs do not know any specific details of, or representations made at, the March 16, 2015, meeting, Plaintiffs did not, and could not, have relied on any representations made during that meeting. Furthermore, Burlingham and Vandermolen's declarations contain

3

nested hearsay concerning what Rafael supposedly told Burlingham and Vandermolen, and should not be considered on summary judgment.

75.   **Disputed.**  Plaintiffs did not rely on any representations made during the March 16, 2015, meeting.  Burlingham testified that he could not remember specifically what he relayed to Plaintiffs after the March 16, 2015, meeting.  *See* **Ex. 39**, A. Burlingham Dep., at 28:12-14.  Butterfield testified that he did not remember any specific details of the March 16, 2015, meeting, at which he was not present.  **Ex. 42**, T. Butterfield Dep. Vol. I, at 23:17-25:14.  Sondervan-Bild also testified that she did not "know anything" about the March 16, 2015, meeting, at which she also was not present.  **Ex. 41**, S. Sondervan-Bild Dep. Vol. I., at 141:17-19.  Accordingly, because Plaintiffs do not know any specific details of, or representations made at, the March 16, 2015, meeting, Plaintiffs did not, and could not, have relied on any representations made during that meeting.

76.   **Disputed.**  Wells Fargo does not dispute the contents of the writings that Plaintiffs cite Paragraph 76.  However, Wells Fargo disputes that Benjamin Rafael ("Rafael") was acting within the scope of his employment at Wells Fargo, or was authorized by Wells Fargo, to make the statements contained in these writings.  Wells Fargo disputes that Wells Fargo Bank made any written misrepresentations to Plaintiffs.

77.   **Disputed.** Wells Fargo did not make any representations to Plaintiffs in the June 26, 2015, letter sent by Rafael.  Wells Fargo does not dispute the contents of the letter that Plaintiffs cite Paragraph 77.  However, Wells Fargo disputes that Rafael was acting within the scope of his employment at Wells Fargo, or was authorized by Wells Fargo, to make the statements contained in the writings referenced in Paragraph 77.  Indeed, based on the exhibits to Plaintiffs' Opposition Statement of Facts, Wells Fargo terminated Rafael's employment on or about June 17, 2015.  *See* Opp. SOF, Ex. V ¶ 1.  Therefore, any letters that Rafael sent to Van Eman on June 26, 2015, and that were subsequently forwarded to Plaintiffs, were not sent by Wells Fargo, but by Rafael.  Likewise, Plaintiffs could not have relied on any statements by Wells Fargo in the June 26, 2015, letter because Wells Fargo did not make those statements—Rafael did after his termination.  Plaintiffs also could not have relied on these statements in deciding to proceed with Weathervane, regardless of who made them, because Plaintiffs finalized the financing agreements for *London Town* with Weathervane on June 18, 2015, *i.e.*, before Rafael's letter.  *See* SOF ¶ 32.

4

78.   **Disputed.**   Wells Fargo does not dispute the contents of the indictment that Plaintiffs cite Paragraph 78.   However, Wells Fargo disputes that this indictment is competent evidence on summary judgment to establish that the occurrences alleged therein actually occurred, or that the indictment is otherwise relevant to the issues in this case.   To the extent that Plaintiffs imply in the last sentence of Paragraph 78 that any Wells Fargo employees may have been "unindicted co-conspirators" in Weathervane and Forrest Capital's scheme, there is no evidence that any Wells Fargo employees were "unindicted co-conspirators" with Weathervane and Forrest Capital.

79.   **Disputed.**   Wells Fargo does not dispute the contents of the Rafael's guilty plea that Plaintiffs cite Paragraph 79.   However, Wells Fargo disputes the Rafael's guilty plea provides evidence that he engaged in unlawful conduct while employed at Wells Fargo.   Wells Fargo terminated Rafael's employment on or about June 17, 2015, and Rafael's guilty plea does not provide any detail as to when certain actions by Rafael occurred, aside from noting that Rafael engaged in unlawful conduct after Wells Fargo terminated his employment.   *See* Opp. SOF, Ex. V ¶¶ 1, 15.

