# EXHIBIT 40

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA


LONDON TOWN PIC LIMITED, et  :
al,                          :
                             :
                Plaintiffs   :   CASE
                             :   NO. 1:20-cv-21536
        vs.                  :
                             :
WELLS FARGO BANK, N.A.,       :
WELLS FARGO ADVISORS,        :
                             :
Defendants/Third-Party       :
Plaintiffs,                  :
                             :
            vs.              :
                             :
VANDERMOLEN FILM CO. LTD.,    :
LEE VANDERMOLEN,             :
                             :
 Third-Party Defendants      :


VIDEOCONFERENCE REMOTE DEPOSITION OF LEE VANDERMOLEN


    Taken in the Greenwich Mean Time Zone, via
Zoom, on Wednesday, November 11, 2020, commencing at
2:32 p.m., before Maureen L. Stewart, Registered
Professional Reporter and Notary Public.



LEE VANDERMOLEN                                    November 11, 2020
LONDON TOWN PIC vs WELLS FARGO BANK, N.A.                        35

that point, Wells Fargo Bank.

Q.   Do you recall how long that trip was?

A.   Not exactly.  Again, less than a week.

Q.   Again, do you recall who paid the expenses for that trip?

A.   That flight was paid for by Bridgeworks. The hotel was paid by Ben McConley.

I just remembered, in March, the hotel was paid for by Jason Van Eman, I think.

Q.   In October of 2014, was there a specific film that Vandermolen Film Co. was considering becoming involved with when it traveled to Florida to meet with Mr. McConley, Mr. Van Eman and to be introduced to a banker?

A.   The initial meeting was to discuss the potential involvement in Urge by Forrest Capital and Weathervane and for the potential of investing in Antibirth -- a terrible name, I know, but that was another project that was being discussed.

Q.   In October of 2014, had Vandermolen Film Co. already invested, as I understood it, in Bridgeworks who, in turn, invested in Urge?

A.   Yes, because that investment was around July of 2014.  So this was maybe four months later.

Q.   I'm just trying to round out the trips



going to tie this to personal jurisdiction, Ben.

MR. BRODSKY:  It is cleaning up questions that Jarrod had asked and testimony that the witness had given.

MR. WEINSHALL:  Okay.  If you have just a few more, that's fine.

MR. BRODSKY:  Only a few more.

MR. WEINSHALL:  Okay.

THE WITNESS:  In terms of Vandermolen Film leant money to London Town Pic to make the film in England, yes.

BY MR. BRODSKY

Q.   Was Vandermolen Film Co. an agent of London Town Pic, to your understanding?

MR. SHAW:  Object to form.

MR. WEINSHALL:  Object to form.

THE WITNESS:  It is the definition of agent, I think, that needs to be clarified before I could answer that.

BY MR. BRODSKY

Q.   Okay.  Well, let me ask it like this.  You were asked some questions about fiduciary duty; correct?

A.   Yeah.

Q.   Did you believe that Vandermolen Film Co.



had an obligation to act in the best interest of London Town Pic to the exclusion or even when it could possibly harm Vandermolen Film Co?

MR. SHAW:  Object to the form, outside the scope of Magistrate Goodman's order on personal jurisdiction.

MR. BRODSKY:  Okay, that's fine.

THE WITNESS:  My understanding of fiduciary duty, as limited as it is, my fiduciary duties are to the creditors and shareholders of Vandermolen Film.

BY MR. BRODSKY

Q.   And not to London Town Pic?

A.   Fiduciary duty I do not believe stretches to a business partner.

MR. BRODSKY:  I have no further questions.  Thank you so much.

MR. WEINSHALL:  Let me ask a few follow-up questions.  Can we just take a break, so I can organize my notes here and won't waste time.  We can come back in about ten minutes.

VIDEOGRAPHER:  It is 4:58 p.m.  We're going off the record.

(Whereupon, a break was taken.)

VIDEOGRAPHER:  It is 5:09 p.m.  We



November 13, 2020

I hereby certify that the evidence and proceedings are contained fully and accurately in the notes taken by me of the testimony of the within witness who was duly sworn by me, and that this is a correct transcript of the same.

_____

Maureen L. Stewart
Registered Professional Reporter
Notary Public

