# EXHIBIT 43

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 1:20-cv-21536-MGC

LONDON TOWN PIC LIMITED,
SOFIA SONDERVAN-BILD and
TOM BUTTERFIELD,
            Plaintiffs,
vs.

WELLS FARGO BANK, N.C. and
WELLS FARGO ADVISORS, LLC,
            Defendant.
_____/

DEPOSITION OF
PAUL ZOCH
TAKEN ON BEHALF OF THE PLAINTIFFS
via VTC and VIDEOTAPE

Wednesday, October 7, 2020
10:01 a.m. - 1:52 p.m.

Fort Lauderdale, Florida  33308

Colleen Gruff-Brown

Notary Public, State of Florida



Q    Is it your understanding that Mr. Kovach sent you this e-mail because you were somehow affiliated with Mr. McConley's accounts?

A    Yes.

Q    At this time were you responsible for managing Mr. McConley's investment accounts?

A    Yes.

Q    Then you forward Mr. Kovach's e-mail to Hernan Bermudez.

Do you see that?

A    Yes.

Q    Why did you forward Mr. Kovach's e-mail to Hernan Bermudez?

A    Because he, Hernan was the banker that handles the banking of the client.

Q    Do you understand that Mr. McConley's accounts at Wells Fargo Advisors were closed as a result of Ms. O'Brien's e-mail?

A    I do now.  I didn't know.

Q    Okay.  Were you aware that in 2013 Wells Fargo Advisors ended its relationship with Mr. McConley?

A    I don't remember.

Q    I'm now looking at Page 4 of the e-mail chain which is Exhibit 1 and it's the first page of the attachment, says PRO risk referral for clients of the



substance of those e-mails?

MR. BRODSKY:  Objection to the form.

THE WITNESS:  No.

Q    (By Mr. Brodsky)  So you just interpret what other people wrote in e-mails that are not addressed to you?

MR. BRODSKY:  Objection, form.

THE WITNESS:  No.

Q    (By Mr. Sitter)  The last thing I want to go through is there's, you may not know this, but there are some allegations that relate to you in the complaint against my client in this case.

These are assertions by London Town or the named Plaintiffs that involve statements regarding you, and I just want to get your take on some of those statements.

Okay?

A    Okay.  One of the things that's stated in the complaint is that you attended a meeting in October 2014 in which you, quote, detailed the film's financing scheme, represented that it was to be administered and overseen by Wells Fargo and vouched for the legitimacy of WeatherVane and Forrest Capital.

Is than an accurate statement?

A    No.

Q    Another thing that is stated in the complaint is that you made representations, quote, directly or indirectly



to Plaintiffs for the purposes of inducing reliance by

Plaintiffs.

        Is that an accurate statement?

A    No.

Q    Another assertion in the complaint is that you made statements that were false and made such statements with the intent to defraud; is that accurate?

A    No.

Q    Another statement in the complaint is that you knew or should have known the Plaintiffs were relying upon the false representations made by you to make key strategic decisions concerning production and distribution of the London Town film, including but not limited to decisions concerning funding of the London Town project.

        Is that an accurate statement?

A    No.

        MR. BRODSKY:  Object to form.

Q    (By Mr. Sitter)  Did you have any knowledge of key strategic decisions concerning production and distribution of the London Town film?

A    No.

Q    Did you have any idea as to who would be making key strategic decisions concerning production and distribution of the London Town film?

A    No.



you're raising right now, you're talking about settlement.

MR. RASHBAUM:  I'm not going to let him answer the question because he's also bound to confidentiality as an individual, so I'm not going to let him answer that question.

MR. BRODSKY:  Okay.  Then I'll reserve my right to bring him back.

MR. RASHBAUM:  Okay.

Q   (By Mr. Brodsky)  So, Mr. Zoch, those cases were settled, right?

A   Yes.

MR. RASHBAUM:  You can answer that.

THE WITNESS:  Yes.

