# EXHIBIT 44
# (Partially filed under Seal)

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:20-cv-21536-MGC


LONDON TOWN PIC LIMITED,
SOFIA SONDERVAN-BILD and
TOM BUTTERFIELD,

     Plaintiffs,

v.                                                    CONFIDENTIAL

WELLS FARGO BANK, N.A., and                           SUBJECT TO
WELLS FARGO ADVISORS, LLC,                            PROTECTIVE ORDER


     Defendants.
_____/



VIDEOTAPED DEPOSITION OF JEFFREY COSBY
(via Zoom video)



Monday, December 7, 2020
9:58 - 2:37 p.m.








Reported By:
Rachel W. Bridge, RMR, CRR
Esquire Deposition Solutions
Job #J6184913



BY MR. BRODSKY:

Q.   Is it Wells Fargo Bank's position that Weathervane and Forrest Capital were committing a fraud through offers of matching financing to investors and producers for the production of films?

MR. SITTER:  Please hold for one second.  I just want to see if I have an objection.

I'm sorry, Ben, could you repeat the question or could I have it read back, please?

BY MR. BRODSKY:

Q.   Is it Wells Fargo Bank's position that Weathervane and Forrest Capital were committing a fraud through offers of matching financing to investors and producers for the production of motion pictures, films?

MR. SITTER:  Thank you.

You can answer.

THE WITNESS:  Wells Fargo did, does believe that Weathervane was committing a fraud, but I don't have to the level of detail that you're asking.  I couldn't be specific as to exactly what you're saying, but yes, it is the position that we believe there was committing a fraud.

BY MR. BRODSKY:

Q.   Okay.  When did Wells Fargo Bank first begin to suspect that a fraud was being committed by



Weathervane and Forrest Capital?

A.   It kind of materialized over a period of time, somewhere like in, in 2015, I believe.

Q.   When in 2015?

A.   I can't be specific, because in 2015 I was just arriving.  I had just arrived to this market recently, so I don't have the exact dates, but as I said, this kind of unfolded over a period of time.

Q.   Well, it's kind of important, the date.  So are you able to give me more specific than in 2015?

MR. SITTER:  He is directing you to topic number ten, if that helps.

THE WITNESS:  Okay, topic number ten?  I think so.  We're talking about around October 2015?

BY MR. BRODSKY:

Q.   Mr. Cosby, do you have notes that you're referring to?

A.   I don't have any notes.

Q.   Okay.  Just -- okay.  I was just wondering, because you were looking down, and I just didn't know if you were looking down at notes that you had.  There is nothing wrong with that.

A.   I have hearing loss in this ear from military, so I turn my ear -- whenever you notice, whenever someone speaks, I turn by ear this way.





extent it calls for attorney/client privileged

information.

        MR. BRODSKY:  Okay.



BY MR. BRODSKY:

Q.   Are you able to testify today about the reason for terminating Mr. Zoch's employment?

MR. SITTER:  Caution the witness not to disclose attorney/client privileged information, but you can answer the question to the extent you can without disclosing that information.

THE WITNESS:  No, I'm not at liberty to be able to discuss that.

BY MR. BRODSKY:

Q.   Do you have -- let me ask you this like this.

Do you have knowledge from your attorneys about the reasons why?  Because I understand Mr. Sitter has told you don't testify if it requires you to divulge attorney/client communications, but I'm asking you specifically do you have knowledge about why Mr. Zoch was terminated that you received from your attorneys?

MR. SITTER:  You can answer that with a yes or no.

THE WITNESS:  Yes.

BY MR. BRODSKY:

Q.   Okay.  So let me clarify that.

A.   So let me clarify that.  What I have is a letter that they sent to me.  I have the termination letter.



I don't know what the thinking or what the decision-making is.  I just have the letter that said why they did it.

Q.   Got it.  You have a letter from your lawyer saying Mr. Zoch is being terminated, but you have not spoken with your attorneys about why he was terminated?

A.   There was no attorneys involved in this conversation I'm talking about between me and Paul Zoch.  This had nothing to do with attorneys.

Q.   Okay.  So my question then is real specific.

Do you know why Mr. Zoch was terminated?

MR. SITTER:  I just want to be clear, Ben, are you asking about why attorneys made that decision or the decision that, the reasons that are listed in the letter?  Because I think the answer may be different.

BY MR. BRODSKY:

Q.   Well, I'm asking you, the topic asks for the decision to terminate Paul Zoch's employment, including the reason for terminating his employment.

So I'm asking do you know the reason?  And if the answer is no, that's okay.  You can say I don't know, and then we'll move on.

MR. SITTER:  I'm going to object.  That's been asked and answered if that's all you're asking.



BY MR. BRODSKY:

Q.   Are you able to tell me the reason why?

A.   For the reasons I respond in the letter, the termination letter, which I think you have.

Q.   And the reasons given on the termination letter were failure to comply with policy?

MR. SITTER:  Object to the form.

BY MR. BRODSKY:

Q.   What were the reasons given on the letter?

MR. SITTER:  Object to form.

THE WITNESS:  I don't recall, and I don't have it at my disposal right now.

BY MR. BRODSKY:

Q.   Okay.  So I just want to be clear.  You're not able to testify as to the reason for why Mr. Zoch's employment was terminated; correct?

MR. SITTER:  Objection, and caution the witness not to disclose the contents of any attorney/client communication or investigation.

BY MR. BRODSKY:

Q.   Is that correct?

A.   I'm not at liberty to be able to discuss that.

Q.   Okay.  So now I have to ask the question again.  Do you have knowledge about why Mr. Zoch was terminated that you received from your attorneys, other



than the letter?

MR. SITTER:  You can answer with a yes or no.

THE WITNESS:  From my attorneys, no.

MR. BRODSKY:  Okay.  I'm going to show you what I've marked as Exhibit 20.

(The document was marked Plaintiff's Exhibit 20 for identification.)

BY MR. BRODSKY:

Q.   It's Bates labeled WFLT 8235 through 8237.

A.   Okay.

Q.   I can turn the page if you want to.  Just tell me when.

A.   Okay.  Okay.  All right.  Okay.

Q.   Do you recognize this email?

A.   I do.





Reference No.: 6184913

Case:  LONDON TOWN PIC LIMITED vs WELLS FARGO

           DECLARATION UNDER PENALTY OF PERJURY

     I declare under penalty of perjury that I have read the entire transcript of my Deposition taken in the captioned matter or the same has been read to me, and the same is true and accurate, save and except for changes and/or corrections, if any, as indicated by me on the DEPOSITION ERRATA SHEET hereof, with the understanding that I offer these changes as if still under oath.

          /s/ Jeffrey Cosby
          _____
          Jeffrey Cosby

              NOTARIZATION OF CHANGES
                    (If Required)

Subscribed and sworn to on the _____ day of

_____, 20____ before me,

(Notary Sign)_____

(Print Name)                    Notary Public,

in and for the State of _____

