UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-21536-Civ-COOKE/GOODMAN

LONDON TOWN PIC LIMITED, *et al.*,

    Plaintiffs,

vs.

WELLS FARGO BANK, N.A., AND
WELLS FARGO ADVISORS, LLC,

    Defendants/Third-Party Plaintiffs,

vs.

VANDERMOLEN FILM CO. LTD.,
LEE VANDERMOLEN,

    Third-Party Defendants.

_____/

## **OMNIBUS ORDER**

THIS MATTER is before the Court upon the following motions: (1) Motion to Dismiss (ECF No. 16), filed by Wells Fargo Bank, N.A. and Wells Fargo Advisors, LLC; (2) Motion for Leave to File a Second Amended Complaint (ECF No. 35), filed by London Town Pic Limited, Sofia Sondervan-Bild, and Tom Butterfield; (3) Motion to Strike Third-Party Complaint (ECF No. 44), filed by London Town Pic Limited, Sofia Sondervan-Bild, and Tom Butterfield; (4) Motion to Dismiss Third-Party Complaint (ECF No. 64), filed by Third-Party Defendants Vandermolen Film Co. Ltd., Lee Vandermolen; (5) Motion to Approve Alternative Service on Foreign Third-Party Defendants (ECF No. 96); (6) Motion for Summary Judgment (ECF No. 100); and (7) Joint Motion to Extend Scheduling Deadlines (ECF No. 104).

Upon review of the Parties' arguments and the relevant legal authorities, Defendants' Motion to Dismiss (ECF No. 16) is **GRANTED *in part* and DENIED *in part***, and Plaintiffs are granted leave to file an amended complaint that cures the deficiencies identified in this Order. Plaintiffs' Motion for Leave to File a Second Amended Complaint (ECF No. 35) is

1

consequently **DENIED** *as moot*. Third-Party Defendants' Motion to Dismiss the Third-Party Complaint (ECF No. 64) is **GRANTED**. Plaintiffs' Motion to Strike the Third-Party Complaint (ECF No. 44) is **DENIED** *as moot*. Defendants' Motion for Summary Judgment (ECF No. 100) and Defendants' Motion to Approve Alternative Service (ECF No. 96) are **DENIED** *as moot*.

**The Claims Between Wells Fargo Bank, Wells Fargo Advisors, London Town Pic Limited, Sofia Sondervan-Bild, and Tom Butterfield.**

### I. BACKGROUND

The facts recited herein are drawn from the Plaintiffs' First Amended Complaint and are assumed to be true for the purposes of the motion to dismiss.

Plaintiffs in this action are: London Town Pic Limited ("London Town"), a United Kingdom company that specializes in producing, financing, and distributing films; Sofia Sondervan-Bild ("Sondervan-Bild"), one of the owners of London Town; and Tom Butterfield ("Butterfield"), another owner of London Town. Defendants, Wells Fargo Bank and Wells Fargo Advisors ("Wells Fargo", "Defendants"), are financial institutions that specialize in private banking and wealth management.

In 2013, Plaintiffs Sondervan-Bild and Butterfield decided to produce a coming-of-age drama to be titled *London Town*, which would be produced by Plaintiffs' Company, London Town. *Amend. Compl.* ECF No. 1-4 at ¶ 12. To this end, Plaintiffs pursued financing negotiations with Weathervane Productions, Inc. ("Weathervane"), Forrest Capital Partners, Inc. ("Forest Capital Partners"), and Forrest Capital and Co., LLC ("Forest Capital"), none of whom are parties to this action. *Id.* at ¶ 19. These negotiations led to two financing agreements that involved two film financiers, Adana Investing, Inc. ("Adana") and Vandermolen Film Co., Ltd. ("Vandermolen Film"). *Id.* at ¶¶ 21, 22.