80.   **Disputed.**   Wells Fargo does not dispute the contents of Benjamin McConley's ("McConley") guilty plea that Plaintiffs cite Paragraph 80.   However, Wells Fargo disputes the McConley's guilty plea provides any evidence of unlawful conduct by Wells Fargo.   Wells Fargo terminated Rafael's employment on or about June 17, 2015, and McConley's guilty plea does not provide any confirmation as to when certain actions by Rafael occurred, aside from noting that Rafael engaged in unlawful conduct after Wells Fargo terminated his employment.   *See* Opp. SOF, Ex. W ¶ 14.   Furthermore, McConley's guilty plea states that he ran his scheme through a number of banks, and does not detail which of McConley's actions specifically involved Wells Fargo or film financing.   *See id.* ¶ 9.

81.   **Disputed.**   The document Plaintiffs rely on in Paragraph 81, Exhibit X, does not state that Wells Fargo discovered Forrest Capital was engaging in film financing fraud in April 2013, or otherwise have anything to do with this case.   Even a cursory review of Exhibit X shows that Wells Fargo determined in April 2013 that Forrest Capital had been depositing bad checks in relatively small amounts when compared to the amounts Plaintiffs claim are at issue.   *See* Opp. SOF, Ex. X at 2.   Wells Fargo's findings had nothing to do with a film-financing scheme, Weathervane, *London Town*, or any of the facts at issue in this case.   *See*

5

*id.* █████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
█████████████████████████████████

82. **Disputed.** Wells Fargo does not dispute that Hernan Bermudez ("Bermudez") invoked the Fifth Amendment in response to certain questions during his deposition. However, Wells Fargo disputes that Bermudez's exercise of his Constitutional rights is competent evidence to establish that certain events occurred, or is otherwise relevant to any issues in this case. Moreover, there is no evidence in the record, and Plaintiffs do not cite any, evidencing that Bermudez "knew that McConley was stealing money from investors," "was involved in the fraud," was "paid thousands of dollars by Rafael" to do anything, or was otherwise involved in Weathervane and Forrest Capital's scheme.

83. **Disputed.** Pages 76-78 and 121-22 of Exhibit Z to Plaintiffs' Opposition Statement of Facts do not support any of the assertions in the second sentence of Paragraph 83.

84. **Disputed.** Plaintiffs' statements in Paragraph 84 are contradicted by the document they cite in support, which states that Wells Fargo closed Forrest Capital's accounts as of July 17, 2015. *See* Opp. SOF, Ex. BB at 1. Furthermore, the document Plaintiffs cite does contain any evidence supporting their claim that "millions of dollars of additional fraud was committed" by the time Forrest Capital's account was closed. *See id.* Wells Fargo further disputes that it was involved in any fraud.

85. **Disputed.** In November 2015, Plaintiffs knew that Adana had sued Weathervane, read filings from that case, and believed the filings were "Scary reading!!" SOF ¶¶ 41-43. One of these filings was the Declaration of Marc Trottier, Adana's counsel. SOF ¶ 43. The Declaration stated that a former Wells Fargo employee, Rafael, provided Adana with false confirmations that Weathervane matched Adana's deposits and applied for lines of credit, an allegation Plaintiffs parrot in their complaint. *Id.* Also in November 2015, Sondervan-Bild texted Butterfield stating that Weathervane sounded "like MAJOR fraud" involving "a person at Wells Fargo who doesn't actually work there," referring again to Rafael. SOF ¶ 47.

86. **Undisputed.**

87. **Undisputed.**

88. **Disputed.** Karl A. Jarek's expert report does not state that any funds specifically earmarked for *London Town* went through accounts at Wells Fargo. *See* Opp. SOF, Ex. FF at 49-51. However, Wells Fargo does not dispute that Plaintiffs did not have any accounts at Wells Fargo, and that there is no evidence of any written agreements between Wells Fargo and Plaintiffs. *See* SOF ¶ 9.