MR. BRODSKY:  Okay.

Q   (By Mr. Brodsky)  And did you individually pay any money out of your pocket to settle those cases?

A   No.

Q   I want to talk about the October 2014 meeting.

You had a meeting with Leigh Vanderbole (phonetic) and Allister Burlingham (phonetic) in Fort Lauderdale in October 2014, correct?

A   Yes.

Q   Okay.  And that meeting was with Mr. McConley, correct?



A    Yes.

Q    Okay.  And you discussed Mr. McConley's film financing at that meeting, did you not?

A    No.

Q    You didn't discuss it at all?

A    No.

Q    There was no mention of how Mr. McConley used his accounts?

A    Not by me.

Q    Okay.  Did Mr. McConley make representations in that meeting about how he used the Wells Fargo accounts?

A    Not that I recall.

Q    Not that you recall?

A    I don't remember.

Q    So it your testimony you don't remember whether he made those statements?

A    I don't know what statements -- I don't remember his exact statements.

Q    Okay.  Do you recall that you generally discussed how the accounts were set up?

A    Yeah.

Q    And you discussed the matching that occurred then, correct?

A    That wasn't discussed.

Q    Well, what did he say?



A    How the brokerage accounts were established.  And what they were used for, for banking and investment purposes.

Q    And did he discuss how they were used to finance film productions?

A    No.

Q    No?

A    I don't remember.

Q    Sorry?

A    I don't remember.

Q    Okay.  Is it your testimony that Mr. Burlingham and Mr. Vanderbole flew all the way from the United Kingdom so they could discuss how brokerage accounts work with you?

MR. SITTER:  Object to form.

MR. BRODSKY:  Is that your testimony?

THE WITNESS:  I'm not sure what their purpose was.

Q    (By Mr. Brodsky)  What did you understand the meeting was for?

A    It was an introduction for them to be a new client for me.

Q    So they flew all the way from the United Kingdom to Miami so they could discuss you opening up a brokerage account for them?



PAUL ZOCH
LONDON TOWN PIC vs WELLS FARGO

October 07, 2020
116

MR. SITTER:  Object to form.

MR. RASHBAUM:  Object to form.

MR. BRODSKY:  Is that your testimony, to your understanding.

THE WITNESS:  No.  That's not my, that wasn't the initial introduction.

Q    (By Mr. Brodsky)  What was the initial introduction?

A    That Ben McConley asked people down here that could be potentially clients for me.

Q    And you understood the reason why you had that meeting was so Mr. Burlingham and Mr. Vanderbole could be clients of yours?

A    That was my understanding.

Q    Did you ever follow up with them to see if you could open an account for them?

A    I don't, I don't remember the follow-up process, but they were international and I couldn't do investment business with them unless I found that out in the meeting.

Q    So the whole meeting was for nothing?

THE REPORTER:  I'm sorry, sir?

MR. BRODSKY:  The whole meeting was for nothing.

MR. SITTER:  Object to form.

THE WITNESS:  I don't know.

Q    (By Mr. Brodsky)  What does it mean to induce



CERTIFICATE OF OATH

STATE OF FLORIDA        )

COUNTY OF PALM BEACH  )

I, the undersigned authority, certify that PAUL ZOCH personally appeared before me and was duly sworn via VTC.

WITNESS my hand and official seal this 23rd day of January, 2021.



_____
Colleen M. Gruff-Brown
Notary Public, State of Florida
My commission No.:  HH63228
My commission expires:  11/12/2024

CERTIFICATE

STATE OF FLORIDA       )

COUNTY OF PALM BEACH   )

I, COLLEEN M. GRUFF-BROWN, Notary Public, State of Florida, certify that I was authorized to and did stenographically report the deposition of PAUL ZOCH; that a review of the transcript was requested; and that the transcript is a true and complete record of my stenographic notes.

I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in the action.

DATED this 23rd day of January, 2021.



_____
Colleen M. Gruff-Brown