The financing structure for the film was as follows: Film investors who were interested in investing in *London Town* would deposit a sum of money into a Wells Fargo account. Then, Weathervane, Forest Capital Partners, and/or Forest Capital would match the invested amount by depositing their matching investment in the same Wells Fargo account. *Id.* at ¶ 15. This financing process was to be managed by Wells Fargo, who would be responsible for "holding funds in this secure account to collateralize lines of credit, which it then extended to finance films, so that initial investors would receive their principal

2

along with returns on investment." *Id.* at ¶ 17.  Under one financing agreement, Adana was to deposit $2.3 million into a Wells Fargo account, which would be matched by Forest Capital in the same account.  *Id.* at ¶ 21.  Under the second financing agreement, Vandermolen Film agreed to loan London Town $1,794,000 to provide immediate cash to kickstart the film production process.  The expectation was that this loan would be repaid once Plaintiffs received the line of credit secured by Adana's investments, which Plaintiffs believed to be "coming shortly." *Id.* at ¶ 22.

Before and after these agreements were finalized, there were a series of meetings where Wells Fargo employees made numerous representations about the legitimacy of the financing structure and the entities involved.  *See id.* at ¶¶ 24-25.  The Complaint identifies at least two Wells Fargo employees who made these representations, including a Benjamin Rafael who purportedly sent Adana signed letters confirming that the invested funds were being held in a secure account, and that Forest Capital was matching the invested funds.  *Id.* Things too good to be true are nearly always so, and as Plaintiffs soon learned, "[s]omething [was] rotten in the state of Denmark." *Hamlet*, William Shakespeare, Act 1, Scene 4.

At some point during or after the production of *London Town*, Plaintiffs discovered that the film financing structure described above did not exist.  Alas, instead of matching the money invested and deposited by Adana in the designated Wells Fargo account, Weathervane, Forest Capital Partners, and Forest Capital had stolen these funds for personal use.  *Id.* at ¶ 25.  Weathervane, Forest Capital Partners, and Forest Capital allegedly shared these funds with some Wells Fargo employees.  *Id.* Benjamin Rafael, who has "admitted to the fraud and has pled guilty to conspiracy to commit wire fraud" allegedly confirmed that Weathervane, Forest Capital Partners, and Forest Capital directed him to make these misrepresentations about the financing scheme.  *Id.* at ¶ 2.

Funding for the film became an issue, and this negatively affected the quality and reception of the film.  *Id.* at ¶ 31.  In addition to monetary loss, Plaintiffs Sondervan-Bild and Butterfield allege that their reputations as film producers have been negatively affected. *Id.* at ¶ 35.  Plaintiffs also allege that this fraudulent financing scheme affected a number of other investors and film productions.  Seeking compensation for the harms that followed from these events, Plaintiffs have brought this action asserting the following claims: Violations of the Florida RICO Act (Counts I & II), fraudulent misrepresentation (Counts III & IV), negligence based on a fiduciary relationship (Count V), negligent supervision

3

(Count VI), and negligent retention (Count VII). Defendants now move to dismiss all of Plaintiffs' claims.

## II. LEGAL STANDARD

### A. Motion To Dismiss

Federal Rule of Civil Procedure 8(a) mandates that a complaint "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To satisfy the Rule 8 pleading requirements, a complaint must provide the Defendant fair notice of Plaintiff's claim and the grounds upon which it rests. *Swierkiewicz v. Sorema N. A.*, 534 U. S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47(1957)).

Upon consideration of a motion to dismiss, the court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1262 (11th Cir. 2015) (quoting *Murphy v. F.D.I.C.*, 208 F.3d 959, 962 (11th Cir. 2000)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. Florida's Banking Statute of Frauds Is Inapplicable Here.

Defendants argue that all of Plaintiffs' claims are barred by the Florida Banking Statute of Frauds, which provides that "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Fla. Stat. § 687.0304(2). The Court is unpersuaded by Defendants' arguments that the statute bars Plaintiffs' claims. While it is true that a line of credit is relevant to Plaintiffs' claims, this is quite plainly not an action on a credit agreement. Defendants' motion to dismiss the claims pursuant to Fla. Stat. § 687.0304 is therefore **DENIED**.