89. **Undisputed.**

90. **Disputed.** Wells Fargo disputes the first sentence in Paragraph 90, as Sondervan-Bild testified that she could not recall a single lender that Plaintiffs spoke to regarding alternative financing after Weathervane's funding did not come through. *See* Opp. SOF, Ex. B, at 171:4-15. However, Wells Fargo does not dispute that Plaintiffs knew in the fall of 2015 that they were not going to receive the Weathervane financing.

91. **Disputed.** In their reply to Paragraph 15 of Wells Fargo's Statement of Facts, Plaintiffs state that the fact that "Weathervane did not finance . . . according to the agreed-upon schedule [was] not uncommon in the independent film industry or something unduly concerning to independent film producers." *See* Plaintiffs' Reply Statement of Facts ("RSOF") ¶ 15. Thus, by their own admissions, Plaintiffs should not have been surprised or concerned when Weathervane's funding did not arrive as planned and supposedly prevented them from completing post-production. *See* Opp. SOF ¶ 91. Furthermore, Plaintiffs do not cite any evidence to support their statement that *London Town* would have been a "commercial success" but for Weathervane's funding not arriving as planned. *See* Opp. SOF, Ex. B, at 164-167.

92. **Disputed.** Plaintiffs' "inability to unlock the contingency" was not caused by Wells Fargo. Weathervane's investment in *London Town*, *i.e.*, the "contingency," was a purported line of credit from Wells Fargo that Weathervane was supposed to receive as part of a matched funds transaction between Forrest Capital and Adana. *See* SOF ¶ 8. Plaintiff and Wells Fargo were not parties to the agreement between Forrest Capital and Adana (or any other agreement relating to a line credit), and there is no evidence that Forrest Capital ever applied for a line of credit from Wells Fargo. *See* SOF ¶ 9. Plaintiffs' "inability to unlock the contingency" also did not hinder the films production or affect the film's quality.

7

Weathervane's funding was slated to arrive in September 2015 but, by that time, Plaintiffs had already filmed *London Town* in July 2015. *See* SOF ¶¶ 10-11. Likewise, Plaintiffs do not cite any evidence to support their statement that *London Town* would have been a better film or earned more money but for Weathervane's funding not arriving as planned. *See* Opp. SOF, Ex. B, at 165.

93. **Disputed.** The Cargo Entertainment document cited in Paragraph 93 is not a sales estimate, and Cargo Entertainment did not estimate that "*London Town* would achieve foreign sales of between $1,960,000.00 and $4,010,000.00[.]" *See* Opp. SOF, Ex. JJ. Rather, Cargo Entertainment's document outlined an "Ask" and "Take" amount for various international sales territories. Cargo Entertainment's document did not state that *London Town* "would," or was even likely to be, sold in all of these territories, let alone at the "Ask" or "Take" amounts. Moreover, the purported domestic sales estimate by ICM in May 2013 is irrelevant. ICM was not the distributor that ultimately carried out the domestic distribution of *London Town* (IFC in Theaters, LLC did), and ICM's estimate was made more than two years before *London Town* was even filmed and three years before *London Town* was released. *See* **Ex. 45**, IFC in Theaters, LLC Dep., at 13:2-16; SOF ¶ 10.

94. **Disputed.** Plaintiffs' purported support for Paragraph 94 are opinions from Plaintiffs' proffered experts Butterfield and Renne K. Hodeshell. Wells Fargo disputes that Butterfield and Ms. Howdeshell are qualified to provide expert testimony in this case, and that Butterfield and Ms. Howdeshell's opinions satisfy the requirements of Fed. R. Civ. P. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Furthermore, Ms. Howdeshell's only basis for her opinions are off the record conversations she had with Plaintiffs. *See* Opp. SOF, Ex. MM, at 7-10. Plaintiffs were deposed on the issue of damages, including as corporate representatives, and denied having any information to provide on their claim for lost profits. **Ex. 42**, T. Butterfield Dep. Vol. I, at 174:17-179:12. Wells Fargo will provide rebuttal expert testimony in accordance with the Court's scheduling order and any subsequent alterations thereto.