### B. The Complaint Fails to State a Claim under Florida's RICO Act.

Plaintiffs bring two causes of action under the Florida RICO Act, which provides a private right of action to anyone who has been injured by an enterprise that has engaged in a pattern of criminal activity. *See* Fla. Stat. § 772.104. In relevant part, the Florida RICO Act states that it is "unlawful for any person . . . [e]mployed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity . . . ." Fla. Stat. § 772.103(3). The Statute also prohibits conspiring or endeavouring to violate the Act. *See* Fla. Stat. § 772.103(4). To state a claim under the Florida RICO Act, Plaintiff must allege facts showing "(1) conduct or participation in an enterprise through (2) a pattern of [criminal] activity." *Lugo v. State*, 845 So. 2d 74, 97 (Fla. 2003). "[C]ivil RICO claims must be pled with greater specificity, and they must satisfy the requirements of Federal Rule of Civil Procedures 9(b)." *Super Vision Int'l, Inc. v. Mega Int'l Commer. Bank Co.*, 534 F. Supp. 2d 1326, 1330 (S.D. Fla. 2008). Plaintiffs have not alleged the required facts with the applicable level of specificity to state a claim under Fla. Stat. § 772.103(3) or (4).[1]

#### 1. Conduct or Participation in an Enterprise

An "enterprise exists where a group of persons associates, formally or informally, with the purpose of conducting illegal activity." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (internal quotations and citations omitted). As stated above, the Florida RICO Act applies to a person that is "[e]mployed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity." Fla. Stat. § 772.103(3).

Here, the alleged enterprise consisted of Wells Fargo, Wells Fargo Advisors, Weathervane, Forrest Capital, and Forrest Capital Partners, and this enterprise was formed to implement the fraudulent financing scheme. Construing the allegations in the Complaint liberally and drawing all reasonable inferences in Plaintiffs' favour, Plaintiff alleges that Defendants' (Wells Fargo and Wells Fargo Advisors) role in this enterprise was primarily to manage the secure account where the invested funds were to be held, and to issue a line of credit. Plaintiffs also allege that Defendants were aware of the alleged fraudulent scheme but did nothing to curb the fraudulent behavior. These allegations, most of which are

---

[1] Although the Court is not assessing the proposed second amended complaint in this Order, it observes that the second amended complaint does not cure the deficiencies identified herein.

conclusory, are insufficient to show "conduct or participation" in an enterprise, as required by Fla. Stat. § 772.103(3). "[B]ankers do not become racketeers by acting like bankers." *Super Vision Int'l, Inc.*, 534 F. Supp. 2d at 1338. Additionally, these allegations fall incredibly short of satisfying the pleading requirements mandated by Rule 9(b).

### 2. Pattern of Criminal Activity

The Complaint also fails to allege a pattern of criminal activity. The Florida RICO Act defines pattern of criminal activity as "at least two incidents of criminal activity that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents." Fla. Stat. § 772.102(4). The Complaint contains several allegations about the allegedly fraudulent financing scheme as it concerns financing *London Town*. The Complaint, however, is devoid of any allegations concerning at least another incident of criminal activity. Plaintiffs do allege that Defendants' employees similarly defrauded other victims, and that these other incidents "were part of a related and continuous pattern of defrauding investors and film producers." *Amend. Compl.* ECF No. 1-4 at ¶ 24. These allegations are, at best, conclusory and also fall short of satisfying Rule 9(b) or Fla. Stat. § 772.102(4). Defendants' motion to dismiss Counts I & II is consequently **GRANTED**. These claims are **DISMISSED** *without prejudice*.

### C. It Is Not Facially Apparent that Plaintiffs' Claims are Time-Barred.

Defendants also move to dismiss Plaintiffs' claims of negligence and fraudulent misrepresentation as time-barred because they were brought after the four-year period applicable here. *See* ECF No. 16. Plaintiffs', Defendants argue, knew or should have known about this allegedly fraudulent scheme in June 2015 when they failed to receive the promised line of credit, or in November 2015 when Adana filed a lawsuit based on similar allegations raised here. ECF No. 16 at 22. Defendants have also submitted documents purporting to show that Plaintiffs had or should have had notice of their claims in 2015.