95. **Disputed.** Plaintiffs' only purported support for Paragraph 95 is the report of Plaintiffs' proffered expert, Renee K. Howdeshell. Wells Fargo disputes that Ms. Howdeshell is qualified to provide expert testimony in this case, and that Ms. Howdeshell's opinions satisfy the requirements of Fed. R. Civ. P. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509

U.S. 579 (1993). Furthermore, Ms. Howdeshell's only basis for her opinions are off the record conversations she had with Plaintiffs. *See* Opp. SOF, Ex. MM, at 7-10. Plaintiffs were deposed on the issue of damages, including as corporate representatives, and denied having any information to provide on their claim for lost profits. **Ex. 42**, T. Butterfield Dep. Vol. I, at 174:17-179:12. Wells Fargo will provide rebuttal expert testimony in accordance with the Court's scheduling order and any subsequent alterations thereto.

96. **Disputed.** Vandermolen Film sued Wells Fargo in *Vandermolen Film Co. Ltd. Et al. v. Wells Fargo Bank, N.A. et al.*, Case No. 2016-31707-CA-01, Eleventh Judicial Circuit in and for Miami-Dade County, Florida. *See* ECF 36-3. Vandermolen Film and Wells Fargo entered into a Settlement Agreement and Release in full and final resolution of Vandermolen Film's claims. *See* SOF, **Ex. 34**, Settlement Agreement and Release. Vandermolen Film specifically agreed that any settlement payment "represents a return of the principal lost by Plaintiffs as a result of the allegations in the Amended Complaint plus portfolio interest," which encompassed the Bridge Loan. *Id.* at § 3.2. Vandermolen Film agreed to release any other claims that Vandermolen Film could have asserted against Wells Fargo, and also agreed that neither it nor its directors would "pursue legal action to recover any funds that may be due under any of the loans or transactions" at issue, including the Bridge Loan. *Id.* at § 3.3; § 4.6; § 5.1. In sum, Vandermolen Film cannot take any action to enforce the Bridge Loan.

[*signatures on following page*]

Respectfully submitted,

Dated: January 26, 2021

**MCGUIREWOODS LLP**

*/s/ Emily Y. Rottmann*
Emily Y. Rottmann
Fla. Bar No. 93154
erottmann@mcguirewoods.com
Bank of America Tower
50 North Laura St., Suite 3300
Jacksonville, Fl. 32202-3661
(904) 798-3224
(904) 798-3263 (fax)

Jarrod D. Shaw (admitted *pro hac*)
Benjamin J. Sitter (admitted *pro hac*)
jshaw@mcguirewoods.com
bsitter@mcguirewoods.com
Tower Two-Sixty
260 Forbes Ave.
Pittsburgh, PA 15222
(412) 667-6000
(412) 667-6050 (fax)

James D. Houghton (admitted *pro hac*)
jhoughton@mcguirewoods.com
2001 K Street N.W., Suite 400
Washington, D.C. 20006-1040
(202) 857-1717
(202) 828-3346 (fax)

***Counsel for Defendants Wells Fargo Bank,
N.A. and Wells Fargo Advisors, LLC***

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 26, 2021, a true and correct copy of the foregoing was served by electronic mail on all counsel of record listed below:

Benjamin H. Brodsky, Esq.
Joshua Truppman, Esq.
BRODSKY FOTIU-WOJTOWICZ, PLLC
200 SE 1st Street, Suite 400
Miami, Florida 33131
bbrodsky@bfwlegal.com
joshua@bfwlegal.com
docketing@bfwlegal.com

*Counsel for Plaintiffs*

Matthew Weinshall, Esq.
Podhurst Orseck, P.A.
SunTrust International Center
One S.E. 3rd Avenue, Suite 2300
Miami, FL 33131
mweinshall@podhurst.com

*Counsel Third Party-Defendant*
*Lee Vandermolen*

and served on January 26, 2021, by first class mail on:

Vandermolen Film Co. Ltd. (in liquidation)
c/o Stella Davis, in her capacity as Liquidator
Opus Restructuring LLP
Evergreen House North
Grafton Place
Euston
London
NW1 2DX

*Third Party-Defendant*
*Vandermolen Film Co. Ltd.*
*(in liquidation)*

/s/ Emily Y. Rottmann
Emily Y. Rottmann

11