Dismissing a complaint on statute of limitations grounds is appropriate only when "it is apparent from the face of the complaint that the claim is time-barred." *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013) (citations omitted). Further, it is generally inappropriate for courts to consider documents beyond the complaint and documents attached thereto on a motion to dismiss. Courts generally depart from this rule when "a plaintiff refers to a document in its complaint, the document is central to its claim,

its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1281 (11th Cir. 2007). This exception does not apply here, and the Complaint is far from clear, perhaps artfully so, about when Plaintiffs first became aware, or should have become aware, of the facts giving rise to some of their claims. Defendants' motion to dismiss on statute of limitations grounds is therefore **DENIED**.

### D. Plaintiffs Have Failed to Allege Duty.

Defendants also move this Court to dismiss Plaintiffs' negligence claims for failure to allege duty. "To maintain an action for negligence, a plaintiff must establish that the defendant owed a duty, that the defendant breached that duty, and that this breach caused the plaintiff damages." *Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201, 204 (Fla. 2007). It is undisputed that banks owe a duty of care to their customers. On the other hand, a bank generally does not owe a duty of care to non-customers. *See Hsi Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094 (11th Cir. 2017) ("Florida, like other jurisdictions, recognizes that as a general matter, a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship."). There is, however, an exception to this rule. "[A] bank may be liable to a noncustomer for its customer's misappropriation when a fiduciary relationship exists between the customer and the noncustomer, the bank knows or ought to know of the fiduciary relationship, and the bank has actual knowledge of its customer's misappropriation." *Chang.*, 845 F.3d at 1095.

Plaintiffs have not alleged that they were customers of Wells Fargo or Wells Fargo Advisors. Thus, Defendants owe a duty of care only if the exception to the rule applies. Upon review, the Court finds that the Complaint does not allege sufficient facts to bring Plaintiffs' claims within the exception to the general rule, and Plaintiffs arguments to the contrary are unpersuasive. Defendants' motion to dismiss Plaintiffs' negligence claims is therefore **GRANTED**. However, the Court cannot conclusively say at this junction that a properly amended complaint would be insufficient as a matter of law to make a case for the application of the exception. Thus, these claims are dismissed without prejudice.

**The Third-Party Claims Between Wells Fargo Bank, Wells Fargo Advisors, Vandermolen Film Co., Ltd. and Lee Vandermolen**.

## I. BACKGROUND

Defendants/Third-Party Plaintiffs have also filed a Third-Party Complaint against Vandermolen Film Co., Ltd. and Lee Vandermolen ("Third-Party Defendants"). Vandermolen Film Co., Ltd. is a British private limited company, with its principal place of business in London, England. Lee Vandermolen is a British citizen. The third-party complaint seeks declaratory relief, contribution, indemnification, and damages for breach of contract. According to the Third-Party Complaint, after Plaintiffs defaulted on the $1,794,000 loan from Vandermolen Film to London Town, Defendants/Third-Party Plaintiffs and Third-Party Defendants entered into a settlement agreement. Defendants/Third-Party Plaintiffs allege that the settlement agreement included a release of any claims Vandermolen Film Co., Ltd. and its agents have or may have against Defendants/third-party plaintiffs. Vandermolen allegedly signed this agreement on behalf of Vandermolen Film Co., Ltd. The Third-Party Complaint also alleges that Vandermolen Film Co., Ltd. was acting as London Town's agent. In violation of the settlement agreement, the Third-Party Complaint further alleges, Third-Party Defendants have made and continue to make attempts to collect on the loan. Defendants/Third-Party Plaintiffs also allege that the majority of damages claimed by Plaintiffs' in the broader litigation are related to this settlement agreement.

The Third-Party Defendants now move to dismiss the Third-Party Complaint for lack of personal jurisdiction. On the other hand, Plaintiffs also move to strike the Third-Party Complaint as an improper third-party pleading brought in violation of Rule 14. Although Plaintiffs' Motion to Strike raises thoughtful arguments about the propriety of the Third-Party Complaint, the Court does not reach those arguments because Defendants/Third-Party Plaintiffs have failed to meet their burden of making a *prima facie* case for why this Court has personal jurisdiction over Third-Party Defendants.

## II. LEGAL STANDARD

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). A defendant challenging personal jurisdiction must present evidence to counter the plaintiff's

allegations. *Internet Solutions Corp. v. Marshall*, 557 F,3d 1293, 1295 (11th Cir. 2009). Once the defendant has presented sufficient evidence, "the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Id.*

A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists. The Court must first decide whether the exercise of jurisdiction is appropriate under the state's long-arm statute. If it is, the court must then ensure that the exercise of jurisdiction does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See United Techs. Corp.*, 556 F.3d at 1274.

### III. DISCUSSION

### B.  The Court lacks Jurisdiction Over Third-Party Defendants

The Third-Party Complaint does not specify whether the Court has specific personal jurisdiction, general personal jurisdiction, or both. Thus, the Court addresses both avenues of jurisdiction. Fla. Stat. § 48.193(1)(a)(1) allows the exercise of specific jurisdiction over a defendant who is "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Fla. Stat. § 48.193(1)(a)(1). Florida's general jurisdiction statute allows the exercise of jurisdiction over "[a] defendant who is engaged in substantial and not isolated activity within this state." Fla. Stat. § 48.193(2). Such activity can be "wholly interstate, intrastate, or otherwise." *Id.* Further, the claim need not arise from defendant's activities within the state for the exercise of general jurisdiction to be proper. *Id.*

Third-Party Defendants affiliations with the state of Florida are insufficient to establish either specific or general jurisdiction. The Third-Party Complaint alleges that the Court has personal jurisdiction over Vandermolen Film Co., Ltd. and Lee Vandermolen because of their presence in Florida, "including availing themselves of the courts in the State of Florida." The Third-Party Complaint also notes that Third-Party Defendants have previously sued Wells Fargo in Florida, and that they have conducted business in Florida, invested in films across the United States, and met with potential business partners in Florida. These "activities" cannot seriously be described as "substantial and not isolated activity" to make the exercise of general jurisdiction appropriate. *See* Fla. Stat. § 48.193. The allegations are also insufficient under the Florida long-arm statute to sustain specific jurisdiction. Therefore, the Court finds that Defendants/Third-Party Plaintiffs have failed to

9

make out a prima facie case for either specific or general jurisdiction in accordance with Fla. Stat. § 48.193. *See United Techs. Corp.*, 556 F.3d at 1274. Third-Party Defendants' Motion to dismiss is therefore **GRANTED**.

## IV. CONCLUSION

For the reasons provided above, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss (ECF No. 16) Plaintiffs' First Amended Complaint (ECF No. 1-4) is **GRANTED** *in part* and **DENIED** *in part*. Counts I, II, V, VI, VII of Plaintiffs' Complaint are **DISMISSED** *without prejudice*. Plaintiffs are given leave to file an amended complaint **on or before February 1, 2021**. This deadline will not be extended absent extraordinary circumstances.

2. Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 35) is **DENIED** *as moot*.

3. Third-Party Defendants' Motion to Dismiss (ECF No. 64) the Third-party Complaint is **GRANTED**.

4. Plaintiffs' Motion to Strike the Third-Party Complaint (ECF No. 44) is **DENIED** *as moot*.

5. Defendants' Motion for Summary Judgment (ECF No. 100) is **DENIED** *as moot*.

6. Defendants/Third-Party Plaintiffs' Motion to Approve Alternative Service on Foreign Third-Party Defendants (ECF No. 96) is **DENIED** *as moot*.

7. The Joint Motion to Extend Scheduling Deadlines (ECF No. 104) is **DENIED** as moot.

**DONE and ORDERED** in chambers, Miami, Florida, this 28th day of January 2021.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Jonathan Goodman, U.S. Magistrate Judge*
*Counsel of record*